UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARIANNE GATES, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE INSURANCE CO., ALLIANCEBERNSTEIN L.P., UNITED HEALTHCARE CHOICE PLUS COPAY PLAN FOR ALLIANCEBERNSTEIN L.P., ALLIANCEBERNSTEIN L.P. UNITED HEALTHCARE INDEMNITY PLAN, and XYZ ENTITIES 1-100,<br><br>Defendants. | **11 CIV 3487**<br><br>Case No.<br><br><br>**CLASS ACTION COMPLAINT** |



## I. INTRODUCTION

1.     Plaintiff Marianne Gates brings this Class Action Complaint against Defendants UnitedHealth Group Inc. (including its subsidiaries and affiliates), United HealthCare Insurance Co., AllianceBernstein L.P., the United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P., and the AllianceBernstein L.P. United Healthcare Indemnity Plan pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").

2.     Plaintiff and the members of each putative class, as defined below, are or were participants in and/or beneficiaries of employee health care plans sponsored by private companies and partially or fully administered and/or insured by Defendant UnitedHealth Group Inc. or any of its affiliates or subsidiaries, including United HealthCare Insurance Co.

3.     The Defendant Plans, as well as many if not all of the group health care plans administered by Defendant UnitedHealth Group Inc. or any of its affiliates or subsidiaries, are governed by ERISA, which, among other things, requires that they and those who administer them

comply with the terms and conditions of the applicable plans in making coverage determinations relating to the plans' participants and beneficiaries.

4.      As detailed below, Plaintiff alleges that both ERISA and the Defendant Plans' terms were violated by, among other things, the miscalculation of the amount Medicare would have paid for certain medical services and the reimbursement amount for out-of-network medical services.

5.      Furthermore, Defendant United HealthCare Insurance Co. failed to provide a full and fair review of Plaintiff's claims, failed to provide a reasonable claims procedure, and failed to provide information describing how reimbursements for out-of-network services were calculated. These problems also affect the ERISA group health care plans administered by Defendant UnitedHealth Group Inc. or any of its affiliates or subsidiaries.

## II.    JURISDICTION AND VENUE

6.      **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.      **Personal Jurisdiction**.  ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

8.      **Venue**.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, and at least one Defendant resides in this District and all Defendants conduct business within this District, either directly or through wholly owned and controlled subsidiaries.

### III.   THE PARTIES

**A.     Plaintiff**

9.      Marianne Gates is a retired employee of AllianceBernstein L.P.  She is a participant in the Defendant United Healthcare Choice Plus Copay Plan for AllianceBernstein L.P. and/or the Defendant AllianceBernstein L.P. United HealthCare Indemnity Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

10.      Plaintiff resides in New York, New York.

**B.     Defendants**

11.      **UnitedHealth Group Inc.**  UnitedHealth Group Inc. is a corporation organized under the laws of Minnesota, with its main New York metro office located at 2 Penn Plaza, 7th Floor, New York, New York.  It is a diversified health and well-being company that, either itself or through its subsidiaries/affiliates over which it exercises dominion and control, administers group healthcare plans subject to ERISA ("United Plans") around the country.

12.      **United HealthCare Insurance Co.**  United HealthCare Insurance Co. ("United Insurance") is a licensed insurance company that is an affiliated operating division of UnitedHealth Group Inc.  United Insurance is a company organized under the laws of Connecticut, with its main New York metro office located at 2 Penn Plaza, 7th Floor, New York, New York. United Insurance is the Claims Administrator for both Defendant Plans.  In that role, United Insurance is the Plan Administrator of the Defendant Plans within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 3(16)(A), and a fiduciary of the Defendant Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 3(21)(A).  Upon information and belief, United Insurance is the Plan Administrator and a fiduciary of many United Plans.

13.      **XYZ Entities 1-100.**  XYZ Entities 1-100 are the subsidiaries and/or affiliates of UnitedHealth Group Inc. in addition to United Insurance, the identities of which are currently not

known to Plaintiff, each of which acts as Claims Administrator for one or more of the United

Plans.  In that capacity, each such entity is a Plan Administrator within the meaning of ERISA §

3(16)(A), 29 U.S.C. § 3(16)(A), and a fiduciary within the meaning of ERISA § 3(21)(A), 29

U.S.C. § 3(21)(A).

14.     Due to the manner in which UnitedHealth Group Inc. functions with respect to

United Insurance and XYZ Entities 1-100 as well as with respect to the United Plans, it is a

fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to the

United Plans.  Moreover, in making coverage determinations related to participants and

beneficiaries of the United Plans, UnitedHealth Group Inc. must comply with the terms and

conditions of those Plans and otherwise must comply with ERISA and its underlying regulations.

UnitedHealth Group Inc., United Insurance and XYZ Entities 1-100, are collectively referred to

herein as "United."

15.     **AllianceBernstein L.P.**  AllianceBernstein L.P. ("AllianceBernstein") is a

Delaware corporation with its principal place of business and corporate headquarters located at

1345 Avenue of the Americas, New York, New York.  It is the Plan Administrator and Plan

Sponsor of both Defendant Plans within the meaning of ERISA §§ 3(16)(A), (B), 29 U.S.C. §§

1002(16)(A), (B).

