UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNE GATES, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UHIC HOLDINGS, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE, INC., OXFORD HEALTH PLANS LLC, ALLIANCEBERNSTEIN L.P., UNITED HEALTHCARE CHOICE PLUS COPAY PLAN FOR ALLIANCEBERNSTEIN L.P., ALLIANCEBERNSTEIN L.P. UNITED HEALTHCARE INDEMNITY PLAN, and XYZ ENTITIES 1-100,<br>                              Defendants. | **Case No. 11-3487 PKC**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## I.    INTRODUCTION

1.      Plaintiff Marianne Gates brings this Class Action Complaint against Defendants pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").

2.      Plaintiff and the members of each putative class, as defined below, are or were participants in and/or beneficiaries of employee health care plans sponsored by private companies and partially or fully administered and/or insured by Defendant UnitedHealth Group Inc. or any of its affiliates or subsidiaries, including United HealthCare Insurance Co.

3.      The Defendant Plans, as well as many if not all of the group health care plans administered by Defendant UnitedHealth Group Inc. or any of its affiliates or subsidiaries, are governed by ERISA, which, among other things, requires that they and those who administer

them comply with the terms and conditions of the applicable plans in making coverage determinations relating to the plans' participants and beneficiaries.

4.      As detailed below, Plaintiff alleges that both ERISA and the Defendant Plans' terms were violated by, among other things, the miscalculation of the amount Medicare would have paid for certain medical services and the reimbursement amount for out-of-network medical services.

5.      Furthermore, Defendant United HealthCare Insurance Company failed to provide a full and fair review of Plaintiff's claims, failed to provide a reasonable claims procedure, and failed to provide information describing how reimbursements for out-of-network services were calculated.  These problems also affect the ERISA group health care plans administered by Defendant UnitedHealth Group Inc. and any of its affiliates or subsidiaries.

## II.     JURISDICTION AND VENUE

6.      **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.      **Personal Jurisdiction**.  ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

8.      **Venue**.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, and at least one Defendant resides in this District and all Defendants conduct business within this District, either directly or through wholly owned and controlled subsidiaries.

### III.   THE PARTIES

**A.   Plaintiff**

9.      Marianne Gates is a retired employee of AllianceBernstein L.P.  She is a participant in the Defendant United Healthcare Choice Plus Copay Plan for AllianceBernstein L.P. and/or the Defendant AllianceBernstein L.P. United HealthCare Indemnity Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

10.      Plaintiff resides in New York, New York.

**B.   Defendants**

11.      **UnitedHealth Group Inc.**  UnitedHealth Group Inc. ("UnitedHealth") is a corporation organized under the laws of Minnesota, with its main New York metro office located at 2 Penn Plaza, 7th Floor, New York, New York.  It provides, among other things, health benefit plans and services to national employers, public sector employers, mid-sized employers, and small businesses.  *Unitedhealth Group, Inc.*, BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=104673 (last visited Sept. 6, 2011).  Either itself or through its subsidiaries and affiliates, over which it exercises dominion and control, UnitedHealth administers group healthcare plans subject to ERISA ("United Plans") around the country.

12.      **United HealthCare Services, Inc.**  United HealthCare Services, Inc. provides directly or through its subsidiaries and affiliates, *inter alia*, health benefit plans and services for companies.  *United HealthCare Services, Inc.*, BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=996399 (last visited Sept. 6, 2011).  Its principal place of business is in Edina, Minnesota.  United HealthCare Services, Inc. operates as a subsidiary of Defendant UnitedHealth.  *Id.*

13.     **UHIC Holdings, Inc.**  UHIC Holdings, Inc., which operates as a subsidiary of United HealthCare Services, Inc., is a holding company that "underwrites insurance plans to individuals and small to midsized employer groups" through its subsidiary Defendant United Healthcare Insurance Company. *UHIC Holdings, Inc.*, Bloomberg Businessweek, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=28957325 (last visited Sept. 6, 2011).  UHIC Holdings, Inc.'s principal place of business is in Edina, MN.

14.     **United HealthCare Insurance Company.**  United HealthCare Insurance Company ("United Insurance") is a licensed insurance company organized under the laws of Connecticut, with its main New York metro office located at 2 Penn Plaza, 7th Floor, New York, New York.  United Insurance, either directly or through its subsidiaries and affiliates, "underwrites insurance plans to individuals and small to midsized employer groups." *United Healthcare Insurance Company*, Bloomberg Businessweek, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=4157534 (last visited Sept. 6, 2011).  It is licensed to underwrite accident, health and life insurance. *Id.*  United Insurance is a subsidiary of Defendant UHIC Holdings, Inc. and is the Claims Administrator for both Defendant Plans.  In that role, United Insurance is the Plan Administrator of the Defendant Plans within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 3(16)(A), and a fiduciary of the Defendant Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 3(21)(A).

