Michael Delikat
John D. Giansello
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

Attorneys for Defendants AllianceBernstein L.P.,
United Healthcare Choice Plus Copay Plan for
AllianceBernstein L.P., and AllianceBernstein L.P.
United Healthcare Indemnity Plan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARIANNE GATES, Individually and On Behalf
Of All Others Similarly Situated,

                         Plaintiff,

                                                    No. 11-Civ.-3487 (PKC)

            vs.

UNITED HEALTH GROUP INC., UNITED
HEALTHCARE SERVICES, INC.,
UHIC HOLDINGS, INC.,  UNITED
HEALTHCARE INSURANCE COMPANY,
UNITEDHEALTHCARE, INC., OXFORD
HEALTH PLANS LLC,
ALLIANCEBERNSTEIN L.P., UNITED
HEALTHCARE CHOICE PLUS COPAY PLAN
FOR ALLIANCEBERNSTEIN L.P.,
ALLIANCEBERNSTEIN L.P. UNITED
HEALTHCARE INDEMNITY PLAN, and XYZ
ENTITIES 1-100,

                         Defendants.
--------------------------------------------------------------x

### ALLIANCEBERNSTEIN AND ALLIANCEBERNSTEIN PLAN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

I.      PRELIMINARY STATEMENT ..................................................................1

II.     FACTS .........................................................................................................6

    A.      Plaintiff and her Plan ......................................................................6

    B.      Plaintiff's claims ..............................................................................7

    C.      The relevant Plan provisions .........................................................10

    D.      The Administrative Services Agreement.........................................13

III.    ARGUMENT..............................................................................................14

    A.      Plaintiff lacks standing to maintain her claims.............................14

    B.      Plaintiff fails to state a claim against AllianceBernstein or the Plans upon which relief may be granted ................................................................17

    C.      The Amended Complaint violates fundamental principles of fairness and substantial justice..........................................................................21

IV.     CONCLUSION ..........................................................................................22

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*American Medical Association v. United Healthcare Corporation,*
   2009 U.S. Dist. LEXIS 112634 (S.D.N.Y. Dec. 1, 2009) ........................................................5

*American Medical Association v. UnitedHealthcare, Inc.,*
   No. 00-2800 (S.D.N.Y.) (LMM) ...................................................................................passim

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009)............................................................................................................21

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) .......................................................................................................5

*Baur v. Veneman,*
   352 F.3d 625 (2d Cir. 2003) ...................................................................................................15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................................21

*Elk Grove Unified Sch. Dist. v. Newdow,*
   542 U.S. 1 (2004) .............................................................................................................17, 19

*Kendall v. Employees Retirement Plan of Avon Products,*
   561 F.3d 112 (2d Cir. 2009) ...............................................................................14, 15, 16, 17

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ...............................................................................................................14

*Rubenstein v. CIGNA Life Insurance Co.,*
   No. CV11-1750(SJF)(WDW), Slip. Op., pp. 8-11 (E.D.N.Y. Sept. 27, 2011) ................17, 19

*Selavan v. New York Thruway Authority,*
   584 F.3d 82 (2d Cir. 2009) .....................................................................................................17

**FEDERAL STATUTES**

29 U.S.C. § 1104(a)(1) .......................................................................................................18, 19

29 U.S.C. § 1105 ..........................................................................................................2, 4, 18, 19

42 U.S.C. § 1395l(a)(1) ............................................................................................................15

**OTHER STATUTES**

American Recovery and Reinvestment Act of 2009 ..................................................................19

Employee Retirement Income Security Act of 1974 ("ERISA") ...........................................passim

Health Information Technology for Economic and Clinical Health (HITECH) Act of 2009 ..................................................................................................................................19

Health Insurance Portability and Accountability Act of 1996 ("HIPAA") ........................4, 19, 20

**RULES**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ..........................................................1, 4, 5

**REGULATIONS**

45 C.F.R. § 160 ...................................................................................................................19

45 C.F.R. § 160.103..............................................................................................................19

45 C.F.R. § 160.104.........................................................................................................19, 20

45 C.F.R. § 164 ...................................................................................................................19

45 C.F.R. § 164.504(e) ..........................................................................................................20

**CONSTITUTIONAL PROVISIONS**

Article III of the United States Constitution..........................................................................1, 14

Defendants   ALLIANCEBERNSTEIN   L.P.   ("AllianceBernstein"),   UNITED HEALTHCARE CHOICE PLUS COPAY PLAN FOR ALLIANCEBERNSTEIN L.P. (the "Copay Plan"), and ALLIANCEBERNSTEIN L.P. UNITED HEALTHCARE INDEMNITY PLAN (the "Indemnity Plan") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's First Amended Class Action Complaint ("Complaint") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.   PRELIMINARY STATEMENT.

The gravamen of Plaintiff's Complaint is for restitution for claimed underpayment of medical benefits under Medicare coordination-of-benefits ("COB") requirements applicable to her under the Employee Retirement Income Security Act of 1974 ("ERISA") as a Participant in one AllianceBernstein employee welfare benefit plan, and under the provisions of the governing documents of that plan. Plaintiff's other claims purportedly arise from the administration of claims and appeals of claims denials under that plan by Defendant United Healthcare Insurance Company ("UHIC").

Plaintiff's Complaint remains fatally defective in all of its remaining claims, principally because Plaintiff can claim no particularized injury-in-fact from the acts and omissions she alleges and therefore can establish no case or controversy against Defendants sufficient to give her standing under Article III of the United States Constitution to maintain her remaining claims on behalf of herself or anyone else.

Plaintiff has amended out of her pleading her specific claim for out-of-network benefits, barred by her inclusion and participation in the class action consent decree settlement in *American Medical Association v. UnitedHealthcare, Inc.*, No. 00-2800 (S.D.N.Y.) (LMM) GWG) ("*AMA Litigation*"), although artifacts of that barred claim remain scattered haphazardly and incongruously throughout her amended Complaint.

1

But Plaintiff has compounded her standing problems exponentially by adding as named party defendants additional affiliates of UnitedHealth Group, Inc., and threatens, by the inclusion of "Doe" defendants, to name additional UnitedHealth entities that are administrators of other employee welfare benefit plans providing medical coverage once she learns their names. Except, however, for UHIC, Plaintiff does not claim that any of these other UnitedHealthcare entities has ever had anything to do with her, with her medical care coverage, or with her claims.

Plaintiff is a retired former employee of AllianceBernstein. She is a participant in one employee welfare benefit plan sponsored and self-insured by Alliance Bernstein, the CoPay Plan.[1] The fiduciary claims administrator of the CoPay Plan to which AllianceBernstein as plan sponsor has delegated complete, exclusive discretionary authority for claims administration and interim and final determination of appeals of claims denials pursuant to 29 U.S.C. § 1105, through a formal Administrative Services Agreement ("ASA"), is Defendant UHIC. No other United entity has or has had any involvement with Plaintiff, her claims, or any AllianceBernstein Plan.

Moreover, there is no factual allegation anywhere in the Complaint that Plaintiff has had any interaction whatsoever with any United entity other than UHIC. Nor does anything in the Complaint shed any light on the particular governing provisions of any employee welfare benefit plan, other than the AllianceBernstein Plans, for which any of the United defendants, including but not limited to UHIC, is the claims administrator, let alone anything upon which an inference could be based that such provisions, or the contractual relationship of any United defendant to any such plans, are identical, common, or even similar. Nevertheless, despite the limited and

---

[1] Plaintiff claims that she should have been transferred at some point to the other Defendant Plan, sponsored and self-insured by AllianceBernstein, the Indemnity Plan. She alleges, however, that "[t]he Indemnity Plan coordinates benefits with Medicare in a similar manner" as the CoPay Plan. Complaint, ¶¶ 37-41. The AllianceBernstein defendants, therefore, take her claims and their alleged defects to be substantially similar regardless of which Plan they should be addressed under and treat them together for purposes of this motion.

personalized scope of her claims against UHIC and its procedures, Plaintiff attempts to maintain claims for purported maladministration of Medicare COB on behalf of potentially hundreds of thousands of participants and beneficiaries in each and every one of the countless number of group health care plans administered to some extent, whether insured or self-insured, by any and all of the United defendants and their affiliates nationwide, and to use her unique circumstances to leverage "reform" of diverse and multiplicitous claims administration procedures she has no experience with and knows nothing about.

In the process, Plaintiff seeks to drag AllianceBernstein and its two modest, idiosyncratic plans, whose arrangements with UHIC delegate exclusive and complete administrative discretion and knowledge of relevant events to UHIC, along under the wheels of what is obviously an out-of-control vehicle.

