

ORRICK, HERRINGTON & SUTCLIFFE LLP
51 WEST 52ND STREET
NEW YORK, NEW YORK 10019-6142

tel +1-212-506-5000
fax +1-212-506-5151

WWW.ORRICK.COM

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 1 8 2013
```

February 18, 2013

John D. Giansello
(212) 506-5217
jgiansello@orrick.com

**VIA E-MAIL (FORRESTNYSDCHAMBERS@NYSD.USCOURTS.GOV)**

Honorable Katherine B. Forrest
United States District Judge
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, NY 10007-1312

Re:   Gates v. UnitedHealth Group, Inc., et al., USDC SDNY No. 11-CIV-3487 (KBF)

Dear Judge Forrest:

We write on behalf of the AllianceBernstein Defendants in the above-referenced action, pursuant to the Court's Order dated January 13, 2013. Initially, we concur with and join in the letter brief being submitted this date on the same matters by Defendant United Health Insurance Company ("UHIC"). To the issues addressed therein, we add several points and some comments directed toward the discovery the Plaintiff has obtained from UHIC since the hearing on January 11, 2013.

1.   <u>Dispositive facts not in dispute</u>.

First, at risk of repetition for which we ask the Court's indulgence, we think it important to focus on critical matters of fact that are not – and have never been – in dispute. Among these, most of which are admitted in Plaintiff's various formulations of her allegations, are (a) that Plaintiff ceased being an employee of AB on July 14, 2008 (ECF 75 ¶¶ 37-38); (b) that prior to July 14, 2008, she had not worked during an "extended absence" by reason of disability (id., ¶38); (c) that she is retired (id., ¶¶ 9, 43); (d) that from April 20, 2000, to May 1, 2012, she was a Participant in AB's CoPay Plan (id., ¶¶ 37, 41); (e) that effective May 1, 2012, she was dis-enrolled from the CoPay Plan and enrolled as a Participant in AB's Indemnity Plan (id., ¶ 41); (f) that she enrolled in Medicare on August 1, 2010 (id., ¶ 42); (g) that she became Medicare-eligible at least as early as August 1, 2010 (ECF 56 ¶¶ 8-9)[1]; (h) that her AB plan coverage is "secondary" to her benefits under Medicare (ECF 26 ¶ 26; ECF 75 ¶ 43); (i) that both AB plans are required to coordinate benefits with Medicare and do so in a similar manner (ECF 26 ¶37); (j) that once a participant in the AB plans becomes eligible for Medicare, the AB plans pay benefits under the plan as if Medicare were the primary payer, whether the participant has enrolled in Medicare or not (ECF 75, ¶ 48); (k) that once a participant in

---

[1] Plaintiff has assiduously avoided alleging when she became "eligible" for Medicare.


ORRICK

Honorable Katherine B. Forrest
February 18, 2013
Page 2

the AB plans becomes eligible for Medicare, then, even if the service provider has opted out of Medicare, Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare and the provider "had agreed to limit charges to the amount of charges allowed under Medicare rules" (ECF 26 ¶ 40; ECF 75 ¶48; ECF 86, p. 15 (9))[2]; (l) that the CoPay Plan contains no language or example *expressly* addressing the "allowable expense" for purposes of coordination of benefits when Medicare is the participant's primary coverage (ECF 86, p. 20 (14))[3]; (m) that both the CoPay Plan and the Indemnity Plan confer upon UHIC plenary discretion to interpret and determine benefits under the plans (ECF 81-1, pp. 11 (4), 88-89 (81-82), 97 (90); ECF 81-2, pp. 12 (9), 16 (13), 40 (37); and (n) that UHIC has interpreted the CoPay language in the situation where opt-out provider claims are submitted when Medicare is primary coverage to mean that Medicare's "payment arrangements", since it is primary coverage, determine the allowable expense to be used for all coverage plans, relying upon an example of a participant covered by multiple plans that calculate their benefits by different methods (ECF 81 ¶¶ 14-16; ECF 81-1, p. 74 (67).[4]

    2.    <u>These facts determine the jurisdictional issue</u>.