16.     **The United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P.**

The United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P. (the "Choice Plus

Plan") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and

an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).  The

Choice Plus Plan is self-funded by AllianceBernstein.

17.     **The AllianceBernstein L.P. United HealthCare Indemnity Plan.**  The

AllianceBernstein L.P. United HealthCare Indemnity Plan (the "Indemnity Plan") is an employee

benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).  The Indemnity Plan is self-funded by AllianceBernstein.  (The Choice Plus Plan and the Indemnity Plan are sometimes referred to herein collectively as the "Defendant Plans.")

18.     Because the Defendant Plans are self-funded by AllianceBernstein, benefits paid under the Plans are funded through direct payments from AllianceBernstein's assets.

## IV.   FACTS

### A.     United Improperly Determines the Amount Medicare Pays on Benefits Claims

19.     After enrolling in Medicare on August 1, 2010, Plaintiff purportedly should have been transferred from the Choice Plus Plan to the Indemnity Plan.  As of the filing of this complaint, Plaintiff has not yet been transferred to that Plan.

20.     Under the terms of both Defendant Plans, Plaintiff's coverage is secondary to her benefits under Medicare.  *See* Summary Plan Description United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P., Jan. 1, 2009 at 62-63 ("Choice Plus Plan SPD"); AllianceBernstein L.P. United HealthCare Indemnity, Jan. 1, 2009 at 40 ("Indemnity Plan SPD").

21.     Medicare is required to use the Resource-Based Relative Value Scale ("RBRVS") to determine a medical provider's payment amount for covered services.  The RBRVS assigns medical procedures a relative value that is then adjusted according to geographic region and multiplied by a fixed conversion factor, which changes annually.  The RBRVS's underlying data is published in the Federal Register.  Medical procedures are identified by Current Procedural Terminology ("CPT") codes.

22.     The Centers for Medicare & Medicaid Services ("CMS")—a federal agency within the Department of Health and Human Services that administers the Medicare program—makes available a searchable online fee schedule database that provides Medicare payment amounts,

depending on year, geographic region, CPT code, and other parameters. *See* Physician Fee Schedule Search, https://www.cms.gov/apps/physician-fee-schedule/search/search-criteria.aspx.

      **1.**      **The Choice Plus Plan's Coordination of Benefits with Medicare**

23.      The Choice Plus Plan SPD provides that if a participant in the Choice Plus Plan is enrolled in Medicare on a primary basis, Medicare pays benefits as the primary payer and the Choice Plus Plan will pay as secondary payer. *Id.* at 62-63.

24.      When the Choice Plus Plan "is secondary, it may reduce its benefits by the total amount of benefits paid or provided by all [primary plans]." *Id.* at 62.

25.      As each claim is submitted, United Insurance, as the Claims Administrator of the Choice Plus Plan, will "(1) Determine [the Plan's] obligation to pay or provide benefits under its contract; (2) Determine the difference between the benefit payments that [the Choice Plus Plan] would have paid had it been the Primary Coverage Plan and the benefit payments paid or provided by [the primary plan]." *Id.*

26.      If the primary plan paid less than is called for under the Choice Plus Plan, the Choice Plus Plan will pay the difference. *Id.*

27.      With regards to Medicare, the Choice Plus Plan states that it "reduces its benefits" for plan participants who are eligible for Medicare when Medicare would be the Primary Plan. *Id.*

28.      Once a Choice Plus Plan participant becomes eligible for Medicare, the Choice Plus Plan pays benefits under the plan as if Medicare were the primary payer, whether the participant has enrolled in Medicare or not. *Id.* at 75. Furthermore, "Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare, even if . . . [t]he person receives services from a provider who has elected to opt-out of Medicare." *Id.* at 62-63.

29.     In a letter from AllianceBernstein to Plaintiff dated November 30, 2010,

AllianceBernstein explained:

> [I]f a provider "opts" out of Medicare and the participant is Medicare-eligible, . . .
> [United Insurance] will still pay the claim as if the provider accepted Medicare,
> even if nothing is actually paid by Medicare.  To do this, *[United Insurance] will
> estimate what Medicare would have paid*, as if a Medicare participating provider
> was used, and then pay the appropriate amount.

Letter from Brian W. Fagan to Marianne Gates (Nov. 30, 2010) (emphasis added).

30.     However, the Choice Plus Plan SPD clearly states that United Insurance, as the

Claims Administrator of the Choice Plus Plan, does not have discretion to *estimate* Medicare

payments.  Rather, as stated above, "Medicare benefits are *determined* as if the *full amount that

would have been payable* under Medicare *was actually paid* under Medicare."  Choice Plus Plan

SPD at 62 (emphasis added).  As shown above, Medicare payment amounts are easily determined,

belying any need to estimate the payments.

### 2.     The Indemnity Plan's Coordination of Benefits with Medicare

31.     The Indemnity Plan coordinates benefits with Medicare in a similar manner as the

Choice Plus Plan.