15.     **UnitedHealthcare, Inc.**  UnitedHealthcare, Inc. is a subsidiary of Defendant United HealthCare Services, Inc. that provides "healthcare planning and management services." *UnitedHealthcare, Inc.*, Bloomberg Businessweek, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=27713266 (last visited Sept. 6, 2011).  Its principal place of business is in Edina, MN.

16.    **Oxford Health Plans LLC**.  Oxford Health Plans LLC is a subsidiary of UnitedHealth that "provides health benefit plans primarily in New York, New Jersey, and Connecticut" through its subsidiaries.  *Oxford Health Plans LLC*, BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=32587 (last visited Sept. 6, 2011).  Its principal place of business is in Trumbull, CT.

17.    **XYZ Entities 1-100.**  XYZ Entities 1-100 are the subsidiaries and/or affiliates of UnitedHealth, United HealthCare Services, Inc., UHIC Holdings, Inc., United Insurance, UnitedHealthCare, Inc., and Oxford Health Plans LLC, the identities of which (other than United HealthCare Services, Inc., UHIC Holdings, Inc., United Insurance, UnitedHealthCare, Inc., and Oxford Health Plans LLC themselves) that are currently not known to Plaintiff and that act as claims administrators for one or more of the United Plans.  In that capacity, each such entity is a Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 3(16)(A), and a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 3(21)(A).

18.    Defendants UnitedHealth, United HealthCare Services, Inc., UHIC Holdings, Inc., United Insurance, UnitedHealthCare, Inc., and Oxford Health Plans LLC, together with their subsidiaries and affiliates (XYZ Entities 1-100), are sometimes referred to herein collectively as the "United Defendants."

19.    Upon information and belief, each of the United Defendants, either directly or through its subsidiaries and affiliates, is a claims administrator/fiduciary of one or more of the United Plans, which are covered by ERISA.

20.    **AllianceBernstein L.P.**  AllianceBernstein L.P. ("AllianceBernstein") is a Delaware corporation with its principal place of business and corporate headquarters located at 1345 Avenue of the Americas, New York, New York.  It is the Plan Administrator and Plan

Sponsor of both Defendant Plans within the meaning of ERISA §§ 3(16)(A), (B), 29 U.S.C. §§ 1002(16)(A), (B).

21.     **The United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P.** The United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P. (the "Choice Plus Plan") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). The Choice Plus Plan is self-funded by AllianceBernstein.

22.     **The AllianceBernstein L.P. United HealthCare Indemnity Plan.**  The AllianceBernstein L.P. United HealthCare Indemnity Plan (the "Indemnity Plan") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).  The Indemnity Plan is self-funded by AllianceBernstein.

23.     The Choice Plus Plan and the Indemnity Plan are sometimes referred to herein collectively as the "Defendant Plans."

24.     Because the Defendant Plans are self-funded by AllianceBernstein, benefits paid under the Plans are funded through direct payments from AllianceBernstein's assets.

## IV.   FACTS

**A.     United Improperly Determines the Amount Medicare Pays on Benefits Claims**

25.     After enrolling in Medicare on August 1, 2010, Plaintiff purportedly should have been transferred from the Choice Plus Plan to the Indemnity Plan.  As of the filing of this complaint, Plaintiff has not yet been transferred to that Plan.

26.     Under the terms of both Defendant Plans, Plaintiff's coverage is secondary to her benefits under Medicare.  *See* Summary Plan Description United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P., Jan. 1, 2009 at 62-63 ("Choice Plus Plan SPD");

AllianceBernstein L.P. United HealthCare Indemnity, Jan. 1, 2009 at 40 ("Indemnity Plan SPD").

27.     Medicare is required to use the Resource-Based Relative Value Scale ("RBRVS") to determine a medical provider's payment amount for covered services.  The RBRVS assigns medical procedures a relative value that is then adjusted according to geographic region and multiplied by a fixed conversion factor, which changes annually.  The RBRVS's underlying data is published in the Federal Register.  Medical procedures are identified by Current Procedural Terminology ("CPT") codes.

28.     The Centers for Medicare & Medicaid Services ("CMS")—a federal agency within the Department of Health and Human Services that administers the Medicare program—makes available a searchable online fee schedule database that provides Medicare payment amounts, depending on year, geographic region, CPT code, and other parameters.  *See* Physician Fee Schedule Search, https://www.cms.gov/apps/physician-fee-schedule/search/search-criteria.aspx.

**1.     The Choice Plus Plan's Coordination of Benefits with Medicare**

29.     The Choice Plus Plan SPD provides that if a participant in the Choice Plus Plan is enrolled in Medicare on a primary basis, Medicare pays benefits as the primary payer and the Choice Plus Plan will pay as secondary payer.  *Id.* at 62-63.