In fact, Plaintiff, whose claims are essentially and substantially only for her own restitutionary recovery of benefits, lacks constitutional or prudential standing – or both – to litigate all of her claims. She plainly lacks constitutional standing to litigate claims against the administration or administrators of benefits plans in which she is not a participant, and which could not conceivably have caused her any injury in fact. Moreover, since her claims for alleged underpayment of benefits against AllianceBernstein, the AllianceBernstein Plans, and UHIC as administrator of those plans are based upon a plain misreading of the terms of the plan documents and the applicable law, and she has demonstrably not been underpaid, she can demonstrate no particularized injury-in-fact to give her constitutional standing to litigate any of her claims against those defendants. As a result, the procedures followed by UHIC in administering the benefits claims upon which those claims are based have caused her no injury, and her attempts to maintain claims for injunctive relief to "reform" those procedures (Count II)

would be entirely on behalf of others, with whom she has had no involvement, such that she lacks prudential standing to litigate them. Further, Plaintiff's claims for breach of fiduciary duty against AllianceBernstein for its alleged failure properly to monitor UHIC (Count III) similarly fail for want of standing, because whatever AllianceBernstein has done or not done has caused her no injury. Finally, her claims for failure to furnish requested information (Count IV) can establish no injury because they exclusively concern out-of-network claims administration issues which are encompassed in and barred by the consent decree settlement in the *AMA Litigation*.

Plaintiff's standing defects, therefore, are sufficient, standing alone, to dispatch this litigation in its entirety. But her allegations also fail to state a claim upon which relief may be granted and should be dismissed under Rule 12(b)(6). Plaintiff fails to state a claim against Alliance Bernstein or the Plans, because her Count I can establish no injury; because there is nothing to remedy for her by injunctive relief under Count II; because there is nothing alleged with specificity in Count III as to how AllianceBernstein is plausibly claimed to have breached any fiduciary duty to Plaintiff; and because no defalcation under Count IV is alleged against AllianceBernstein or the Plans – the alleged failures to provide information are based entirely on interactions taking place exclusively between Plaintiff and UHIC.

Plaintiff's claims in this action arise at the intersection of Medicare, ERISA, and the privacy rules under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), three statutory regimes enacted at different times that do not always dovetail the obligations they impose on employee welfare benefits plans and their sponsors precisely. ERISA expressly authorizes employee welfare benefit plans to delegate fiduciary responsibility for claims administration and relieves the delegating plan and plan administrator of liability except in limited circumstances. 29 U.S.C. § 1105(c). In the case of medical claims, HIPAA privacy rules

not only make prudent, but, because of their firewall provisions, practically mandate exclusive delegation of claims administration and appeals to an external fiduciary. AllianceBernstein and the Plans have made such a complete delegation to UHIC under the ASA here.[2] Under such circumstances, it is entirely foreseeable – and indeed desirable as matter of conjoint statutory policy – that the Plans themselves and the overall Plan Administrator are not informed of a participant's medical reimbursement claims or the handling of them by the delegated fiduciary claims administrator, unless the participant herself divulges her confidences. There is no such allegation here, and, indeed, to this day, AllianceBernstein and the Plans have never seen any of the Explanation-of-Benefits notices ("EOBs") from UHIC to Plaintiff which have generated Plaintiffs claims and have become aware of their existence only through the filing of the initial complaint in this action. Under such circumstances, it would be patently unjust to hold AllianceBernstein or the Plans liable.[3]

All of Plaintiff's claims should be dismissed against all defendants because she lacks standing. In the alternative, her claims against AllianceBernstein and the Plans should be dismissed because they fail to state a claim upon which relief may be granted.

---

[2] The ASA and the Summary Plan Descriptions of the Plans may properly be considered by the Court on a Rule 12(b)(6) motion to dismiss, without conversion to summary judgment, inasmuch as Plaintiff alleges and relies upon the former for her Count III (Compl., ¶¶ 76-77) and alleges and quotes copiously from the latter (Compl. ¶¶ 26-41). *See ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (under Rule 12(b)(6) the court may consider documents incorporated into the complaint by reference and documents possessed by or known to plaintiff and upon which she relied in bringing suit). Copies of the ASA and relevant renewals and of the Summary Plan Description for the CoPay Plan are attached as exhibits A and B to the Declaration of Colin T. Burke, Esq., dated November 10, 2011, and served and filed herewith ("Burke Decl.").

[3] AllianceBernstein and the Plans join in the motion they understand the United defendants to be bringing insofar as that motion argues that Plaintiff lacks standing, that she has failed to exhaust administrative remedies, that UHIC's procedures, methods and interpretations were within the legitimate ambit of discretion conferred upon it by the CoPay Plan documents, that, if Plaintiff is entitled to any remedy, it is remand to the claims administrator, that all claims based upon out-of-network benefits are barred by the *AMA Litigation* consent decree settlement, and that Plaintiff has no claims for equitable relief because any claims that otherwise survive are adequately remedied by restitution. AllianceBernstein and the Plans will rely upon the showing they understand the United Defendants intend to make concerning the preclusive effect of the *AMA Litigation* consent decree settlement upon Plaintiff's out-of-network claims, since counsel for the United Defendants here are counsel for the UnitedHealthcare entities in the *AMA Litigation. See American Medical Association v. United Healthcare Corporation*, 2009 U.S. Dist. LEXIS 112634 (S.D.N.Y. Dec. 1, 2009).

## II.   FACTS.

### A.   Plaintiff and her Plan.

Plaintiff is a retired employee of AllianceBernstein.  Compl., ¶ 9.[4]   She is a participant in the AllianceBernstein CoPay Plan.  Compl., ¶ 9.  The CoPay Plan is an employee welfare benefit plan under ERISA.  Compl., ¶ 21.  The CoPay Plan is self-funded by AllianceBernstein.  Compl., ¶ 21.  The claims administrator for the CoPay Plan is Defendant UHIC.  Compl., ¶ 14.  UHIC is an administrator of the CoPay Plan and a fiduciary of that Plan.  Compl., ¶ 14.  None of the other United entities named as defendants or identified as such by fictitious designation, or any of their affiliates or subsidiaries, is alleged to have any administrative or other direct or identifiable relationship to the CoPay Plan.  Compl., ¶¶ 5, 11-13, 15-19.  AllianceBernstein is the plan sponsor and the overall plan administrator of the CoPay Plan.  Compl, ¶ 20.

Plaintiff enrolled in Medicare on August 1, 2010.[5]   Compl., ¶ 25.  At that point, her coverage under the CoPay Plan became secondary to her benefits under Medicare.  ¶ 26.  Hence, Medicare pays benefits as the primary payer, and the CoPay Plan pays benefits as a secondary payer.  Compl., ¶ 29.  Because the CoPay Plan is secondary to Medicare for Plaintiff, it may reduce its benefits to her by the total amount of benefits paid or provided by Medicare.  Compl., ¶ 30.  As claims administrator of the CoPay Plan, UHIC is responsible when claims are submitted under the CoPay Plan for determining the CoPay Plan's obligations to pay benefits, the benefits that are or would be paid by Medicare, and the difference between the two.  Compl., ¶¶ 31-35.  The CoPay Plan pays benefits when Medicare is the primary coverage as if Medicare were the primary payer even if the participant has not enrolled in Medicare, and even if the

---

[4] AllianceBernstein and the Plans take certain factual allegations of the Amended Class Action Complaint as true for the purposes of this motion to dismiss but reserve the right to deny and controvert any and all of them at other times and for other purposes.

[5] She does not allege when she became eligible for Medicare.

participant receives services from a provider who has elected to opt-out of Medicare. Compl., ¶ 34. In these circumstances and for those purposes, Medicare benefits are determined as if the amount that would have been payable under Medicare was actually paid under Medicare. Compl., ¶ 34. Plaintiff admits, however, that, under the CoPay Plan, if she uses the services of providers who have opted-out of Medicare, she is responsible for the amount that Medicare would have paid if those providers had participated in Medicare. Compl., ¶ 43.

**B.      Plaintiff's claims.**

Plaintiff received medical care from various physicians who charged her for her visits. Compl., ¶ 42. She submitted claims for those visits to UHIC. Compl., ¶¶ 42, 45-53. She alleges seven specific occasions of service as the basis for her claims: (1) July 12, 2010; (2) August 6, 2010; (3) August 11, 2010; (4) August 26, 2010; (5) November 19, 2010; (6) February 1, 2011; and (7) February 24, 2011. Compl., ¶¶45-53. For each of these occasions of service obtained from providers who opted out of Medicare, she claims that UHIC substantially overestimated the amount Medicare would have paid as primary coverage and consequently underpaid her on her supplemental coverage under the CoPay Plan. Compl., ¶¶ 43-53.

Plaintiff also claims that UHIC's notices to her determining the foregoing claims, the Explanation of Benefits notices ("EOBs") on which she grounds her claims, failed to comply with ERISA and Department of Labor ("DOL") regulations prescribing required specificity in the reasons and grounds for the determinations, the additional material or information required from Plaintiff to perfect her claims, her rights to receive documents, and the appeal procedures available to her. Compl., ¶¶ 55-62. Plaintiff further claims that UHIC responded inadequately and in violation of applicable DOL regulations to her appeals of the determinations communicated in the EOBs dated July 16, 2010, August 30, 2010, September 27, 2010, October 29, 2010, and January 6, 2011, and her requests for further information in connection therewith.