The foregoing bedrock facts mean that, whatever amount is taken by UHIC as the allowable expense for opt-out claims of plan participants in Plaintiff's position, UHIC determines the plan benefit by applying the Medicare *percentage* of an amount deemed to represent the Medicare allowable expense, and comparing the result to the result from applying the *percentage* the CoPay Plan would pay of the same allowable expense. See ECF 77, pp. 17-19 (10-12). This method undeniably puts Plaintiff in a more advantageous position than would result from use of the Medicare fee schedule on both sides of the benefits determination equation. *Id.* Plaintiff nowhere disputes Defendants' argument or demonstration on that point. Rather, what has become abundantly clear is that the fulcrum on which all of Plaintiff's claims turn is her contention that the AB plans *must* be interpreted to require that, *if* UHIC uses the billed charge as the "allowable expense" for Medicare opt-out

---

[2] ECF page numbers are to ECF pagination, with the corresponding original document pagination in parentheses.

[3] Plaintiff ignores the Indemnity Plan, which does contain express language addressing the allowable expense when Medicare is primary coverage, which expressly makes that term of the reimbursement equation determinable by "Medicare rules", and which thereby completely forecloses her claims. ECF 81-2, p. 47 (44). There is, moreover, no room to argue that AB was fully within its peremptory rights to determine Plaintiff was no longer eligible to be a Participant in the CoPay Plan once she ceased working the required number of hours to be an "Eligible Person" under the CoPay Plan. ECF 81-1, pp. 61 (54), 79-60 (72-73), 97 (90), 100 (93).

[4] Plaintiff attempts the argument that, because UHIC's witness to its coordination of benefits under the AB plans was not present at the creation of the relationship between the AB plans and UHIC, there is no evidence that UHIC has in fact interpreted the plans. The contention is frivolous. UHIC's witness testified to the interpretation of the plans by which, under her supervision, Plaintiff's claims at issue here were in fact processed by UHIC. See ECF 81.


ORRICK

Honorable Katherine B. Forrest
February 18, 2013
Page 3

claims, it nevertheless *must*, for opt-out claims, determine the amount Medicare *would have paid* to a Medicare-system provider by the Medicare fee schedule – even though the Medicare "allowable expense" per the fee schedule would be much lower than the billed charge. Indeed, Plaintiff flatly concedes that, if the language of the plans "allows" UHIC "properly [to] apply the same 'allowed expense' both to the benefits payable under the Plans and to the amount Medicare would have paid," Defendants' argument that UHIC's method overcompensates her in comparison to her proffered method, is valid, and she can demonstrate no injury in fact by reason of it, "and, therefore, would lack standing." See ECF 86, p. 19 (13); Plaintiff's January 18, 2013 letter, p. 2.

The *only* basis upon which Plaintiff can establish injury is if she can demonstrate that the plans *require* "a different amount to be used on each side of the comparison which would result in a greater benefit for Plaintiff;" i.e., that there *must be* some "plan benefit" or "allowable expense" that is greater than or other than the Medicare fee schedule "allowable expense" (or some multiple of the latter). January 18, 2013 letter, p. 2; ECF 94, p. 8 (3). But Plaintiff has never argued that this methodology should apply to all of her Medicare claims, and she has never disputed Defendants' repeated contention that she only intends it to apply to claims for services she has chosen to obtain from opt-out providers. See ECF 47, pp. 5-6 (2-3); ECF 77, p. 13 (6); ECF 81 ¶ 11; ECF 94, pp. 10-11 (5-6); Transcript of January 11, 2013 hearing, pp. 25-26.

Despite Plaintiff's strained efforts, there is no basis here to dispute that the AB plans confer discretion upon UHIC to interpret and apply the plan language, and that UHIC has done so in determining Plaintiff's opt-out claims.[5] In such circumstances, it is clear on the highest authority that the greatest deference is to be accorded by the Court to an administrator's interpretation, which will not be disturbed as long as it is reasonable. *Conkright v. Frommert*, 130 S. Ct. 1640, 1646-51 (2010) (citing with approval at 1647 n.1 numerous cases holding a court has no authority to substitute its judgment for that of a fiduciary trustee). A benefits determination may be overturned "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006). In this Circuit, there is cumulative authority that, even though a participant's conflicting interpretation is rational, the administrator's interpretation must be allowed to control. *E.g., id.; McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008); *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1272-73 (2d Cir. 1995); *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan*, 698 F.2d 593, 601 (2d Cir. 1982); *Polizzano v. NYNEX Sickness and Accident Disability Benefit Plan*, 1999 U.S. App. LEXIS 21376, **3-4 (2d Cir. Sept. 2, 1999); *Candela v. Mason Tenders' District Council Welfare Fund*, 2005 U.S. Dist. LEXIS 17248 *8 (S.D.N.Y. Aug. 19, 2005); *Mott v. IBM*, 2011 U.S. Dist. LEXIS 101257, **8-10 (E.D.N.Y. Aug. 9, 2011).