32.     According to the Indemnity Plan, the amount of covered expenses "is based on the

amount of charges allowed under Medicare rules instead of the Reasonable Charges as defined by

the Plan."  *Id.* at 40.  United Insurance then processes the claim by subtracting the amount payable

under Medicare from the amount of the covered expenses under the Indemnity Plan.  To the extent

that the Indemnity Plan provides a greater benefit than the Medicare payment, the difference is

paid by the Plan.  *Id.*  "The amount payable under Medicare which is subtracted from this Plan's

benefits is determined as the amount that would have been payable under Medicare."  *Id.*

33.     Once an employee becomes eligible for Medicare, the Indemnity Plan pays benefits under the Plan as if the participant were covered under Medicare, whether the participant has enrolled in Medicare or not.  *Id.*

34.     If a participant "receives services from a provider who has elected to opt-out of Medicare[,] Medicare benefits are determined as if the services were covered under Medicare Parts A and B and the provider had agreed to limit charges to the amount of charges allowed under Medicare rules." *Id.* at 41.

35.     As discussed below, Plaintiff alleges that United improperly estimates Medicare benefits for all United Plans for which Medicare may be a primary payer.  Indeed, United's estimates greatly exceed the amounts that Medicare actually pays and result in United under-reimbursing United Plan participants and beneficiaries for covered services.

### 3.     Plaintiff's Benefit Claims

36.     Plaintiff received medical care from various physicians who charged varying amounts for her visits.  Initially, Plaintiff's claims were processed by United Insurance with the Choice Plus Plan as the primary payer.  After Plaintiff became covered by Medicare, United Insurance began processing Plaintiff's claims with the Choice Plus Plan as secondary to Medicare.

37.     Some of Plaintiff's medical providers have opted out of Medicare.  Thus, Plaintiff is responsible for the amount that Medicare would have paid had Plaintiff's providers participated in Medicare.

38.     On numerous occasions, United Insurance improperly determined the amount that Medicare would have paid had Plaintiff's claim been covered by Medicare.

39.     On July 12, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $525.  In an EOB dated July 16, 2010, United

Insurance determined that Medicare would have paid $440.  However, the CMS fee schedule database indicates that Medicare would have paid a total of $297.49 for the services rendered.

40.     On August 6, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $2,000.  The EOB dated August 30, 2010, reflects that United Insurance determined that Medicare would pay $1,600.  However, the CMS fee schedule database indicates that Medicare would have paid $191.61, which is less than an eighth of the amount United Insurance had determined.

41.     On August 11, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $3,000.  An EOB dated September 27, 2010, states that Medicare would have paid $2,400.  The EOB notes:

> Medicare pays benefits before your group health plan.  Since the patient did not enroll for Medicare part A and/or B we processed this claim *after estimating how much Medicare parts A and/or B would have covered*.  The patient is responsible for the difference between the billed charge and the amount paid by this Plan.

(Emphasis added).

42.     However, the CMS fee schedule database indicates that Medicare would have paid a total of $508.88—only a fraction of what United Insurance determined Medicare would pay.

43.     On August 26, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $300.  The EOB dated September 27, 2010, reflects that Medicare would have paid $240.  The CMS database indicates that Medicare actually would have paid $55.23, less than a quarter of the amount United Insurance determined it would pay.

44.     On November 19, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $1,300.  The EOB dated January 6, 2011,

reflects United Insurance's determination that Medicare would have paid $1,040.  The EOB also notes:

> Medicare pays benefits before your group health plan.  Since the patient used a provider who opted out of Medicare, we processed this claim *after estimating how much Medicare parts A and/or B would have covered*.  The patient is responsible for the difference between the billed charge and the amount paid by this Plan.

(Emphasis added).

45.    Once again, United Insurance vastly overestimated the amount Medicare would have paid had Plaintiff's provider been covered by Medicare.  The CMS database indicates that Medicare would have paid $114.26—an amount that is nowhere near the amount that United Insurance determined.

46.    On February 1, 2011, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $300.  The EOB dated March 24, 2011, states that Medicare would have paid $240.  United Insurance did not cover any amount for this procedure. The CMS database indicates that Medicare actually would have paid $55.23.

47.    On February 24, 2011, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $600.  The EOB dated April 20, 2011, states that Medicare would have paid $480.  United Insurance did not cover any amount for this procedure, and the CMS database indicates that Medicare actually would have paid $45.54, less than a tenth of the amount United Insurance determined it would pay.

48.    Plaintiff has additional outstanding claims for which she has not yet received EOBs, which, on information and belief, will result in grossly inflated estimates of Medicare payments by United Insurance.

**B.**     **United Improperly Calculates the Reimbursement Charge for Out-of-Network Services**

49.     United contracts with certain medical providers to provide covered services to the United Plans' participants and beneficiaries.  Accordingly, on information and belief, many of the United Plans differentiate between services provided by such in-network providers from those with whom United has not contracted—so-called out-of-network ("ONET") providers.  Because United has not negotiated fees with ONET providers, a United Plan might provide for reimbursement of less than such providers' service charges, leaving the participants and beneficiaries liable for any difference.