30.     When the Choice Plus Plan "is secondary, it may reduce its benefits by the total amount of benefits paid or provided by all [primary plans]."  *Id.* at 62.

31.     As each claim is submitted, United Insurance, as the Claims Administrator of the Choice Plus Plan, will "(1) Determine [the Plan's] obligation to pay or provide benefits under its contract; (2) Determine the difference between the benefit payments that [the Choice Plus Plan]

would have paid had it been the Primary Coverage Plan and the benefit payments paid or provided by [the primary plan]." *Id.*

32.     If the primary plan paid less than is called for under the Choice Plus Plan, the Choice Plus Plan will pay the difference. *Id.*

33.     With regards to Medicare, the Choice Plus Plan states that it "reduces its benefits" for plan participants who are eligible for Medicare when Medicare would be the Primary Plan. *Id.*

34.     Once a Choice Plus Plan participant becomes eligible for Medicare, the Choice Plus Plan pays benefits under the plan as if Medicare were the primary payer, whether the participant has enrolled in Medicare or not. *Id.* at 75. Furthermore, "Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare, even if . . . [t]he person receives services from a provider who has elected to opt-out of Medicare." *Id.* at 62-63.

35.     In a letter from AllianceBernstein to Plaintiff dated November 30, 2010, AllianceBernstein explained:

> [I]f a provider "opts" out of Medicare and the participant is Medicare-eligible, . . . [United Insurance] will still pay the claim as if the provider accepted Medicare, even if nothing is actually paid by Medicare. To do this, *[United Insurance] will estimate what Medicare would have paid*, as if a Medicare participating provider was used, and then pay the appropriate amount.

Letter from Brian W. Fagan to Marianne Gates (Nov. 30, 2010) (emphasis added).

36.     However, the Choice Plus Plan SPD clearly states that United Insurance, as the Claims Administrator of the Choice Plus Plan, does not have discretion to *estimate* Medicare payments. Rather, as stated above, "Medicare benefits are *determined* as if the *full amount that would have been payable* under Medicare *was actually paid* under Medicare." Choice Plus Plan

SPD at 62 (emphasis added).  As shown above, Medicare payment amounts are easily determined, belying any need to estimate the payments.

> **2.      The Indemnity Plan's Coordination of Benefits with Medicare**

37.      The Indemnity Plan coordinates benefits with Medicare in a similar manner as the Choice Plus Plan.

38.      According to the Indemnity Plan, the amount of covered expenses "is based on the amount of charges allowed under Medicare rules instead of the Reasonable Charges as defined by the Plan." *Id.* at 40.  United Insurance then processes the claim by subtracting the amount payable under Medicare from the amount of the covered expenses under the Indemnity Plan.  To the extent that the Indemnity Plan provides a greater benefit than the Medicare payment, the difference is paid by the Plan.  *Id.*  "The amount payable under Medicare which is subtracted from this Plan's benefits is determined as the amount that would have been payable under Medicare." *Id.*

39.      Once an employee becomes eligible for Medicare, the Indemnity Plan pays benefits under the Plan as if the participant were covered under Medicare, whether the participant has enrolled in Medicare or not.  *Id.*

40.      If a participant "receives services from a provider who has elected to opt-out of Medicare[,] Medicare benefits are determined as if the services were covered under Medicare Parts A and B and the provider had agreed to limit charges to the amount of charges allowed under Medicare rules." *Id.* at 41.

41.      As discussed below, Plaintiff alleges that United improperly estimates Medicare benefits for all United Plans for which Medicare may be a primary payer.  Indeed, United's estimates greatly exceed the amounts that Medicare actually pays and result in United under-reimbursing United Plan participants and beneficiaries for covered services.

### 3. Plaintiff's Benefit Claims

42. Plaintiff received medical care from various physicians who charged varying amounts for her visits. Initially, Plaintiff's claims were processed by United Insurance with the Choice Plus Plan as the primary payer. After Plaintiff became covered by Medicare, United Insurance began processing Plaintiff's claims with the Choice Plus Plan as secondary to Medicare.

43. Some of Plaintiff's medical providers have opted out of Medicare. Thus, Plaintiff is responsible for the amount that Medicare would have paid had Plaintiff's providers participated in Medicare.

44. On numerous occasions, United Insurance improperly determined the amount that Medicare would have paid had Plaintiff's claim been covered by Medicare.

45. On July 12, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $525. In an EOB dated July 16, 2010, United Insurance determined that Medicare would have paid $440. However, the CMS fee schedule database indicates that Medicare would have paid a total of $297.49 for the services rendered.