7

Compl., ¶¶ 63-75.  Notably, Plaintiff does not allege that she ever attempted to appeal the determinations communicated in the two EOBs dated February 1, 2011, and February 24, 2011. Compare Compl., ¶¶ 52-53 with ¶¶ 63-75.  Moreover, in those instances where she did attempt to pursue on appeal, all of her communications relating to those efforts are alleged to have been among her, her counsel and UHIC.   Compl., ¶¶  63-75.   There  is  no  allegation  that AllianceBernstein or the Plans were in any way involved in *any* of these communications, or, indeed, that they had any contemporaneous knowledge whatsoever of them, of the EOBs that engendered them, of UHIC's determinations of Plaintiff's benefits claims communicated in them, or of the services producing the benefits claims that occasioned the EOBs.  Compl., ¶¶ 45-54, 63-75.  Indeed, there is no allegation that the EOBs have been disclosed to AllianceBernstein or the Plans to this day. *Id.*

Nevertheless,  despite  the  confinement  of  Plaintiff's  Medicare  COB  claims  to  her exclusive  personal  interaction  with  UHIC  under  the  single  CoPay  Plan,  with  its  discrete provisions, on a handful of claims, Plaintiff claims that she can represent both a "Medicare Class" of all participants and beneficiaries who sought benefits from any employee welfare benefit plan administered by any United entity, regardless of the terms of those plans, where the United administrator determined claims for services from Medicare opt-out providers, and an "Appeal Class" of all participants and beneficiaries in any plan administered by any United entity, whether those individuals sought to pursue appeals or not.  Compl., ¶¶ 2-5, 86.  She does this notwithstanding that only the two AllianceBernstein Plans, administered only by UHIC, are named as defendants in this action.  Compl., ¶ 23.

Against AllianceBernstein itself, the plan sponsor of the two defendant Plans, Plaintiff claims, apparently not as representative of any class, that AllianceBernstein breached fiduciary

8

duties to Plaintiff in delegating claims administration responsibilities to UHIC, in failing to monitor UHIC adequately, and in failing either to compel UHIC to follow proper practices or to replace it.  Compl., ¶¶ 76-78.  The complaint is bereft, however, of any specific allegations of any acts or omissions of AllianceBernstein itself constituting any such breach, and of any allegations that would suggest the manner in which AllianeBernstein could have committed such a breach, given the complete and legitimate delegation of claims administration, notification and appeals responsibilities to UHIC in the ASA, and its attendant exclusion from the interactions between Plaintiff and UHIC.  Compl., ¶¶ 76-77.

Plaintiff maintains other claims as orphaned survivals of her initial pleading.  Thus, Plaintiff continues to claim against AllianceBernstein, despite the bar of the *AMA Litigation* settlement, that UHIC failed to provide a reasonable claims procedure and information about reimbursements for her pre-Medicare out-of-network services.  Compl., ¶ 5.  Likewise, Plaintiff continues to allege failure by AllianceBernstein and UHIC to provide her requested information about UHIC's method for calculating out-of-network service claims, despite the unavoidable conclusion that she could not recover anything on such claims by reason of the settlement in the *AMA Litigation*, and despite her admission that, with respect to the ***one*** request she made to AllianceBernstein, AllianceBernstein relayed to her the response to her query about the method used to calculate out-of-network reimbursement payments furnished by UHIC, the claims administrator to whom AllianceBernstein and the Plans had delegated the responsibility for administering such matters.  Compl., ¶¶ 79-85.

Additionally, Plaintiff's claim in Count IV of her Complaint is vaguely alleged, but could conceivably concern only purported requests for information made to UHIC for information about its EOBs to her, about which AllianceBernstein was never informed at any relevant time,

or her requests for information about UHIC's handling of her out-of-network, non-Medicare claims, as to which this action can afford her no relief by reason of the consent decree settlement of the *AMA Litigation.*  Compl., ¶¶ 63-75, 79-85, 111-114..  Given the preclusive effect of the *AMA* settlement, these allegations have no further office to perform.

### C.    The relevant Plan provisions.

The CoPay summary plan description, which Plaintiff admits is the governing document setting forth Plaintiff's rights and the basis of her claims, sets forth several definitive provisions that both place Plaintiff's claims in context and defeat them.  Compl., ¶¶ 26-, 29-36.  In particular, the summary plan description *for the United HealthCare* Choice Plus CoPay Plan for AllianceBernstein L.P. specifically notifies participants and beneficiaries in the Plan:

> *We have delegated* to the Claims Administrator the ***discretion*** and authority to initially determine on our behalf whether a treatment or supply is a Covered Health Service and how the Eligible Expense will be determined and otherwise covered under the Plan.

Summary Plan Description, United HealthCare Choice Plus Copay Plan for AllianceBernstein L.P., dated January 1, 2010, p. 4 (Copy attached as exhibit B to Burke Decl.)[6] (the "CoPay Plan SPD").[7]  The CoPay Plan SPD further provides, under a "Special Note Regarding Medicare": "Since Medicare is the primary payer, we will pay as secondary payer as described in Section 7: Coordination of Benefits)."  *Id.*, p. 5.  The CoPay Plan SPD further provides that, "If You Are Eligible for Medicare:  Your benefits under the Plan may be reduced if you are eligible for

---

[6] The citations to the CoPay Plan SPD herein are to the January 1, 2010 edition of the document.  Plaintiff's citations in the First Amended Class Action Complaint are to the January 1, 2009 edition of the SPD.  The excerpts cited herein are identical in both editions, although the pagination is different.  All of the benefits claims Plaintiff alleges arose from services rendered after the effective date of the 2010 edition.  Copies of both the 2009 and 2010 CoPay Plan SPD editions are attached to the Burke Declaration.

[7] The CoPay Plan SPD defines "we", "us" and "our" to refer to AllianceBernstein as Plan Sponsor.  CoPay SPD, p. 1.  It defines "you" and "your" to refer to people who are covered by the Plan.  *Id.*  It defines the "Claims Administrator" to be "the company (including its affiliated) that provides certain claim administration services for the Plan," here in the relevant time, UHIC.  *Id.*, p. 87.

10

Medicare but do not enroll in and maintain coverage under both Medicare Part A and Part B."
*Id.*, p. 53.

Further, the CoPay SPD expressly notifies its participants and beneficiaries:  "***Through the Claims Administrator*** [here, UHIC], we will make a benefit determination as set forth below." *Id.*, p. 60.

With respect to determinations of claims, the CoPay SPD provides:  "If you are not satisfied ***with the first level appeal decision of the Claims Administrator***, you have the right to request a second level appeal ***from the Claims Administrator***.  Id., p. 64.

For coordination of benefits matters, the CoPay SPD is unambiguous:  It provides as follows:

> When this Coverage Plan is secondary, its benefits are determined after those of another Coverage Plan and may be reduced because of the Primary Coverage Plan's benefits.  "Allowable Expense" means a health care service or expense, including deductibles and copayments, that is covered at least in part by any of the Coverage Plans covering the person.

CoPay Plan SPD, p. 67.  Critically, the CoPay SPD provides:

> If a person is covered by one Coverage Plan that calculate its benefits or services on the basis of usual and customary fees and another Coverage Plan that provides its benefits or services on the basis of negotiated fees, ***the Primary Coverage Plan's payment arrangements shall be the Allowable Expense for all Coverage Plans.***

CoPay Plan SPD, p. 67 (emphasis added).  The unambiguous import of these provision is that, when Medicare is primary coverage, its allowable expenses are the determinant for all reimbursement obligations.

Moreover, the CoPay Plan SPD expressly provides, as Plaintiff does not dispute, that:

> When this coverage Plan is secondary, it may reduce its benefits by the total amount of benefits paid or provided by all Coverage Plans Primary to this Coverage Plan.  * * *  Benefits paid or provided by this Coverage Plan plus

those of Coverage Plans primary to this Coverage Plan may be less than 100 percent of total Allowable Expenses."

CoPay Plan SPD, p. 69.  Additionally, the CoPay Plan SPD expressly provides with unlimited breadth that AllianceBernstein and UHIC have "sole and exclusive discretion  to "[i]nterpret Benefits under the Plan;" "[i]nterpret the other terms, conditions, limitations and exclusions of the Plan, including this SPD and any Riders and Amendments;" and "[m]ake factual determinations related to the Plan and its Benefits."  *Id.*, p. 81.  Additionally, the CoPay Plan SPD reserves the right of AllianceBernstein and the Claims Administrator to "delegate this discretionary authority to other persons or entities who provide services in regard to the administration of the Plan." *Id.*, pp. 81-82.

Finally, the CoPay Plan SPD specifically identifies the "claims administrator" as "the company (including its affiliates) that provides certain claim administration services for the Plan." *Id.*, p. 87.  The CoPay Plan SPD grants sweeping discretion to the claims administrator, providing:

> Eligible Expenses are determined solely in accordance with the Claims Administrator's reimbursement policy guidelines.  The reimbursement policy guidelines are developed, ***in the Claims Administrator's discretion***, following evaluation and validation of all provider billings in accordance with one or more of the following methodologies:
>
> --      As indicated in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the Centers for Medicare and Medicaid Services (CMS).
>
> --      As reported by generally recognized professionals or publications.
>
> --      As used for Medicare.
>
> --      As determined by medical staff and outside medical consultants pursuant to other appropriate source or determination that the Claims Administrator accepts.