---

[5] *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98 (2d Cir. 2005), is inapposite here. That case involved a complete and unjustifiable failure to exercise discretion by the administrator prior to the time suit was filed. *Id.* at 109.


ORRICK

Honorable Katherine B. Forrest
February 18, 2013
Page 4

UHIC's method for determining the plan benefit when Medicare is primary starts by identifying the percentage of the claim the plan would pay if it were "the Primary Coverage Plan", then applies that percentage to an "allowable expense" for that claim, then compares the result to the percentage of the same amount Medicare would pay. This method means that "allowable expense" functions the same way and produces consistent results regardless of whether a participant obtains services from a provider in the Medicare system or from one who opts out. As such, it is perforce reasonable on its face. Surely, consistency is not unreasonable. Moreover, there is nothing in either plan to support the contention that the term "allowable expense" should mean one thing when Plaintiff, by her own choice, elects to obtain services from a Medicare provider and something extravagantly different when she chooses to obtain the same services from an opt-out provider. Indeed, Plaintiff's proffered interpretation is *inconsistent* with language of both plans, which provides for opt-out claims that, where Medicare is primary coverage, Medicare benefits are determined "as if the * * * provider had agreed to limit charges to the amount of charges allowed under Medicare rules." ECF 81-1, p. 77 (70); ECF 81-2, p. 48 (45).

Furthermore, Plaintiff's proffered interpretation, making the meaning of "allowable expense" turn on her choice of provider, is patently *unreasonable* and contrary to public policy. Such "[u]neven application of a plan provision would be arbitrary and capricious and, therefore, unlawful." *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 27 (2d Cir. 1988). It is contrary to public policy because it would allow Plaintiff, by her own choice of providers, effectively to convert what is expressly provided as *secondary* plan coverage when Medicare is admittedly primary to primary coverage by affording her a windfall in those instances where she elects to use opt-out providers. It would thus impermissibly nullify the secondary coverage provisions of the plans and render them superfluous. *Id.* at 25 (citing *Miles, supra*, 464 F.2d at 599). Plaintiff's proffered methodology for opt-out claims has already been raised in and effectively repudiated by one court in analogous circumstances:

> Plaintiff alleges that under his health plan, defendants owe in benefits the difference between what Medicare actually paid and what defendants would pay to a traditional subscriber where Medicare is not at issue. Accordingly, plaintiff first contends that defendants are obligated to pay full benefits when a subscriber visits a provider who does not accept Meddicare.
>
> This theory of liability would effectively allow a beneficiary participating in a secondary coverage plan to elect to convert the plan into a primary coverage plan by choosing a provider who does not participate in Medicare. Plaintiff does not explain how this theory can be reconciled with plaintiff's affirmative allegations that under the terms of his plan, the coverage provided by defendants is secondary to Medicare. * * * Because this apparent conflict is not squarely addressed by the briefing of the


ORRICK

Honorable Katherine B. Forrest
February 18, 2013
Page 5

parties, the Court declines to rule on it at this time, except to note that imposing primary coverage responsibility on a plan intended to provide only secondary coverage would appear to improperly shift substantial unanticipated costs to that plan. *See McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 124 F.3d 471, 478 (3d Cir. 1997) (observing that "there would be substantial and adverse fiscal consequences were a court to impose primary coverage on a plan . . . which intended to provide . . . nominal secondary coverage for [a] group of claimants merely because the plan provides primary coverage for certain other claimants").

*Lipstein v. United Healthcare Insurance Company*, 2011 U.S. Dist. LEXIS 135202, **2-4 (D.N.J. Nov. 22, 2011). The AB Defendants submit that these remarks are reinforced by the Supreme Court's emphasis that Congress enacted ERISA to create a system that is not so complex that administrative costs or litigation expenses discourage employers from offering ERISA plans in the first place, and "by assuring a predictable set of liabilities under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Conkright, supra*, 130 S. Ct. at 1648-49 (citations omitted).