50.     The Choice Plus Plan SPD defines Non-Network Benefits as "Benefits for Covered Health Services that are provided by a non-Network Physician, non-Network facility, or other non-Network provider."  Choice Plus Plan SPD at 84.  The SPD does not describe how payments for Non-Network Benefits are calculated.

51.     On July 19, 2010, Plaintiff was seen by a medical professional and claims were submitted to United Insurance in the amounts of $150 and $75.  The EOB dated October 29, 2010, limited the amounts allowed for these claims to $10 and $15 respectively.  The EOB also notes:

> Your Plan covers reasonable charges for covered health services.  The reasonable charge is based on amounts charged by other physicians or health care professionals in the area for similar services or supplies.  Benefits are not available for that portion of the charge that exceeds the reasonable charge determined for this service.

52.     On July 29, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $300.  The EOB dated October 29, 2010, limited the amount allowed for this claim to $180.  The EOB contains the same notation set forth in the paragraph above.

53.     The AllianceBernstein L.P. U.S. Benefits Handbook (the "Handbook") at 106 defines a "Reasonable and Customary" charge as "the prevailing charge made by providers of

similar expertise for a similar procedure in a particular geographic area, as determined by the Claims Administrator."  According to a letter dated March 4, 2011, from James Colavecchio, United HealthCare, Manager, Account Management, to Brian W. Fagan, Vice-President-Global Benefits & Mobility, AllianceBernstein L.P., and an enclosure to the letter (the "Colavecchio Letter"), United HealthCare, a subsidiary of Defendant UnitedHealth Group Inc., uses databases maintained by Ingenix Inc. ("Ingenix") to determine reasonable and customary charges for ONET services.  Ingenix is a subsidiary of UnitedHealth Group Inc.  From the letter, it appears that the Ingenix databases are used for this purpose by all UnitedHealth Group Inc. subsidiaries/affiliates.

54.    The Ingenix databases have been the subject of several lawsuits.  They have also been the subject of a settlement agreement between the New York State Attorney General (the "NYAG") and UnitedHealth Group Inc. entered into on January 13, 2009, under Investigation No. 2008-I6I (the "Settlement").

55.    Among other things, the NYAG's investigation determined that Ingenix skewed the databases so that reasonable and customary charges would be undervalued resulting in lower reimbursements to United Plan participants and beneficiaries.  The investigation also found that UnitedHealth Group Inc.'s ownership of the databases as well as its subsidiary insurance companies' use of the databases was a conflict of interest.

56.    The Settlement thus provides for the establishment of a database by FAIR Health, Inc., a nonprofit group selected by the NYAG, to replace the Ingenix database.  This process is being funded, at least in part, by a $50 million UnitedHealth Group Inc. contribution.

57.    The new database is apparently not yet complete.  As such, UnitedHealth Group Inc. and its subsidiaries have continued to use the Ingenix databases to determine ONET reimbursements for the United Plans, including the Choice Plus Plan.

58.     The Settlement required UnitedHealth Group Inc. to post certain information on its website.  Among other things, that portion of the website states:

> If your health care plan requires payment using the term "reasonable and customary" or similar language mentioned above with respect to medical and surgical procedures performed and billed by health care professionals or health care provider group practices, affiliates of UnitedHealth Group most commonly refer to a schedule of charges created by Ingenix, Inc., a wholly owned subsidiary of UnitedHealth Group when determining the maximum amount they will pay for such benefits.  Ingenix publishes two databases called the Prevailing Healthcare Charges System database ("PHCS Database") and the Medical Data Research database ("MDR Database"). The information in these databases is updated and published by Ingenix at scheduled times each year.  UnitedHealth Group affiliates which administer health care plans based on the term "reasonable and customary" or similar standards use the medical or surgical modules of one of these databases for reimbursement of professional fees for medical and surgical services.

*Important Notice on Payment of Out-of-Network Benefits*, http://www.uhc.com/legal/ payment_of_out_of_network_benefits/relatedinformation/dd1c6963c5190210VgnVCM20000030 10b10a____.htm (last visited May 18, 2011).

59.     However, in so doing, UnitedHealth Group Inc. and its subsidiaries have not, upon information and belief, done anything to correct the data in the Ingenix databases that the NYAG investigation found flawed.  Therefore, UnitedHealth Group Inc. and subsidiaries/affiliates continue to reimburse ONET services at less than the actual reasonable and customary rate required.

**C.     United Insurance Failed to Comply with ERISA's Claims Procedure Requirements**

60.     ERISA's claims procedure section provides:

In accordance with regulations of the Secretary [of Labor], every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

ERISA § 503, 29 U.S.C § 1133.

61.     The claims procedure regulation promulgated by the Secretary of Labor (the

"Regulation") provides that the denial or partial denial of a claim constitutes an "adverse benefit

determination."  *See* 29 C.F.R. § 2560-503-1(f)(1).  All of the claims discussed above were wholly

or partially denied and thus each of those denials (*i.e.*, the EOBs discussed above) constitutes an

adverse benefit determination.