46. On August 6, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $2,000. The EOB dated August 30, 2010, reflects that United Insurance determined that Medicare would pay $1,600. However, the CMS fee schedule database indicates that Medicare would have paid $191.61, which is less than an eighth of the amount United Insurance had determined.

47. On August 11, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $3,000. An EOB dated September 27, 2010, states that Medicare would have paid $2,400. The EOB notes:

> Medicare pays benefits before your group health plan.  Since the patient did not enroll for Medicare part A and/or B we processed this claim *after estimating how much Medicare parts A and/or B would have covered*.  The patient is responsible for the difference between the billed charge and the amount paid by this Plan.

(Emphasis added).

48.     However, the CMS fee schedule database indicates that Medicare would have paid a total of $508.88—only a fraction of what United Insurance determined Medicare would pay.

49.     On August 26, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $300.  The EOB dated September 27, 2010, reflects that Medicare would have paid $240.  The CMS database indicates that Medicare actually would have paid $55.23, less than a quarter of the amount United Insurance determined it would pay.

50.     On November 19, 2010, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $1,300.  The EOB dated January 6, 2011, reflects United Insurance's determination that Medicare would have paid $1,040.  The EOB also notes:

> Medicare pays benefits before your group health plan.  Since the patient used a provider who opted out of Medicare, we processed this claim *after estimating how much Medicare parts A and/or B would have covered*.  The patient is responsible for the difference between the billed charge and the amount paid by this Plan.

(Emphasis added).

51.     Once again, United Insurance vastly overestimated the amount Medicare would have paid had Plaintiff's provider been covered by Medicare.  The CMS database indicates that Medicare would have paid $114.26—an amount that is nowhere near the amount that United Insurance determined.

52.     On February 1, 2011, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $300.  The EOB dated March 24, 2011, states that Medicare would have paid $240.  United Insurance did not cover any amount for this procedure.  The CMS database indicates that Medicare actually would have paid $55.23.

53.     On February 24, 2011, Plaintiff was seen by a medical professional and a claim was submitted to United Insurance in the amount of $600.  The EOB dated April 20, 2011, states that Medicare would have paid $480.  United Insurance did not cover any amount for this procedure, and the CMS database indicates that Medicare actually would have paid $45.54, less than a tenth of the amount United Insurance determined it would pay.

54.     Plaintiff has additional outstanding claims for which she has not yet received EOBs, which, on information and belief, will result in grossly inflated estimates of Medicare payments by United Insurance.

**B.     United Insurance Failed to Comply with ERISA's Claims Procedure Requirements**

55.     ERISA's claims procedure section provides:

> In accordance with regulations of the Secretary [of Labor], every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

ERISA § 503, 29 U.S.C § 1133.

56.     The claims procedure regulation promulgated by the Secretary of Labor (the "Regulation") provides that the denial or partial denial of a claim constitutes an "adverse benefit determination."  *See* 29 C.F.R. § 2560-503-1(f)(1).  All of the claims discussed above were

wholly or partially denied and thus each of those denials (*i.e.*, the EOBs discussed above) constitutes an adverse benefit determination.

57.     The Regulation further provides, in pertinent part, that the plan administrator must notify a claimant of an adverse benefit determination.  29 C.F.R. § 2560-503-1(g)(1). Furthermore, the Regulation states:

> The notification shall set forth, in a manner calculated to be understood by the claimant –
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA] following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan [as here] or a plan providing disability benefits,
>
>> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request

*Id*.

58.     While the Choice Plus Plan SPD at 54 states only that "[a] denial notice will explain the reason for the denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures," the Handbook at 92-93, incorporates 29 C.F.R. § 2560-503-1(g)(1) verbatim.

59.     The EOBs discussed above do not come close to satisfying the Regulation or the Handbook, because, among other things: (1) they are essentially incomprehensible and therefore not written "in a manner calculated to be understood by the claimant"; (2) they do not adequately state the specific reason or reasons for the adverse determination and set forth no references to the plan provisions on which they are based; (3) they did not inform Plaintiff of what additional material or information she needed to provide in order to perfect her claims; and (4) other than the October 29, 2010, EOB, they did not inform Plaintiff of her right to receive a copy of any internal rule or any other such material that was relied upon in making the adverse benefit determinations.

60.     The Regulation requires that every plan provide for "a full and fair review" of any adverse benefit determination.  29 C.F.R. § 2560-503-1(h)(1).  A plan's claims procedures do not provide a full and fair review unless they:

> (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits; [and]
>
> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section[.]