*Id.*, p. 90.

The CoPay Plan SPD further provides:   The Plan Sponsor (indisputably AllianceBernstein) retains all fiduciary responsibilities with respect to the Plan *except to the extent the Plan Sponsor has delegated or allocated to other persons or entities one or more fiduciary responsibility with respect to the Plan*."

*Id.*, CoPay Plan SPD, Attachment II, p. 1.

### D.   The Administrative Services Agreement.

The claims administration of the CoPay Plan is governed by the ASA[8] The ASA reserves to AllianceBernstein as Plan Administrator responsibility for the plan "[e]xcept to the extent this Agreement specifically requires us to have the fiduciary responsibility for a Plan administrative function." ASA, § 2.2.  "Us" and "we" are defined as the relevant UnitedHealth entity; "you" is defined as AllianceBernstein.  See ASA signature cover.

The exclusive control over claims administration and appeals delegated to UHIC is set forth in Section 12 of the ASA – "Services Provisions" – which provides in relevant part:

> Section 12.1  Claims Processing.  Claims for Plan benefits must be submitted in a form that is satisfactory to us.  *We will determine* whether a benefit is payable under the Plan's provisions.
>
> In applying the Plan's provisions, we will use claim procedures and standards that we develop for benefit claim determination.  *You delegate to us the discretion and authority to use such procedures and standards.*  * * *
>
> Section 12.2  Benefit Determination and Appeals.  *You appoint us a named, ERISA fiduciary under the Plan* with respect to (i) performing claim processing and payment, (ii) performing the fair and impartial review of initial appeals, and (iii) performing the fair and impartial review of final appeals.  *As such, you delegate to us the discretionary authority to (i) construe and interpret the terms of the Plan, (ii) to determine the validity of charges submitted to us under the Plan, (iii) make final, binding determinations concerning the availability of Plan benefits.*

---

[8] The CoPay Plan is one component or option of what is currently named the "Life, AD&D, Disability & Medical Plan for Employees of AllianceBernstein LP.  UHIC is the claims administrator under the ASA.  See Burke Decl., ¶ 3, Exh. A.

> If it is determined that a benefit is payable, **we will issue a check** for, or otherwise credit the benefit payment to the appropriate payee. If we determine that all or a part of the benefit is not payable under the Plan, we will notify the claimant of the denial and of the claimant's right to appeal the denial. **This notification will be designed to comply with ERISA's requirements for denial notices.**
>
> If we deny a Plan benefit claim, the claimant shall have the appeal rights set forth in the Summary Plan Description, and/or which are required under applicable law. We will process the appeal and determine whether a Plan benefit is available.
>
> If, after the exhaustion of all levels of appeal with us, we determine that the Plan benefit is still not available, we will notify the claimant that the denial has been upheld. **This notice will be designed to comply with the applicable ERISA requirements for claim denial notices. This determination will be final and binding** on the claimant, and all other interested parties.

ASA, §§ 12.1, 12.2 (emphasis added).

The ASA provides that AllianceBernstein will open and maintain a bank account as "part of the network of accounts that have been established at the Bank for our self-funded customers," at the bank designated by UHIC, on which UHIC can draw for the payment of plan benefits and expenses. ASA, § 12.3. The ASA also provides that UHIC is the drafter of the summary plan description for the Plan. ASA, § 12.13.

## III.   ARGUMENT.

### A.   Plaintiff lacks standing to maintain her claims.

"A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action **and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty**." *Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112, 118 (2d Cir. 2009) (emphasis added). "Article III confines constitutional standing to plaintiffs who can establish that they have suffered some injury-in-fact." *Id.*, citing to *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "There are three Article III standing requirements: (1) the

14

plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Kendall* at 118.  "'To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical.'" *Kendall* at 118, quoting *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).

Plaintiff's First Count, which she purports to bring on behalf of a nationwide class, is a claim for benefits allegedly underpaid and due under the terms of the Co-Pay Plan.  It "is effectively a request for a disgorgement of funds [she] believes [AllianceBernstein] gained by not paying out benefits under a plan that conforms with ERISA." *Kendall* at 119-120.  She therefore must "demonstrate some injury-in-fact to have standing to bring these claims." *Id.* at 120.

Plaintiff alleges no such injury, because she misunderstands or her Complaint misrepresents the plan requirements when Medicare is the primary coverage, as here.  The seven benefits claims that are the predicate for her claims are all from physicians who have opted out of Medicare.  Compl., ¶¶ 42-43, 45-47, 49-50, 52-53.  Plaintiff's contention is that UHIC should have determined what Medicare would have paid on these claims, had they been from providers who participate in Medicare, by reliance on a fee schedule database published by the Centers for Medicare & Medicaid Services ("CMS"), from which she purports to infer the amount Medicare would have *paid* her on her seven claims.  Compl., ¶¶ 27-28, 45-53.

What Plaintiff overlooks is that Medicare pays only 80% of Medicare's allowable charge. 42 U.S.C. § 1395l(a)(1).  Hence, the amounts she alleges Medicare would have paid on her claims are 80% of the allowable charge for purposes of her plan coverage, and the plan, by her method, would only have been required to pay the 20% difference.  For example, on the claim

for $3000 Plaintiff refers to in Paragraphs 47-48 of her Complaint, she contends Medicare would have paid $508.00.  On that basis, Medicare would have allowed only $636.10 for that claim, and the plan would have been required to pay only $127.22.  Instead, rather than conducting a finely calibrated investigation, UHIC used the billed amount as a surrogate for the Medicare allowable amount and assumed Medicare would have allowed the full $3000 for the charge. UHIC then determined that the Medicare payment would have been 80% of that amount, or $2400, and paid Plaintiff $600 -- $472.78 *more* than she would have received by her method. The same is true for all of the benefits claims Plaintiff cites.

As a result, whatever arguments may be made about UHIC's method, Plaintiff was not injured by the use of it but, in fact, received a windfall.  Hence, she can claim no concrete and particularized injury in fact from the method she complains about, let alone one that was caused by that method or that can be redressed by changing it.  *Kendall* at 118.

Plaintiff's other claims, in Counts II and III of her Complaint, which are predicated upon her claimed entitlement to underpaid benefits in Count I, therefore, are simply beside the point. The alleged notice, review and appeal procedure deficiencies alleged against all defendants in Count II, but really directed exclusively at UHIC's handling of Plaintiff's seven benefits claims, have manifestly caused her no harm, since she received more for those claims than the method she argues for would have provided.  Likewise, her Count III claim against AllianceBernstein for allegedly breaching fiduciary duty by selecting, maintaining and not discharging a claims administrator alleged to be an ERISA violator could not redress any shortcoming, because, as to her, there was no shortcoming in the result caused by the challenged methods and procedures. Consequently, Plaintiff has no claim of her own that she has standing to sue upon under either Count II or III, and her claims to "reform" UHIC's methods and procedures under Count II on

behalf of a nationwide class could be maintained by her under the circumstances here only on behalf of others, not herself or the Co-Pay Plan – and certainly not on behalf of benefits plans to which she has no connection or about which she has no knowledge.

Plaintiff's attempt to maintain her Counts II and III in the absence of injury-in-fact to herself transgresses "judicially self-imposed limits on the exercise of federal jurisdiction" and "the general prohibition on a litigant's raising another person's legal rights." *Selavan v. New York Thruway Authority*, 584 F.3d 82, 91 (2d Cir. 2009) (citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004)).  Therefore, she does not have standing to maintain these claims only on behalf of others when she has no such claims herself. *Rubenstein v. CIGNA Life Insurance Co.*, No. CV11-1750(SJF)(WDW), Slip. Op., pp. 8-11 (E.D.N.Y. Sept. 27, 2011).  Nor can Plaintiff claim "that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitute an injury-in-fact sufficient for constitutional standing." *Kendall, supra*, at 121.

Plaintiff, finally, also has no standing to maintain her Count IV against UHIC and AllianceBernstein, because the claim there is predicated entirely upon UHIC's alleged failure to furnish information concerning reimbursement of her pre-Medicare out-of-network benefits claims.  Since any such claims are barred by the consent decree settlement in the *AMA Litigation*, there is no injury to her that could be redressed by this action. *See Kendall* at 118.

## B.   Plaintiff fails to state a claim against AllianceBernstein or the Plans upon which relief may be granted.

Plaintiff's Count I, which is a claim for benefits allegedly withheld, fails to state a claim upon which relief can be granted for the same reason that Plaintiff lacks standing to maintain it: she has, in fact, been paid more on the benefits claims she cites than she is arguing she should have received.