   3.  Plaintiff's additional discovery is unavailing.

   In pursuit of her argument that the AB plans must be interpreted to afford her a more generous benefit when she chooses to use opt-out providers than when she uses Medicare-system providers for the same services, Plaintiff has propounded three discovery requests to UHIC. These are (a) for information about the methods for determining "eligible expenses" and for reimbursing out-of-network services under the CoPay Plan *when there is no coordination of benefits issue*; (b) for an answer to the question of whether UHIC's agreements with its network providers require them "to accept Medicare"; and (c) how UHIC would determine reimbursement under the CoPay Plan for emergency health services provided in a foreign country which Medicare does not cover.

   It is difficult to see the bearing that any of these inquiries has on the issues before the Court. If the first is intended to support a demonstration that, in the absence of multiple coverages requiring coordination of benefits among plans, the "eligible" or "covered" expense that is the starting point for the benefits calculation is derived from some standard such as reasonable and customary charges, that fact is utterly irrelevant to a situation that admittedly does require coordination of benefits, and where UHIC has reasonably interpreted the plan provisions where Medicare is the primary coverage to mean that the primary coverage plan's "payment arrangements" are the allowable expense for all coverage plans – an interpretation which, as demonstrated, the Court has no power to disturb. The only use to which such a "fact" could be put would be to attempt to support a further irrational argument that there is some other or greater "plan benefit" than the Medicare allowable expense, but only when the participant, by her own choice, elects to use


ORRICK

Honorable Katherine B. Forrest
February 18, 2013
Page 6

an opt-out provider (since it is absolutely clear that Plaintiff does not challenge UHIC's methodology when it is applied to Medicare-system providers).

Plaintiff's second request is unhelpful to resolve any issue here. Plaintiff's claims admittedly concern only Medicare opt-out providers. Whether any of those providers is "in-network" for any of UHIC's non-Medicare coverages where Medicare coordination of benefits is not involved would seem to have nothing to do with this case.

Plaintiff's third discovery request is baffling. She hypothecates a situation where emergency medical services are obtained in a foreign country, for which there is no Medicare coverage. That being the case, there would be no coverage with which benefits would need to be coordinated, and UHIC has stated that it would not apply the CoPay Plan's provisions regarding coordination of benefits in that situation. If that is the direction Plaintiff is going with the third request, it is inapposite to the claims raised in her complaint(s). The circumstances her claims invoke posit Medicare coverage which is primary and which is available to her, which, by her own election, she decides not to use, preferring opt-out providers instead. In her foreign hypothetical, her choice makes no difference; there is no "primary" Medicare coverage with which to coordinate.

4.   The jurisdictional failure dooms all of Plaintiff's claims.

The AB Defendants are cognizant that the Court has invited these supplementary submissions only with respect to the standing issue raised by Plaintiff's proposed first claim for relief. Nevertheless, her inability to demonstrate that UHIC's methodology causes her any injury in fact vitiates her other claims. Those claims (except for the seventh, which is conclusively barred by the eligibility language of the CoPay Plan – see n. 3, *supra*), all depend on an inference that UHIC's methodology is invalid or that the plan provisions for review of claims have been misapplied to deprive her of benefits to which she is due. Moreover, they are all predicated in one way or another on the presumption that a purported violation of the claims procedure provisions of ERISA § 503 supports a claim for breach of fiduciary duty. But such a claimed violation of procedural requirements that does not result in actual harm to her cannot constitute an injury in fact, for a mere "alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves" are not sufficient to confer constitutional standing. *Kendall v. Employees Retirement plan of Avon Products*, 561 F.3d 112, 121 (2d Cir. 2009). Moreover, as already argued (ECF 94, p. 14 (9)), while a plan participant certainly may sue for breach of fiduciary duty, fiduciary duty under ERISA runs not directly to any individual participant, but to the plan for the benefit of the participants and beneficiaries of it. *See Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 139, 144 (1985). And, to the extent that Plaintiff may be attempting to argue that, even though UHIC's application of the admittedly proper plan claims procedures has not resulted in any demonstrable injury to her, she can still maintain such a claim on behalf of others for whom



**ORRICK**

Honorable Katherine B. Forrest
February 18, 2013
Page 7

UHIC's claims administration procedures may have violated § 503, the AB Defendants respectfully recall to the Court's attention the prudential standing restraint against permitting a litigant to maintain claims only on behalf of others when she has no such claims herself. See ECF 35, p. 21 (17) and cases there cited.

    For the foregoing reasons, the AB Defendants contend that all of Plaintiff's claims should be dismissed.

Respectfully submitted,

*[signature]*

John D. Giansello

cc:    All counsel of record (via e-mail)