62.     The Regulation further provides, in pertinent part, that the plan administrator must

notify a claimant of an adverse benefit determination.  29 C.F.R. § 2560-503-1(g)(1).

Furthermore, the Regulation states:

> The notification shall set forth, in a manner calculated to be understood by the
> claimant –
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the
> claimant to perfect the claim and an explanation of why such material or
> information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to
> such procedures, including a statement of the claimant's right to bring a civil action
> under section 502(a) of [ERISA] following an adverse benefit determination on
> review;
>
> (v) In the case of an adverse benefit determination by a group health plan [as here]
> or a plan providing disability benefits,
>
>> (A) If an internal rule, guideline, protocol, or other similar criterion was
>> relied upon in making the adverse determination, either the specific rule,
>> guideline, protocol, or other similar criterion; or a statement that such a rule,
>> guideline, protocol, or other similar criterion was relied upon in making the
>> adverse determination and that a copy of such rule, guideline, protocol, or
>> other criterion will be provided free of charge to the claimant upon request

*Id.*

63.     While the Choice Plus Plan SPD at 54 states only that "[a] denial notice will explain the reason for the denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures," the Handbook at 92-93, incorporates 29 C.F.R. § 2560-503-1(g)(1) verbatim.

64.     The EOBs discussed above do not come close to satisfying the Regulation or the Handbook, because, among other things: (1) they are essentially incomprehensible and therefore not written "in a manner calculated to be understood by the claimant"; (2) they do not adequately state the specific reason or reasons for the adverse determination and set forth no references to the plan provisions on which they are based; (3) they did not inform Plaintiff of what additional material or information she needed to provide in order to perfect her claims; and (4) other than the October 29, 2010, EOB, they did not inform Plaintiff of her right to receive a copy of any internal rule or any other such material that was relied upon in making the adverse benefit determinations.

65.     The Regulation requires that every plan provide for "a full and fair review" of any adverse benefit determination.  29 C.F.R. § 2560-503-1(h)(1).  A plan's claims procedures do not provide a full and fair review unless they:

> (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits; [and]
>
> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section[.]

29 C.F.R. § 2560-503-1(h)(2).

66.     As set forth above, the Choice Plus Plan SPD states that the denial notice "will provide the claim appeal procedures."  Choice Plus Plan SPD at 54.  Additionally, on appeal, upon a claimant's request and free of charge, the claimant has "the right to reasonable access to

(including copies of) all documents, records, and other information relevant to [her/his] claim for

Benefits."  *Id.* at 57.  The Handbook, at 93-94, contains essentially a verbatim recitation of 29

C.F.R. §§ 2560-503-1(h)(1), (2).

      67.     The EOBs Plaintiff received did not inform her of her right to make additional

submissions.  Nor did they inform her of her right to receive documents, records, and other

information.  Rather, they merely stated:

> A review of this benefit determination may be requested by submitting your appeal
> to us in writing at the following address: UnitedHealthcare Appeals, P.O. Box
> 30432, Salt Lake City, UT 84130-0432.  The request for your review must be made
> within 180 days from the date you receive this statement.  If you request a review
> of your claim denial, we will complete our review not later than 30 days after we
> receive your request for review.

      68.     Through her retained counsel, Plaintiff sent a letter dated January 21, 2011

("Plaintiff's Appeal Letter"), to UnitedHealthcare Appeals that addressed, *inter alia*, the Medicare

payment and out-of-network service charge miscalculations referenced above.  Plaintiff's Appeal

Letter appealed the determinations to deny benefits, in whole or in part, pursuant to the EOBs

dated July 16, 2010, August 30, 2010, September 27, 2010, October 29, 2010, and January 6,

2011.  Plaintiff also enclosed a notarized Authorization from Plaintiff authorizing communication

with her counsel about her claims.  Plaintiff's Appeal Letter stated that the EOBs failed to

conform to the notice requirements of 29 C.F.R. § 2560.503-1(g)(1) and requested, among other

things: (a) reference to the plan provisions pursuant to which the claims were denied as required

by C.F.R. § 2560.503-1(g)(1)(ii); (b) all of the other information required by C.F.R. § 2560.503-

1(g)(1); and (c) the documents, records, and other information relevant to Plaintiff's claims

pursuant to C.F.R. § 2560.503-1(h)(2)(iii) and C.F.R. § 2560.503-1(m)(8), the latter of which

defines what documents, records, or other information are considered relevant to a claim.

69.     Plaintiff's Appeal Letter further stated that a written statement in support of Plaintiff's appeal would be provided within 60 days of receipt of the documents and other information requested.

70.     Soon thereafter, United Insurance appeals coordinators sent Plaintiff—rather than her authorized counsel—five letters, two of which were dated February 21, 2011, and three others dated February 24, 2011, February 28, 2011, and March 1, 2011[1] (the "Appeal Denial Letters"). The Appeal Denial Letters state that Plaintiff's appeals were reviewed, and a determination was made that they were processed correctly.