29 C.F.R. § 2560-503-1(h)(2).

61.     As set forth above, the Choice Plus Plan SPD states that the denial notice "will provide the claim appeal procedures."  Choice Plus Plan SPD at 54.  Additionally, on appeal, upon a claimant's request and free of charge, the claimant has "the right to reasonable access to (including copies of) all documents, records, and other information relevant to [her/his] claim for Benefits."  *Id.* at 57.  The Handbook, at 93-94, contains essentially a verbatim recitation of 29 C.F.R. §§ 2560-503-1(h)(1), (2).

62.     The EOBs Plaintiff received did not inform her of her right to make additional submissions.  Nor did they inform her of her right to receive documents, records, and other information.  Rather, they merely stated:

> A review of this benefit determination may be requested by submitting your appeal to us in writing at the following address: UnitedHealthcare Appeals, P.O. Box 30432, Salt Lake City, UT 84130-0432.  The request for your review must be made within 180 days from the date you receive this statement.  If you request a review of your claim denial, we will complete our review not later than 30 days after we receive your request for review.

63.     Through her retained counsel, Plaintiff sent a letter dated January 21, 2011 ("Plaintiff's Appeal Letter"), to UnitedHealthcare Appeals that addressed, *inter alia*, the Medicare payment and out-of-network service charge miscalculations referenced above. Plaintiff's Appeal Letter appealed the determinations to deny benefits, in whole or in part, pursuant to the EOBs dated July 16, 2010, August 30, 2010, September 27, 2010, October 29, 2010, and January 6, 2011.  Plaintiff also enclosed a notarized Authorization from Plaintiff authorizing communication with her counsel about her claims.  Plaintiff's Appeal Letter stated that the EOBs failed to conform to the notice requirements of 29 C.F.R. § 2560.503-1(g)(1) and requested, among other things: (a) reference to the plan provisions pursuant to which the claims were denied as required by C.F.R. § 2560.503-1(g)(1)(ii); (b) all of the other information required by C.F.R. § 2560.503-1(g)(1); and (c) the documents, records, and other information relevant to Plaintiff's claims pursuant to C.F.R. § 2560.503-1(h)(2)(iii) and C.F.R. § 2560.503-1(m)(8), the latter of which defines what documents, records, or other information are considered relevant to a claim.

64.     Plaintiff's Appeal Letter further stated that a written statement in support of Plaintiff's appeal would be provided within 60 days of receipt of the documents and other information requested.

65.     Soon thereafter, United Insurance appeals coordinators sent Plaintiff—rather than her authorized counsel—five letters, two of which were dated February 21, 2011, and three others dated February 24, 2011, February 28, 2011, and March 1, 2011[1] (the "Appeal Denial Letters"). The Appeal Denial Letters state that Plaintiff's appeals were reviewed, and a determination was made that they were processed correctly.

66.     In its Appeal Denial Letters, United Insurance ignored the requests for information under the Regulation and disregarded that Plaintiff's Appeal Letter had indicated that a statement in support of the appeal would be provided after United Insurance had complied with the requests set forth in that letter.

67.     As with the initial EOBs, the Appeal Denial Letters failed to comply with the Regulation and the Choice Plus Plan's appeal procedures. *See* 29 C.F.R. § 2560.503-1(j) (setting forth the required content of a notice of benefit determination on review, which is similar to the content detailed in 29 C.F.R. § 2560.503-1(g)(1), *supra* ¶ 57).

68.     Although each of the Appeal Denial Letters[2] stated that Plaintiff had "the right to receive, on request and free of charge, a copy of any internal rule, guideline or protocol, as well as any other documents relevant to your appeal that we *relied on* in making this decision" (emphasis added), this offer fell far short of the Regulation's requirements. Plaintiff was entitled to receive more than what United Insurance simply "relied on." Under the Regulation, Plaintiff is entitled to, "free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section." 29 C.F.R. § 2560.503-1(j)(3).

---

[1] The March 1, 2011 letter purports to be a "corrected letter," superseding one of the February 21, 2011 letters.

[2] Other than the February 21, 2011 letter which was superseded by the March 1, 2011 letter.

69.    Paragraph (m)(8) provides, in pertinent part:

A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information

(i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination[.]

29 C.F.R. § 2560.503-1(m)(8).

70.    The four operative Appeal Denial Letters informed Plaintiff of the availability of a second appeal.  Plaintiff was informed that she would have to request such an appeal within 60 days from the date she received the letters.  However, the Regulation requires that plans provide participants in group health plans, such as the United Plans, including the Defendant Plans, 180 days within which to appeal following receipt of an adverse benefit determination.  *See* 29 C.F.R. 2560.503-1(h)(3)(i).  While the Regulation permits plans to have two levels of appeals from an adverse benefit determination, it does not alter the foregoing requirement that a participant have 180 days in which to seek the second appeal.  *See* 29 C.F.R. 2560.503-1(i)(2)(iii).