Plaintiff's Counts II and III fail to state a claim upon which relief can be granted against AllianceBernstein or the Plans because all of the alleged acts and omissions upon which she predicates those claims occurred exclusively between her and UHIC, to which AllianceBernstein and the Plans have lawfully delegated complete discretion for claims administration, review and appeals in the ASA. In Section 12 of the ASA, UHIC has expressly assumed fiduciary delegated responsibility to process and determine benefits claims and issue notices and provide appeal rights and procedures in compliance with the plan documents and ERISA and has effectively made itself a guarantor of such compliance.

Such delegation is expressly authorized by ERISA. 29 U.S.C. § 1105(c)(1) expressly provides:

> The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities under the plan.

The relevant plan instrument does so here. See CoPay Plan SPD, p. 4.

Moreover, ERISA further provides that when such a delegation is made:

> [S]uch named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility except to the extent that –
> (A) the named fiduciary violated section 1104(a)(1) of this title –
> (i) with respect to such allocation or designation,
> (ii) with respect to the establishment or implementation of the procedure under paragraph (1), or (iii) in continuing the allocation or designation * * *.

29 U.S.C. § 1105(c)(2).

AllianceBernstein could be held in violation of Section 1104(a)(1) by reason of UHIC's breach of duty under the circumstances here only:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

None of these conditions apply here.[9]  All of the interaction and communications upon which Plaintiff bases Count II of her Complaint are alleged to have occurred entirely and exclusively between her and UHIC.[10]  Compl., ¶¶ 45-75.  Indeed, there is no allegation that AllianceBernstein or the Plans had any contemporaneous knowledge of Plaintiff's visits to medical service providers, the submission of her benefits claims to UHIC, the communications between her and UHIC, or the EOBs which are the foundation for her claims.  In fact, there is no allegation that AllianceBernstein or the Plans have seen the EOBs to this day.

There is good and compelling reason for the extent of delegation of exclusive discretion to a claims administrator as has been done here.  The Plans are "health plans".  45 C.F.R. § 160.103.  They are therefore "covered entities" for purposes of HIPAA's Privacy Rule.[11] HIPAA's Privacy Rule addresses who is authorized to access certain "protected health information" ("PHI") and the right of individuals to determine how their information is to be used or disclosed.  45 C.F.R. § 160.103.  HIPAA's Privacy Rule permits disclosure of PHI to a plan sponsor/employer only if the health plan's documents have been amended to provide for adequate separation (or a firewall) between those employees of the employer who will have

---

[9] For these purposes, it is unnecessary to address the unsettled issue of whether an ERISA plan itself can be a fiduciary. *See Rubinstein, supra*, Slip. Op. at 12-14.

[10] Except for the "Colavecchio Letter" (see Burke Decl., Exh.C), which was a response by a UHIC official to a request from Plaintiff relayed by AllianceBernstein to UHIC, as to which AllianceBernstein simply relayed UHIC's response to the request back to Plaintiff.  See Compl., ¶¶ 80-82.  In any event, that request concerned only Plaintiff's barred out-of-network claims.

[11] 45 C.F.R. §§ 160.103 and 160.104 address covered entities.  45 C.F.R. Part 160 and Subparts A and E of Part 164, as amended by the Health Information Technology for Economic and Clinical Health (HITECH) Act of 2009 and the American Recovery and Reinvestment Act of 2009 contain the HIPAA Privacy Rule.

access to PHI in order to perform plan administration functions, and all other employees of the plan sponsor. 45 C.F.R. § 160.104(f)(2); 45 C.F.R. § 160.104(f)(3). As part of providing for adequate separation, an employer must implement a procedure to ensure that only certain designated employees (or classes of employees), have access to PHI, and only for administrative functions. 45 C.F.R. § 160.104(f)(2)(iii).

As part of AllianceBernstein's HIPAA compliance procedures regarding firewalling of PHI, it has therefore delegated full discretion and authority for claims administration to UHIC, a "business associate" of the Plans that is properly authorized to handle PHI. By means of this delegation, AllianceBernstein minimizes the flow of PHI from the Plans to plan sponsor employees.[12]

Under these circumstances, it would contravene substantial public policy established by Congress subsequent to ERISA to hold AllianceBernstein or the Plans liable for Plaintiff's claims of omission or commission arising exclusively out of her interactions with the delegated fiduciary claims administrator.

Moreover, although Plaintiff attempts to assert a claim for breach of fiduciary duty against AllianceBernstein in her Count III for its purported failure to select, maintain and monitor a competent claims administrator, she alleges no specific facts as to how AllianceBernstein is supposed to have breached this duty, about what it supposedly knew of UHIC's actions or omissions, or, given the lawful delegation of claims administration and review responsibility, about how it could have known of any such breach absent any timely disclosure to it of such facts by Plaintiff. No such disclosure is alleged. Therefore, this claim is entirely

---

[12] Health plans often use business associates, such as third party administrators and consultants, to assist them in performing plan functions. When such functions involve the use or disclosure of PHI, the covered entity and the business associate must enter into a "business associate contract" that requires the business associate to comply with many of HIPAA's privacy requirements. 45 C.F.R. § 164.504(e).

conclusory and speculative and fails to meet the plausibility standards for a pleading under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[13]

### C.     The Amended Complaint violates fundamental principles of fairness and substantial justice.

The Amended Complaint remains a garbled attempt to attach relief obligations to AllianceBernstein and the Plans for the actions or omissions of entities over which they could not conceivably have any control or under any regime of fairness be held responsible.  For example, in addition to seeking declaratory relief against all of the employee welfare benefits plans administered by any United entity, even though none of those plans has any connection to AllianceBernstein or its Plans, the Prayer for Relief seeks monetary relief indiscriminately against "Defendants" (which, by the Complaint's definitions includes AllianceBernstein and its two Plans), for all participants and beneficiaries in any of the plans administered by any United entity, implying that AllianceBernstein and its two modest Plans should be required to participate in funding any monetary relief awarded to participants or beneficiaries in every non-AllianceBernstein plan administered by any of the United entities. There is no justification for this prejudicial clutter in the Complaint, and it should be stricken.

---

[13] As the United Defendants will demonstrate, Plaintiff's claims based upon out-of-network, pre-Medicare services are barred by the consent decree settlement in the *AMA Litigation* and her participation in it.  Hence, such allegations in Paragraphs 5, 63, 79-85, and 111-114 cannot be maintained and afford Plaintiff no relief here.  In addition, Count IV as against AllianceBernstein is based solely on the alleged refusal by UHIC to disclose certain information about out-of-network procedures (see Compl., ¶¶ 80-82) and asserts no action or inaction by AllianceBernstein after AllianceBernstein communicated UHIC's response to Plaintiff, which Plaintiff does not allege she pursued thereafter.  It, therefore, also fails to state a plausible claim under the standards of *Iqbal* and *Twombly*.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiff's First Amended Class Action Complaint should be dismissed.

Dated: New York, New York
       November 10, 2011

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Michael Delikat
John D. Giansello

By _____
       John D. Giansello
jgiansello@orrick.com
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

Attorneys for Defendants
AllianceBernstein L.P.; United Healthcare Choice Plus
Copay Plan for Alliance Bernstein L.P. and
AllianceBernstein L.P. United Healthcare Indemnity Plan

OHS EAST:160964906.2

22

# Attachment

*Rubenstein v. CIGNA Life Insurance Co.*, No. CV11-1750(SJF)(WDW), Slip. Op., pp. 8-11
(E.D.N.Y. Sept. 27, 2011)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LILY RUBINSTEIN,

                              Plaintiff(s),                    **REPORT AND**
                                                              **RECOMMENDATION**
             -against-                                         CV11-1750(SJF) (WDW)

CIGNA LIFE INSURANCE CO., GRIFFON
CORPORATION LONG TERM DISABILITY
PLAN, and GRIFFON CORPORATION LIFE
INSURANCE PLAN,
                              Defendant(s).
-----------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

         Before me, on referral from District Judge Feuerstein, is a motion to dismiss by

defendants Griffon Corporation Long Term Disability Plan and Griffon Corporation Life

Insurance Plan (collectively, "the Plans"). DE[10]. The Plans seek to dismiss the plaintiff's

cause of action for equitable relief or alternative relief. The motion is opposed by the plaintiff,

who has also cross-moved to amend her Complaint. DE[11]. I recommend that the defendants'

motion be granted on the grounds set forth *infra*, and that the plaintiff's cross-motion be denied

for failure to annex a proposed amended complaint, but that the plaintiff be permitted to make a

further motion to amend if she chooses to do so, with the limitation set forth *infra*.

## BACKGROUND

         Plaintiff Lily Rubinstein filed this ERISA action against the Plans and CIGNA Life

Insurance Corporation of New York ("CIGNA") on 4/11/11. As set out in the Complaint,

Rubinstein was employed by Griffon Corporation and was a participant in the Griffon

Corporation Long Term Disability Plan ("the LTD Plan"), an employee welfare benefit plan

covered by ERISA. Benefits under the LTD Plan are funded exclusively by a group disability

policy issued by CIGNA to Griffon. The Complaint identifies CIGNA as the LTD Plan's claims

administrator. *See* DE[1], ¶47(a).