71.     In its Appeal Denial Letters, United Insurance ignored the requests for information under the Regulation and disregarded that Plaintiff's Appeal Letter had indicated that a statement in support of the appeal would be provided after United Insurance had complied with the requests set forth in that letter.

72.     As with the initial EOBs, the Appeal Denial Letters failed to comply with the Regulation and the Choice Plus Plan's appeal procedures.  *See* 29 C.F.R. § 2560.503-1(j) (setting forth the required content of a notice of benefit determination on review, which is similar to the content detailed in 29 C.F.R. § 2560-503-1(g)(1), *supra* ¶ 62).

73.     Although each of the Appeal Denial Letters[2] stated that Plaintiff had "the right to receive, on request and free of charge, a copy of any internal rule, guideline or protocol, as well as any other documents relevant to your appeal that we *relied on* in making this decision" (emphasis added), this offer fell far short of the Regulation's requirements.  Plaintiff was entitled to receive more than what United Insurance simply "relied on."  Under the Regulation, Plaintiff is entitled to, "free of charge, reasonable access to, and copies of, all documents, records, and other information

---

[1] The March 1, 2011 letter purports to be a "corrected letter," superseding one of the February 21, 2011 letters.

[2] Other than the February 21, 2011 letter which was superseded by the March 1, 2011 letter.

relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section."  29 C.F.R. § 2560.503-1(j)(3).

74.     Paragraph (m)(8) provides, in pertinent part:

A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information

(i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination[.]

29 C.F.R. § 2560.503-1(m)(8).

75.     The four operative Appeal Denial Letters informed Plaintiff of the availability of a second appeal.  Plaintiff was informed that she would have to request such an appeal within 60 days from the date she received the letters.  However, the Regulation requires that plans provide participants in group health plans, such as the United Plans, including the Defendant Plans, 180 days within which to appeal following receipt of an adverse benefit determination.  *See* 29 C.F.R. 2560.503-1(h)(3)(i).  While the Regulation permits plans to have two levels of appeals from an adverse benefit determination, it does not alter the foregoing requirement that a participant have 180 days in which to seek the second appeal.  *See* 29 C.F.R. 2560.503-1(i)(2)(iii).

76.     Regardless, by letter dated March 16, 2011, well within the 60 day limit imposed by United Insurance, Plaintiff's counsel informed United Insurance that Plaintiff would be filing appeals from the Appeal Denial Letters and again requested the documents that should have been provided after the initial claims denials.  The letter concluded: "If you have any questions, please do not hesitate to contact the undersigned [Plaintiff's counsel]."  The letter also enclosed another

copy of Plaintiff's Authorization permitting the plan to communicate with her counsel as well as copies of the Appeal Denial Letters.

77.     United Insurance responded with four letters dated March 23, 2011, April 4, 2011, and two dated April 7, 2011, again sent directly to Plaintiff—despite 29 C.F.R. § 2560-503-1(b)(4), which permits authorized representatives to act on behalf of a claimants.  The March 23 and two April 7 letters are all the same form letter addressed to "Dear Member or Provider."  They acknowledge the receipt of Plaintiff's "request for appeal" and state that the appeal will be decided within the time required by law.  The time required by law is 30 days from receipt of the request for appeal.  29 C.F.R. § 2560-503-1(h)(i)(2)(iii).  No decision has been received.

78.     The April 4 letter acknowledges a request for information and encloses one page from the Choice Plus Plan SPD which United Insurance asserts therein was "the information used in making the determination" of a claim that had been denied in the July 16, 2010, EOB.

79.     Upon Plaintiff's receipt of the March 23, 2011 letter, she forwarded it to her counsel.  On March 31, 2011, Plaintiff's counsel wrote to United Insurance, again informing United Insurance that Plaintiff is a represented party and noting that Plaintiff's March 16, 2001 letter was a request for documents under the Regulation, not a request for an appeal.  The March 23 letter once again requested the documents available under the Regulation.

80.     To date, no response to this letter has been received nor have the documents been provided.

**D.     AllianceBernstein's and United Insurance's Failure to Provide the Choice Plus Plan's Method for Calculating Reimbursement Rates for Out-of-Network Services Violates ERISA**

81.     In addition to the Regulation's requirement that certain documents be provided on request, ERISA also provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the

latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

82.     Accordingly, in a letter dated January 21, 2011, Plaintiff requested that AllianceBernstein provide documents and information detailing the method used to calculate reimbursement rates for out-of-network services.  In particular, Plaintiff requested, among other things: (a) the geographical area used to determine the prevailing fees for services provided under the Welfare Plan (the "Reasonable Charge"); (b) the method used to determine the amount of the Reasonable Charge for services; and (c) all supporting documents related to (a) and (b).

83.     Similar documents and information were also requested from United Insurance.

84.     In response, AllianceBernstein, through its outside counsel, Orrick, Herrington & Sutcliffe LLP, provided the Colavecchio Letter that purportedly "explains how UnitedHealthcare determines the reasonable & customary charge for out of network services."  However, the letter continues that "UnitedHealthcare is unable to release its provider fee schedule as it is proprietary information."