71.    Regardless, by letter dated March 16, 2011, well within the 60 day limit imposed by United Insurance, Plaintiff's counsel informed United Insurance that Plaintiff would be filing appeals from the Appeal Denial Letters and again requested the documents that should have been provided after the initial claims denials.  The letter concluded: "If you have any questions, please do not hesitate to contact the undersigned [Plaintiff's counsel]."  The letter also enclosed another copy of Plaintiff's Authorization permitting the plan to communicate with her counsel as well as copies of the Appeal Denial Letters.

72.     United Insurance responded with four letters dated March 23, 2011, April 4, 2011, and two dated April 7, 2011, again sent directly to Plaintiff—despite 29 C.F.R. § 2560-503-1(b)(4), which permits authorized representatives to act on behalf of a claimants.  The March 23 and two April 7 letters are all the same form letter addressed to "Dear Member or Provider." They acknowledge the receipt of Plaintiff's "request for appeal" and state that the appeal will be decided within the time required by law.  The time required by law is 30 days from receipt of the request for appeal.  29 C.F.R. § 2560-503-1(h)(i)(2)(iii).  No decision has been received.

73.     The April 4 letter acknowledges a request for information and encloses one page from the Choice Plus Plan SPD which United Insurance asserts therein was "the information used in making the determination" of a claim that had been denied in the July 16, 2010, EOB.

74.     Upon Plaintiff's receipt of the March 23, 2011 letter, she forwarded it to her counsel.  On March 31, 2011, Plaintiff's counsel wrote to United Insurance, again informing United Insurance that Plaintiff is a represented party and noting that Plaintiff's March 16, 2001 letter was a request for documents under the Regulation, not a request for an appeal.  The March 23 letter once again requested the documents available under the Regulation.

75.     By letters dated May 11, 2011, and June 1, 2011, United Insurance provided responses to claims for services provided to Plaintiff on July 6, 2010, and July 12, 2010, respectively.  While both claims concerned the issue of Medicare as primary payer, each letter provided only one page from the Choice Plus Plan SPD, albeit different pages, as the basis for the decision on those claims.

**C.     Alliance Bernstein's Delegation of Claims Administration of the Defendant Plans to United Insurance was a Breach of Its Fiduciary Duty as was Its Failure to Monitor United Insurance's Performance as Claims Administrator**

76.     By letter dated July 21, 2011, from counsel for AllianceBernstein and the Defendant Plans to this Court, it is asserted that pursuant to an Administrative Services

Agreement, AllianceBernstein "delegated complete, exclusive and final discretionary authority to determine claims for benefits from Participants or Beneficiaries of the [Defendant] Plans [to United Insurance], including the processing and final resolution of appeals of denials of claims, as to all of which [United Insurance] has accepted fiduciary responsibility."

77.     Regardless of whether or not AllianceBernstein effectively delegated all fiduciary responsibility for Claims Administration to United Insurance, AllianceBernstein nonetheless had (1) the initial fiduciary responsibility to ensure that any such delegation to United Insurance was prudent, (2) the fiduciary duty to monitor United Insurance's performance as Claims Administrator to ensure that United Insurance was complying with its fiduciary responsibilities as Claims Administrator, and (3) the fiduciary responsibility either to require United Insurance to alter its Claims Administration Practices so that they complied with ERISA or to terminate United Insurance as Claims Administrator for its failure to comply with ERISA.

78.     AllianceBernstein breached each of the foregoing fiduciary duties and, as such, is individually liable for its breaches as well as having co-fiduciary liability with United Insurance pursuant to ERISA § 405(a)(2), (c) 29 U.S.C. § 1105(a)(2), (c).

**D.     AllianceBernstein's and United Insurance's Failure to Provide the Choice Plus Plan's Method for Calculating Reimbursement Rates for Out-of-Network Services Violates ERISA**

79.     In addition to the Regulation's requirement that certain documents be provided on request, ERISA also provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

80.     Accordingly, in a letter dated January 21, 2011, Plaintiff requested that AllianceBernstein provide documents and information detailing the method used to calculate reimbursement rates for out-of-network services.  In particular, Plaintiff requested, among other things: (a) the geographical area used to determine the prevailing fees for services provided under the Welfare Plan (the "Reasonable Charge"); (b) the method used to determine the amount of the Reasonable Charge for services; and (c) all supporting documents related to (a) and (b).

81.     Similar documents and information were also requested from United Insurance.

82.     In response, AllianceBernstein, through its outside counsel, Orrick, Herrington & Sutcliffe LLP, provided the Colavecchio Letter that purportedly "explains how UnitedHealthcare determines the reasonable & customary charge for out of network services."  However, the letter continues that "UnitedHealthcare is unable to release its provider fee schedule as it is proprietary information."