The plaintiff alleges three causes of action: (1) a claim for benefits under the LTD Plan;

(2) a claim against CIGNA for a statutory penalty for an alleged failure to provide a summary

plan description; and (3) a cause of action for "Equitable Relief for Breach of Fiduciary Duties."

Although it is not set out as a separate cause of action, the plaintiff also seeks a premium waiver

for continued life insurance coverage. DE[1], Complaint, Wherefore Clause, ¶B. The Plans now

move to dismiss the third cause of action, which specifically seeks: "(a) a permanent injunction

prohibiting them[1] from repeating the bad faith conduct which led to the wrongful termination of

Plaintiff's claim, in the handling of future claims of other claimants, and (b) an Order requiring

the LTD Plan to replace Defendant [CIGNA] as the LTD Plan's claims administrator, and

precluding the substituted claims administrator from requiring standards of proof in excess of

that called for in the LTD Plan." DE[1], ¶147. On this motion, the Plan defendants seek to

dismiss the third cause of action pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.

## DISCUSSION

### Rule 12 (b)(6) Standard:

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)

and 12(b)(6), the Court applies a "plausibility standard," which is guided by two principles.

*Ashcroft v. Iqbal,* ___ U.S. ___ , 129 S. Ct. 1937, 1949 (2009); *Harris v. Mills,* 572 F.3d 66, 72

(2d Cir. 2009). First, the court accepts all factual allegations as true and draws all reasonable

---

[1]By "them," the plaintiff means the LTD Plan and CIGNA, who are alleged, in the
paragraphs leading up to the relief sought, as having breached their fiduciary duties to the
plaintiff.

2

inferences in the plaintiff's favor, but this tenet is inapplicable to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (quoting *Ashcroft*). Second, "only complaints that state a plausible claim for relief" can survive a 12(b)(6) challenge. *Id.* Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In other words, the "purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief." *St. John's Univ. v. Bolton,* 757 F. Supp. 2d 144, 156 (E.D.N.Y. 2010). With these standards in mind, I turn to the motion.

**Equitable Claim against the Life Insurance Plan:**

The Plans argue, first, that the equitable claim seeks no relief against the Griffon Corporation Life Insurance Plan, that the plaintiff does not allege that the Life Insurance Plan harmed her in any way relevant to the claim, and that the claim must thus be dismissed as against the Life Insurance Plan[2]. DE[10-1] at 4-5. The third cause of action alleges that Rubinstein "is entitled to equitable relief against Defendant and the LTD Plan as a consequence of their knowing and intentional breach of their respective fiduciary duties . . .," and the specific relief requested is directed at those two defendants, without reference to the Life Insurance Plan. Thus, the Plans argue, the third cause of action must be dismissed as against the Life Insurance Plan.

The plaintiff argues that she does allege harm by the Life Insurance Plan, because she is seeking a premium waiver for continued life insurance. DE[11-1] at 3. That harm, however, is

---

[2]Indeed, the only mention of the Life Insurance Plan in the Complaint is in the Wherefore Clause, §B, which asks that the Court "Order Defendant to waive any premium, and to provide coverage under the Life Insurance Plan."

unrelated to the allegations underlying the claim for equitable relief. I agree with the Plans that

the third cause of action, on its face, does not impact the Life Insurance Plan. I do not agree that

any formal dismissal is necessary. The cause of action is not directed at the Life Insurance Plan

and cannot, in its current form, result in any relief against the Life Insurance Plan. The plaintiff's

argument that reinstatement of insurance coverage may be permissible equitable relief under

ERISA may be true, but need not be addressed, because she does not seek such relief in her third

cause of action.

    The Plan's citation to two cases as support for the claim that the third cause of action

must be dismissed as against the Life Insurance Plan is perplexing. A lack of pinpoint cites

leaves me wondering how exactly those cases support that proposition. *See* DE[10-1] at 4 (citing

*Pritchett v. Artuz*, 2004 WL 1191958 (S.D.N.Y. May 27, 2004) and *Cavuoto v. Oxford Health

Plans,* 2000 WL 888263 (D. Conn. June 22, 2000)). In any event, I find that the third cause of

action is not directed at the Life Insurance Plan, could not reasonably be construed as being

directed at the Life Insurance Plan, and need not be dismissed as to the Life Insurance Plan

separately from being dismissed on it merits to the extent recommended *infra*.

**Standards for Injunctive Relief:**

    The Plans next argue that the third cause of action, which seeks injunctive relief, must be

dismissed as against the LTD Plan because the Complaint fails to allege sufficient facts in regard

to two of the elements necessary for granting an injunction - inadequate compensation at law and

the public interest element. The Plans base this argument on the proposition that any plaintiff

seeking a permanent injunction, as Rubinstein is here, must demonstrate: "(1) that it has suffered

an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." DE[10-1] at 5 (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The plaintiff argues, however, that the common law requirements for injunctive relief set out in *eBay* are not applicable to statutory injunctions, or at least not applicable to injunctive relief under ERISA. *See* DE[11-1] at 4, DE[13][3] at 2-3.

The cases relied on by plaintiff do support the proposition that courts have "wide discretion in fashioning equitable relief" under ERISA and that permanent injunctive relief, including an injunction barring a former ERISA fiduciary from providing services or acting as a fiduciary to any employee benefit plan, is available under ERISA. *See Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984) & *Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006). But those cases do not analyze the factors that have to be considered in granting injunctive relief in an ERISA case. The court in *DaCosta v. Prudential Ins. Co. of America*, 2010 WL 4722393, *2 (E.D.N.Y. Nov. 12, 2010) analyzed a challenge to the plaintiffs' standing, and noted cases that "recognized a looser standing requirement for injunctive relief" in ERISA cases. But those cases also do no set forth the elements that an ERISA plaintiff must demonstrate in order to obtain injunctive relief. *DaCosta* cites to two Southern District cases as having held that "a plaintiff seeking injunctive relief under ERISA need not demonstrate any actual harm," but review of those cases reveals that they, too, considered standing issues and not the injunctive relief

---

[3] The plaintiff's Reply Memorandum of Law in Support of her cross motion to amend is, in substance, a sur-reply to the motion to dismiss that incidentally seeks permission to amend if the motion to dismiss is granted. I have, however, considered the arguments set out in it, inasmuch as the defendants do not appear to have raised any objection to it as an impermissible sur-reply.

5

standards to be applied once standing was established. *See DaCosta,* 2010 WL 4722393 at *2

(citing *Faber v. Metropolitan Life Ins. Co.,* 2009 WL 3415369, *4 (S.D.N.Y. Oct. 23, 2009) &

*American Medical Ass'n v. United HealthCare Corp.,* 2007 WL 1771498, *19 (S.D.N.Y. June

18, 2007)).

The defendants do not argue that Rubinstein lacks constitutional standing[4] (the issue in

*DaCosta*) or that injunctive relief is not available under ERISA. They do argue that common law

requirements are applicable to statutory injunctions, including those issued under ERISA. They

note that it is, and long has been, a "fundamental tenet of federal jurisprudence that injunctive

relief can be granted to a party only if there is no adequate remedy at law," and that requirement

has been reiterated by the Supreme Court in *eBay* - which considered injunctive relief under the

Patent Act - and subsequent Second Circuit cases. *See* DE[12] at 4 and cases cited therein. In

*Salinger v. Colting,* the Second Circuit, with reference to *eBay,* applied common law

requirements for injunctive relief to actions seeking permanent injunctive relief under the

Copyright Act, noting that "the traditional principles of equity [that *eBay*] employed are the

presumptive standard for injunctions in any context." 607 F.3d 68, 78 (2d Cir. 2010)(also noting,

at n.7, that "We see no reason that *eBay* would not apply with equal force in *any* type of

case)(emphasis added)).

I agree with the defendants and recommend a finding that the elements for injunctive

relief set out in *eBay* and applied in *Salinger* apply to applications for injunctive relief under

ERISA. Thus, I turn to the Plan's contention that the Complaint fails to set forth sufficient facts

---

[4]They do argue that the plaintiff lacks "prudential" standing for the equitable relief she
seeks. That issue is considered *infra.*

from which a reasonable inference can be drawn: (1) that remedies available at law, such as monetary damages, are inadequate to compensate for the claimed injury; and (2) that the public interest would not be disserved by a permanent injunction.