85.     ERISA § 102, 29 U.S.C. § 1022, requires plans to provide their participants with summary plan descriptions.  Among other things, an SPD is required to apprise participants of their rights under the plan.  If a participant is not entitled to know how UnitedHealth Group Inc. and its subsidiaries, including United Insurance, calculates out-of-network reimbursement rates or what the reimbursement amount is for a particular service, the participant has not been apprised of her rights under the plan.

86.     The failure to provide this information is actionable:

(1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 606, section 101(e)(1), section 101(f), or section 105(a) [of ERISA] with respect to a participant or beneficiary, or (B) who fails or refuses to comply

with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day[3] from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

ERISA § 502(c), 29 U.S.C. § 1132(c).

87.     While AllianceBernstein is the named Administrator of the Choice Plus Plan, United Insurance is its Claims Administrator.  Thus one or both may be held liable for failure to provide the documents requested pursuant to both Plaintiff's January 21, 2011 letter and the numerous letters sent to United Insurance.

## V.   CLASS ACTION ALLEGATIONS

88.     **Class Definitions**.  Plaintiff brings this action on her own behalf and on behalf of:

(a)     A "Medicare Class" defined as:

All participants and beneficiaries who sought benefits from United Plans for which Medicare was the primary payer and United estimated Medicare payments when the plan in question required the plan to use the actual amount payable by Medicare, thus causing the participants and beneficiaries to receive lower benefits than required by the plan.

(b)     An "ONET Class" defined as:

All United Plan participants and beneficiaries who sought services from out-of-network providers and whose rate of reimbursement was determined using the Ingenix database.

(c)     An "Appeal Class" defined as:

All United Plan participants and beneficiaries.

---

[3] This amount has been increased to $110 per day.  29 C.F.R. § 2575.502c-1.

89.     **Numerosity**.  The members of each class are so numerous that joinder of all members is impracticable.  Upon information and belief, each class consists of thousands of health care subscribers whose benefits under the United Plans were underpaid because United Insurance overstates Medicare payments and improperly calculates ONET reimbursement rates, and who did not receive a full and fair review of their claims.  The precise number of members in each class is within Defendants' custody and control.  Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for each class.  Common questions of law and fact exist as to all class members and predominate over any questions affecting solely individual members of each class, including the class action claims and issues described herein.

90.     **Commonality**.  The following common class claims and issues arise for Plaintiff and the Class:

      (a)     whether Defendants violated ERISA;

      (b)     whether Defendants' alleged ERISA violations, if proved, justify injunctive relief;

      (c)     whether Defendants' coordination of benefits procedures complied with ERISA;

      (d)     whether Defendants improperly calculated ONET reimbursement rates; and

      (e)     whether Defendants' claims procedures violate federal regulation.

91.     **Typicality**.  Plaintiff's claims are typical of the claims of the class members because, as a result of the conduct alleged herein, Defendants have breached their statutory and contractual obligations to Plaintiff and the class through and by uniform patterns or practices as described above, including but not limited to using self-serving determinations of Medicare payments to coordinate benefits payable under the United Plans, improperly calculating ONET reimbursement rates, and not providing a full and fair review of medical claims.

92.   **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of each class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and in the prosecution of ERISA claims, and has no interests antagonistic to or in conflict with those of the class.  For these reasons, Plaintiff is an adequate class representative under Federal Rule of Civil Procedure 23.

93.   **Rule 23(b)(1)(B) Requirements**.   The prosecution of separate actions by the members of each class would create a risk of adjudications with respect to individual members of each class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

94.   **Other Rule 23(b) Requirements.**  Class action status is also warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of each class would create a risk of establishing incompatible standards of conduct for Defendants; and under 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to each class as a whole; and in the alternative under 23(b)(3) because questions of law or fact common to members of each class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VI.   CAUSES OF ACTION

**A.   Count I: Claim for Benefits under Certain of the United Plans (Medicare)**

95.   Plaintiff incorporates by this reference the paragraphs above.

96.   This Count is alleged against all Defendants.

97.     This Count is brought under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), to recover benefits due Plaintiff and the members of the Medicare Class under the terms of certain of the United Plans.

98.     The United Plans provide that if a plan participant is eligible for Medicare, Medicare will become the primary payer, and where Medicare does not make a payment, United will nonetheless determine the amount Medicare would have made and deduct that amount from the payment of benefits it makes (the "United Medicare Plans").

99.     As alleged above, contrary to their duties and obligations under ERISA, Defendants other than AllianceBernstein failed to properly determine Medicare payment amounts by estimating Medicare payments instead of using actual Medicare payment rates, thereby improperly calculating benefit payment amounts under the United Medicare Plans.

100.    As a consequence, Plaintiff and members of the Medicare Class suffered tremendous losses.  If Defendants had properly calculated benefits under the United Medicare Plans, Plaintiff and the members of the Medicare Class would not have suffered losses.

101.    Pursuant to ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), Defendants are liable to recalculate the benefits of Plaintiff and the members of the Medicare Class using the actual Medicare payment rates and, having done so, to reimburse Plaintiff and the members of the Medicare Class in the amount necessary to make them whole.