83.     ERISA § 102, 29 U.S.C. § 1022, requires plans to provide their participants with summary plan descriptions.  Among other things, an SPD is required to apprise participants of their rights under the plan.  If a participant is not entitled to know how UnitedHealth Group Inc. and its subsidiaries, including United Insurance, calculates out-of-network reimbursement rates or what the reimbursement amount is for a particular service, the participant has not been apprised of her rights under the plan.

84.     The failure to provide this information is actionable:

(1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 606, section 101(e)(1), section 101(f), or section 105(a) [of ERISA] with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a

day[3] from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

ERISA § 502(c), 29 U.S.C. § 1132(c).

85.     While AllianceBernstein is the named Administrator of the Choice Plus Plan, United Insurance is its Claims Administrator.  Thus one or both may be held liable for failure to provide the documents requested pursuant to both Plaintiff's January 21, 2011 letter and the numerous letters sent to United Insurance.

## V.     CLASS ACTION ALLEGATIONS

86.     **Class Definitions**.  Plaintiff brings this action on her own behalf and on behalf of:

(a)     A "Medicare Class" defined as:

All participants and beneficiaries who sought benefits from United Plans for which Medicare was the primary payer and United estimated Medicare payments when the plan in question required the plan to use the actual amount payable by Medicare, thus causing the participants and beneficiaries to receive lower benefits than required by the plan.

(b)     An "Appeal Class" defined as:

All United Plan participants and beneficiaries.

87.     **Numerosity**.  The members of each class are so numerous that joinder of all members is impracticable.  Upon information and belief, each class consists of thousands of health care subscribers whose benefits under the United Plans were underpaid because United Insurance overstates Medicare payments and who did not receive a full and fair review of their claims, whether or not the claims were related to Medicare.  The precise number of members in each class is within Defendants' custody and control.  Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for each class.  Common questions of law

---

[3] This amount has been increased to $110 per day.  29 C.F.R. § 2575.502c-1.

and fact exist as to all class members and predominate over any questions affecting solely individual members of each class, including the class action claims and issues described herein.

88.    **Commonality**.  The following common class claims and issues arise for Plaintiff and the Class:

(a)    whether Defendants violated ERISA;

(b)    whether Defendants' alleged ERISA violations, if proved, justify injunctive relief;

(c)    whether Defendants' coordination of benefits procedures complied with ERISA; and

(d)    whether Defendants' claims procedures violate federal regulation.

89.    **Typicality**.  Plaintiff's claims are typical of the claims of the class members because, as a result of the conduct alleged herein, Defendants have breached their statutory and contractual obligations to Plaintiff and the class through and by uniform patterns or practices as described above, including but not limited to using self-serving determinations of Medicare payments to coordinate benefits payable under the United Plans, and not providing a full and fair review of medical claims.

90.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of each class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and in the prosecution of ERISA claims, and has no interests antagonistic to or in conflict with those of the class.  For these reasons, Plaintiff is an adequate class representative under Federal Rule of Civil Procedure 23.

91.    **Rule 23(b)(1)(B) Requirements**.  The prosecution of separate actions by the members of each class would create a risk of adjudications with respect to individual members of each class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

92.     **Other Rule 23(b) Requirements.**  Class action status is also warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of each class would create a risk of establishing incompatible standards of conduct for Defendants; and under 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to each class as a whole; and in the alternative under 23(b)(3) because questions of law or fact common to members of each class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VI.   CAUSES OF ACTION

**A.     Count I: Claim for Benefits under Certain of the United Plans (Medicare)**

93.     Plaintiff incorporates by this reference the paragraphs above.

94.     This Count is alleged against all Defendants.

95.     This Count is brought under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), to recover benefits due Plaintiff and the members of the Medicare Class under the terms of certain of the United Plans (the "United Medicare Plans").

96.     The United Medicare Plans provide that if a plan participant is eligible for Medicare, Medicare will become the primary payer, and where Medicare does not make a payment, the United Defendants will nonetheless determine the actual amount Medicare would have paid and deduct that amount from the amount of the benefit otherwise payable under the Plan.  The Plan then pays the participant the difference, if any.

97.     As alleged above, contrary to their duties and obligations under ERISA, Defendants failed to ensure the proper determination of Medicare payment amounts in that they

estimated the applicable Medicare payments instead of using actual Medicare payment rates, thereby improperly calculating benefit payment amounts due under the United Medicare Plans.

98.     As a consequence, Plaintiff and members of the Medicare Class suffered tremendous losses.  If Defendants had properly calculated benefits under the United Medicare Plans, Plaintiff and the members of the Medicare Class would not have suffered losses.