As to the first element, the Plans argue that Rubinstein has not alleged facts that support an inference that she could not be adequately compensated with monetary damages for the injury she allegedly suffered. I disagree and recommend a finding that the Complaint does state facts that are sufficient, at this early stage of the litigation, to support a reasonable inference that Rubinstein might be entitled to both money damages and injunctive relief. Under the applicable ERISA law, Rubinstein is free to seek relief, as she has done, under both 29 U.S.C. §1132(a)(1)(B) - for recovery of LTD benefits - and under 29 U.S.C. §1132(a)(3) - for equitable relief based on breach of fiduciary duty. *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001); *Keir v. Unumprovident Corporation*, 2003 WL 2004422, *2 (S.D.N.Y. Apr. 29, 2003). The Supreme Court has noted, with regard to ERISA claims, that "where Congress elsewhere provided adequate relief for a beneficiary's injury [i.e., relief under §1132(a)(1)(B)], there will likely be no need for further relief [i.e., relief under §1132(a)(3)] , in which case such relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). But the Second Circuit has explained that the "Supreme Court in *Varity Corp.* did not eliminate the possibility of a plaintiff successfully asserting a claim under both §502(a)(1)(B), to enforce the terms of a plan, and §502(a)(3) for breach of fiduciary duty; instead the Court indicated that equitable relief under §502(a)(3) would 'normally' not be appropriate." *Devlin*, 274 F.3d at 89. Here, it is too early to say whether Rubinstein might be entitled to relief under both sections, even if such an outcome would not "normally" be appropriate, and the

7

claim should not be dismissed on that basis on this motion to dismiss. *See Keir,* 2003 WL 2004422; *see also Caplan v. CNA Short Term Disability Plan,* 479 F. Supp. 2d 1108, 1113 (N.D. Cal. 2007); *Black v. Long Term Disability Ins.,* 373 F. Supp. 2d 897 (E.D. Wisc. 2005).

The Plans also argue that there are insufficient facts pleaded to allow a reasonable inference regarding the public interest element. The Plans' arguments in this regard, however, are premised on speculations about facts outside the Complaint that cannot be considered on this motion to dismiss. *See* DE[10-1 at 6-7. Thus, those factors do not lead to a recommendation that the claims for equitable relief be dismissed. Other grounds for dismissal do exist, however.

**Paragraph 147(a)/Prudential Standing:**

In paragraph 147(a), Rubinstein asks that CIGNA and the LTD Plan be enjoined from "repeating the bad faith conduct" that allegedly led to the termination of her benefits in "future claims of other claimants. In other words, Rubinstein wants the court to enjoin CIGNA and the LTD Plan from, in the future, doing to other claimants the things they allegedly did to her in bad faith, whatever those things might be. The defendants argue that the claim must be dismissed because Rubinstein lacks "prudential standing" to bring claims on behalf of third parties. The concept of standing "subsumes a blend of constitutional requirements and prudential considerations." *McClellan v. E.I. DuPont De Nemours & Co.,* 2006 WL 3751583, *15 (W.D.N.Y. Dec. 19, 2006). Prudential standing embodies "judicially self-imposed limits on the exercise of federal jurisdiction," and the Supreme Court has held that "prudential standing encompasses [*inter alia]* the general prohibition on a litigant's raising another person's legal rights." *Selevan v. New York Thruway Authority,* 584 F.3d 82, 91 (2d Cir. 2009)(citing *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11-12 (2004)).

8

The Supreme Court has held that "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." *Warth v. Seldin,* 422 U.S. 490, 501 (1975). The Second Circuit, applying this to ERISA actions, has found that it "need not consider 'the prudential contours of the standing doctrine' because Congress, in enacting ERISA . . .[overrode] prudential limits by statute." *McClellan v. E.I. DuPont Nemours & Co.,* 2006 WL 3751583, *15 (W.D.N.Y. Dec. 19, 2006)(quoting *Financial Inst. Ret. Fund v. Office of Thrift Supervision,* 964 F.2d 142, 147 (2d Cir. 1992)). A cursory reading of this holding would lead to the conclusion that we cannot consider the prudential standing argument advanced by the Plans on this motion, but I do not find that to be the case. In *Financial Institutions* and *McClellan,* the courts considered whether the plaintiffs' standing to bring claims on their own behalf should be subjected to a prudential review, and decided not, because ERISA itself lists those entities that have standing to bring claims pursuant to 29 U.S.C. §1132(a) - that is, the Secretary of Labor, as well as a participant, beneficiary, or fiduciary of an ERISA plan - and the plaintiffs fell into one or more of those categories. But nothing in those cases supports a conclusion that a plaintiff can bring a claim only on behalf of third parties in contravention of fundamental principles of prudential jurisprudence.

The Plans do not appear to argue that an ERISA claimant cannot seek relief on behalf of both herself and similarly situated plan participants or beneficiaries, but that Rubinstein seeks relief in the first prong of the third cause of action only for others and not for herself. They state that the issue here is "whether a plaintiff may seek injunctive relief explicitly formulated to vindicate only the alleged rights of persons other than herself without pleading some fact from which the Court could find a sufficient commonality of interest between Plaintiff and those on

9

whose sole behalf she seeks relief." DE[12] at 8-8.

The plaintiff argues that the claim should not be dismissed on that ground, because the Supreme Court has "established that individual participants or beneficiaries may seek relief that inures to the benefit of the plan as a whole and is not focused on the rights of individual beneficiaries." DE[13] at 4 (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 142 n.9, 144 (1985)(as cited in *Keir,* 2003 WL 2004422 at *3)). The plaintiff's argument is misplaced, however. While the Supreme Court, in *Massachussets Mutual,* did note "Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole," and that the "draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary," Rubinstein is not seeking relief on behalf of the plan, but on behalf of future beneficiaries other than herself. 473 U.S. at 142 and n.9. The ruling in *Massachussets Mutual* is thus inapplicable here.

I agree with the movants that the relief Rubinstein seeks goes outside the bounds of prudential standing, and that the claim set forth in that paragraph 147(a) of the Complaint should be dismissed. Although Rubinstein has standing to bring a claim for equitable relief for herself, she does not have standing to do so exclusively on behalf of unnamed and unknowable potential future claimants.

Further, she seeks an injunction barring CIGNA and the LTD Plan from engaging in "the bad faith conduct" that led to the "wrongful termination" of her claim. It is impossible to determine, however, precisely what conduct she means. The complaint sets forth at length alleged bad conduct by CIGNA and the LTD Plan in reviewing records about Rubinstein, but the

10

words "bad faith" do not appear in the Complaint prior to paragraph 147, and one can only guess as to what precise conduct she would like to have enjoined in the future. For these reasons, the claim in paragraph 147(a) should be dismissed.

**Paragraph 147 (b):**

In her third cause of action, Rubinstein also asks for an Order: (1) requiring the LTD Plan to replace CIGNA as the LTD Plan's claims administrator and (2) directing that the new LTD Plan administrator be precluded from "requiring standards of proof in excess of that called for in the LTD Plan." Complaint, ¶147(b). The Plans argue that this provision, which is premised on a breach of fiduciary duty by CIGNA and the LTD Plan, must be dismissed because the plaintiff has failed to join an indispensable party - that is, a fiduciary, plan administrator, and/or the employer. DE[10-1] at 9-10. The Plans also argue that the "fiduciaries" alleged to have breached their duty in the plaintiff's claim are CIGNA and the LTD Plan, that the LTD Plan is described in the Complaint as an employee welfare benefit plan covered by ERISA, and that an employee welfare benefit plan as defined in ERISA §3(3) cannot be a fiduciary with respect to itself. DE[12] at 9-11. Because the LTD Plan is not, and cannot be, a fiduciary, they urge, no breach of fiduciary duty claim can be asserted against the Plan. The plaintiff argues that the administrative record indicates that the LTD Plan, plan administrator and employer are one and the same[5]. DE[11-1] at 10-11; DE[13] at 6-7. I look first to the question of whether the LTD Plan is or could be a fiduciary under ERISA and thus subject to a claim of breach of fiduciary duty.

---

[5]The administrative record is not before the court on this motion. The plaintiff's claim cannot be correct, however, as explained *infra*.

11

**Can an ERISA Plan be its own Fiduciary?**

There is a split of opinion on the issue of whether an employee welfare benefit plan can

be a fiduciary under the definitions set out in ERISA[6].  ERISA provides, in pertinent part, that "a

fiduciary is a person with respect to a plan to the extent (i) he exercises any discretionary

authority or discretionary control respecting management of such plan or exercises any authority

or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary

authority or discretionary responsibility in the administration of such plan. . . ."  29 U.S.C.

§1002(29)(A).  The term "person" is defined as "an individual, partnership, joint venture,

corporation, mutual company, joint-stock company, trust, estate, unincorporated organization,

association, or employee organization."  29 U.S.C. §1002(9).  Applying these definitions, a few

courts have found that a plan or a fund can qualify as a fiduciary under §1002(21)(A), as least for

the purpose of bringing suit.  *See, e.g., Saramar Aluminum Co. v. Pension Plan for Employees of

Aluminum Indus. & Allied Indus.,* 782 F.2d 577 (6th Cir. 1986)(employee benefit plan a fiduciary

where, as a party before court, plan necessarily included administrative board with full power to

administer plan and effectuate its policies); *Contract Cleaning Maintenance, Inc. v. Marks,* 1995

WL 495922 (N.D. Ill. 1995)(plan a fiduciary if it could present evidence that it met functional

qualifications of §1002(21)(A)); *Milwaukee Carpenter's Dist. Council Health Fund v. Philip

Morris, Inc.,* 70 F. Supp. 2d 888 (E.D. Wis. 1999)(finding possibility that plans could be

fiduciaries if they had substantial control over assets, management, or administration of ERISA

plan); *Flanagan Lieberman Hoffman & Swaim v. Transamerica Life and Annuity Co.,* 228 F.