102.    All Defendants should be enjoined from estimating Medicare payments when the United Medicare Plan requires, as do the Defendant Plans, the use of actual Medicare payment amounts.

**B.      Count II: Claim for Benefits under Certain of the United Plans (Out-of-Network)**

103.    Plaintiff incorporates by this reference the paragraphs above.

104.    This Count is alleged against all Defendants except the Indemnity Plan.

105.    This Count is brought under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), to recover benefits due Plaintiff and the members of the ONET Class under the terms of certain of the United Plans.

106.    As alleged above, by using the Ingenix database, Defendants failed to properly determine ONET reimbursement rates, and, therefore, improperly calculated benefit payment amounts under certain of the United Plans (the "United ONET Plans").

107.    As a consequence of Defendants' improper determinations and calculations alleged in this Count, Plaintiff and members of the ONET Class suffered tremendous losses.  If Defendants had properly calculated benefits under the United ONET Plans, Plaintiff and the members of the ONET Class would not have suffered losses.

108.    Pursuant to ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), Defendants are liable to recalculate the benefits of Plaintiff and the members of the ONET Class by calculating reasonable and customary charges in accordance with appropriate procedures and, having done so, to reimburse Plaintiff and the members of the ONET Class in the amount necessary to make them whole.

109.    All Defendants should be enjoined from using the Ingenix databases to calculate reasonable and customary charges under the United ONET Plans until the flaws in those databases have been corrected and should be enjoined to calculate reasonable and customary charges in such a manner as does not favor United and/or the plan sponsors of United ONET Plans.

**C.      Count III: Failure to Provide Full and Fair Review as Required by ERISA**

110.    Plaintiff incorporates by this reference the paragraphs above.

111.    This Count is alleged against all Defendants.

112.    As set forth above, as the Defendant Plans' Claims Administrator, United Insurance functioned and continues to function as the "Plan Administrator" within the meaning of ERISA

§ 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary within the meaning of ERISA § 3(21)(A), 29

U.S.C. § 1002(21)(A).  Plaintiff is entitled to receive a "full and fair review" of all claims denied

by United Insurance and to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for

failure to comply with these requirements.

113.    Although United Insurance was obligated to do so, it failed to provide a "full and

fair review" of Plaintiff's denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and the

Regulation.

114.    By engaging in the conduct described herein, United Insurance (a) failed to provide

a "full and fair review"; (b) failed to provide reasonable claims procedures; and (c) failed to make

necessary disclosures to Plaintiff.

115.    Upon information and belief, all subsidiaries/affiliates of UnitedHealth Group Inc.

engage in the same deficient claims procedures as United Insurance.

116.    Plaintiff and the members of the Appeal Class are entitled to injunctive and

declaratory relief to remedy the continuing violation of these provisions.

**D.      Count IV: Failure to Provide Information**

117.    Plaintiff incorporates by this reference the paragraphs above.

118.    This Count is alleged against United Insurance and AllianceBernstein.

119.    This Count is brought under ERISA §§ 502(a)(1)(A), (c)(1)(B), 29 U.S.C.

§§ 1132(a)(1)(A), (c)(1)(B).

120.    Plaintiff Marianne Gates is entitled to have the Court assess a penalty of up to $110

per day for each day more than 30 days from her requests that Defendants AllianceBernstein and

United Insurance provide her with documents as required by ERISA.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

(A)      A Declaration that one or more United Plans failed to pay Plaintiff and the members of the Medicare Class and/or the ONET Class the full benefits due;

(B)      A Declaration that the United Plans violated their disclosure and related obligations under ERISA ;

(C)      A Declaration that the United Plans violated federal claims procedures and failed to provide a "full and fair review" of appeals under ERISA § 503, 29 U.S.C. § 1133 and the Regulation;

(D)      An Order compelling Defendants to make good to Plaintiff and the members of the Medicare Class and the ONET Class all losses resulting from Defendants' breaches;

(E)      An Order compelling Defendants to modify their claims procedures and document disclosure practices to ensure:

      1.      that they comply with ERISA and the Regulation; and

      2.      that they comply with the terms of the United Plan in question to the extent that plan's terms comply with ERISA;

(F)      Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class;

(G)      Actual damages in the amount of any losses Plaintiff and the members of the Medicare Class and the ONET Class have suffered;

(H)      An Order awarding costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

(I)      An Order awarding attorneys' fees pursuant to the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

(J)     An order for equitable restitution and other appropriate equitable and injunctive

relief against Defendants.

Dated: New York, NY
        May 20, 2011.

Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

David S. Preminger
dpreminger@kellerrohrback.com
770 Broadway, Second Floor
New York, NY  10003
Telephone:  (646) 495-6198
Facsimile:  (646) 495-6197

**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Derek W. Loeser
dloeser@kellerrohrback.com
Erin M. Riley
eriley@kellerrohrback.com
Sarah H. Kimberly
skimberly@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone:  (206) 623-1900
Facsimile:  (206) 623-3384