99.     Pursuant to ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), Defendants are liable to recalculate the benefits of Plaintiff and the members of the Medicare Class using the actual Medicare payment rates and, having done so, to reimburse Plaintiff and the members of the Medicare Class in the amount necessary to make them whole.

100.    All Defendants should be enjoined from estimating Medicare payments when the United Medicare Plan requires, as do the Defendant Plans, the use of actual Medicare payment amounts.

**B.      Count II: Failure to Provide Full and Fair Review as Required by ERISA**

101.    Plaintiff incorporates by this reference the paragraphs above.

102.    This Count is alleged against all Defendants.

103.    As set forth above, as the Defendant Plans' Claims Administrator, United Insurance functioned and continues to function as the "Plan Administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Plaintiff is entitled to receive a "full and fair review" of all claims denied by United Insurance and to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements.

104.    Although United Insurance was obligated to do so, it failed to provide a "full and fair review" of Plaintiff's denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and the Regulation.

105.    By engaging in the conduct described herein, United Insurance (a) failed to provide a "full and fair review"; (b) failed to provide reasonable claims procedures; and (c) failed to make necessary disclosures to Plaintiff.

106.    Upon information and belief, all other Defendants engage in the same deficient claims procedures as United Insurance.

107.    Plaintiff and the members of the Appeal Class are entitled to injunctive and declaratory relief to remedy the continuing violation of these provisions.

**C.    Count III:  AllianceBernstein's Breaches of Fiduciary Duty and Co-Fiduciary Duty**

108.    Plaintiff incorporates by this reference the paragraphs above.

109.    This Count is alleged against AllianceBernstein.

110.    Plaintiff is entitled to injunctive and declaratory relief to remedy AllianceBernstein's continuing violation of its fiduciary and co-fiduciary duties by requiring, among other things, AllianceBernstein (1) to terminate United Insurance as Claims Administrator for the Defendant Plans, (2) to prudently select a replacement Claims Administrator for the Defendant Plans, and (3) to prudently monitor such replacement Claims Administrator.

**D.    Count IV: Failure to Provide Information**

111.    Plaintiff incorporates by this reference the paragraphs above.

112.    This Count is alleged against United Insurance and AllianceBernstein.

113.    This Count is brought under ERISA §§ 502(a)(1)(A), (c)(1)(B), 29 U.S.C. §§ 1132(a)(1)(A), (c)(1)(B).

114.    Plaintiff Marianne Gates is entitled to have the Court assess a penalty of up to $110 per day for each day more than 30 days from her requests that Defendants AllianceBernstein and United Insurance provide her with documents as required by ERISA.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

(A)     A Declaration that one or more United Plans failed to pay Plaintiff and the members of the Medicare Class the full benefits due;

(B)     A Declaration that the United Plans violated their disclosure and related obligations under ERISA ;

(C)     A Declaration that the United Plans violated federal claims procedures and failed to provide a "full and fair review" of appeals under ERISA § 503, 29 U.S.C. § 1133 and the Regulation;

(D)     An Order compelling Defendants to make good to Plaintiff and the members of the Medicare Class all losses resulting from Defendants' breaches;

(E)     An Order compelling Defendants to modify their claims procedures and document disclosure practices to ensure:

1.      that they comply with ERISA and the Regulation; and

2.      that they comply with the terms of the United Plan in question to the extent that plan's terms comply with ERISA;

(F)     Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class;

(G)     Actual damages in the amount of any losses Plaintiff and the members of the Medicare Class have suffered;

(H)     An Order compelling AllianceBernstein (1) to terminate United Insurance as Claims Administrator for the Defendant Plans, (2) to prudently select a replacement Claims Administrator for the Defendant Plans and (3) to prudently monitor such replacement Claims Administrator;

  (I)  An Order awarding costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

  (J)  An Order awarding attorneys' fees pursuant to the common fund doctrine, ERISA

§ 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

  (K)  An Order for equitable restitution and other appropriate equitable and injunctive

relief against Defendants.

Dated: New York, NY
   September 6, 2011.

         Respectfully submitted,

         **KELLER ROHRBACK L.L.P.**


         David S. Preminger
         dpreminger@kellerrohrback.com
         770 Broadway, Second Floor
         New York, NY 10003
         Telephone: (646) 495-6198
         Facsimile: (646) 495-6197

         **KELLER ROHRBACK L.L.P.**
         Lynn Lincoln Sarko
         lsarko@kellerrohrback.com
         Derek W. Loeser
         dloeser@kellerrohrback.com
         Erin M. Riley
         eriley@kellerrohrback.com
         Sarah H. Kimberly
         skimberly@kellerrohrback.com
         1201 Third Avenue, Suite 3200
         Seattle, WA 98101-3052
         Telephone: (206) 623-1900
         Facsimile: (206) 623-3384