Supp. 2d 830 (S.D. Ohio 2002)(ERISA plan a fiduciary in that it was nothing less than its

---

[6]See cases set forth in 178 A.L.R.Fed. 129 (originally published in 2002).

administrators, who were also fiduciaries); *United States Steel Min. Co., Inc. v District 17, United Mine Workers of America,* 897 F.2d 149 (4ᵗʰ Cir. 1990)(fund had standing as fiduciary to bring suit).

Other courts, however, including the Second Circuit, have either found or noted in *dicta* that an ERISA welfare benefit plan or fund cannot be a fiduciary under §1002(21)(A).  The Second Circuit has stated that it found it difficult to imagine a situation in which an ERISA fund could fulfill a role that would confer standing as a participant, beneficiary or fiduciary as defined in §1002(21)(A).  *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 n.8 (2d Cir. 1983).  The Southern District, relying on the Second Circuit's observation that the §1002(21)(A) definition of a fiduciary would seem to exclude the possibility of a plan acting as a fiduciary, found that the plaintiff plans lacked fiduciary status.  *Eastern States Health & Welfare Fund v. Philip Morris, Inc.,* 11 F. Supp. 2d 384, 400-401 (S.D.N.Y. 1998).  The Western District found that an ERISA pension fund was not a fiduciary, finding that the fund had presented no authority for the proposition that fund could act as a fiduciary's agent, and citing the Second Circuit's comments in *Pressroom.  United Auto Workers Local 55 Area Wide Ret. Income Fund v. Cina,* 1999 WL 222597, *2 (W.D.N.Y. Apr. 12, 1999).

Cases in other Circuits and Districts have also found that a plan cannot be a fiduciary under the definitions in ERISA or questioned whether that was possible. *See, e.g., International Union of Bricklayers and Allied Craftsmen v. Menard & Co. Masonry Bldg. Contractors,* 619 F. Supp. 1457 (D. R.I. 1985)(plan could not be considered among its own fiduciaries); *Boucher v. Williams,* 13 F. Supp. 2d 84 (D. Me. 1998)(employee benefit plan not a "person" under ERISA,

13

and thus not subject to claims of breach of fiduciary duty); *Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn Pens. Plan Guide,* 1997 WL 11292 (E.D. Pa 1997)(ERISA fund could not be sued for breach of fiduciary duties where, *inter alia,* definition of "person" does not include a fund and even if it did, fund cannot be a fiduciary with respect to itself); *Brennan v. Consolidated Rail Corp. Matched Sav. Plan,* 2000 WL 217664 (E.D. Pa. 2000)(finding, as a matter of law, that plan is not a fiduciary, owed no fiduciary duties, and could not be sued for breach of such duties); *Riley v. Murdock,* 828 F. Supp. 1215 (E.D. N.C. 1993)(ERISA plan not a fiduciary); *Midwest Operating Engineers Welfare Fund v. Uphoff,* 1988 WL 74736 (N.D. Ill. 1988)(plan could not be its own fiduciary and ERISA definitions clearly contemplate that benefit plan and fiduciary are distinct entities).

I agree with the decisions finding that a plan cannot be a fiduciary under the relevant definitions, and recommend that finding and the dismissal of the third cause of action as to the LTD Plan for that reason. The definitions of fiduciary and person set out in ERISA, in my opinion, render a finding that a plan is a fiduciary wrong, even if the Complaint alleges that the plan carried out the functions of a fiduciary. Further, I do not accept the plaintiff's odd claim that, here, the plan, the employer and the plan administrator are one and the same. There may be overlap between the employer and the plan administrator, but the plan and the employer cannot possibly be "the same thing." For these reasons, I also recommend a finding that a claim in an Amended Complaint alleging that the plan is itself a fiduciary would be futile. The fact that the plan is not and cannot be a fiduciary to itself does not, however, necessarily lead to the conclusion that Rubinstein has failed to join an indispensable party and I turn to that argument.

14

**Failure to Join an Indispensable Party**

The Plans argue that the prong of the claim that seeks to replace the claims administrator, that is, CIGNA, must be dismissed because Rubinstein has failed to name as a defendant an entity with authority to dismiss one claims administrator and appoint another, that is, the plan's fiduciary. *See* DE[10-1] at 10. That argument must, however, fail. While it seems odd to think that CIGNA could be ordered to replace itself, I can make no reasoned finding as to who the Plan fiduciaries are, because the Plans have not indicated anywhere in their papers who those fiduciaries might be. Further, I have no idea what the Plan's written provisions are for replacement of claims administrator and I do not have the Plan or the administrative record before me, although either party could have relied on it on this motion to dismiss inasmuch as it was incorporated by reference in the Complaint and thus can be considered in the determination of this motion[7]. Thus, I recommend a finding that the claim not be dismissed on the ground of failure to join an indispensable party.

To the extent that the Plans argue that the plaintiff cannot seek the dismissal and replacement of the claims administrator as equitable relief under ERISA, they are wrong. That relief can be sought and has, on occasion, been granted. *See, e.g., Chao v. Merino,* 452 F.3d 174, 185 (2d Cir. 2006). Although such relief would appear to be limited to extreme circumstances, it is too early in this lawsuit to determine whether such relief could be awarded, and the claim

---

[7]In deciding a Rule 12 motion, the court may consider documents upon which the plaintiff relied when drafting the complaint, including documents "incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Green v. The City of New York,* 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006)(quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)(additional internal citations omitted).

should not be dismissed now.

**Severance of the Claim for Equitable Relief:**

Finally, the Plans argue that, should the claim for equitable relief be allowed to stand, it should be severed pursuant to Rule 21. Although I have already recommended that the claim in paragraph 147(a) be dismissed as against both CIGNA and the LTD Plan on prudential standing grounds and the entire claim as against the LTD Plan because it is not a fiduciary, I address the severance claim for completeness, in the event that Judge Feuerstein does not adopt those recommendations. In determining whether to sever a claim, the court must consider; "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Todaro v Siegel Fenchel & Peddy, P.C.* 2008 WL 682596, *2 (E.D.N.Y. Mar. 3, 2008). Here, the claims under the two sections of ERISA do arise out of the same transaction or occurrence - the process used to deny Rubinstein's LTD benefits; the claims present some of the same common questions of law or fact; there is no suggestion that settlement of the claims would be facilitated and, to the extent that such a determination can be made at this time, little indication that judicial economy would be served by severance; again, at the early stage of the litigation, it cannot be said that the defendants would be prejudiced without severance; and, while different witnesses and documentary proof may be required, some will overlap. I find no basis for recommending severance at this time.

16

**Cross Motion to Amend:**

Rubinstein's cross motion to amend must be denied, inasmuch as she did not annex a proposed amended complaint to the motion. *U.S. Underwriters Ins. Co. v. Ziering*, 2010 WL 3419666, *2, n.2 (E.D.N.Y. 2010)(citing *Colida v. Nokia Am. Corp.*, 2006 WL 2597902, *3 (S.D.N.Y. Sept. 11, 2006)(in making motion to amend, party must attach proposed amended complaint so that Court and opposing party have opportunity to understand exact changes proposed). As noted earlier, the cross motion is not so much a motion to amend as a sur-reply to the motion to dismiss. Rubinstein should, however, be permitted to make a further motion to amend, except as to the issue of whether the Plan is an ERISA fiduciary, which, if my recommendation is accepted, is decided as a matter of law in the negative.

## SUMMARY OF RECOMMENDATIONS

In sum, I recommend the following findings:

(1) The Third Cause of Action does not apply to the defendant Life Insurance Plan and need not be formally dismissed as to that defendant.

(2) The standards for injunctive relief as set forth by the Supreme Court in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), apply to ERISA actions, but do not provide a ground for dismissal of the Third Cause of Action.

(3) The Plaintiff lacks prudential standing for the relief sought in Paragraph 147(a) and that prong of the Third Cause of Action should be dismissed as against both the LTD Plan and CIGNA.

(4) The Third Cause of Action should be dismissed in its entirety as against the LTD Plan because the LTD Plan cannot be a fiduciary under the applicable definitions set forth in ERISA and is not subject to a breach of fiduciary duty claim.

(5) I cannot conclude, on the record before me, that the plaintiff has failed to join an indispensable party to effect the relief sought in paragraph 147(b), and I do not recommend dismissal on that ground.

(6) There is no basis for recommending severance of the Third Cause of Action.

(7) The plaintiff's cross motion to amend should be denied based on her failure to annex a proposed amended complaint, but she should be permitted to move to amend if she chooses to do so once Judge Feuerstein has considered and ruled on this Report and Recommendation.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      September 27, 2011

                                 /s/ William D. Wall
                                 WILLIAM D. WALL
                                 United States Magistrate Judge