USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED APR 1 9 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                     :

MARIANNE GATES, individually and on  :
behalf of all others similarly situated,  :
                                     :

                      Plaintiff,  :

               -v-  :
                                     :

UNITED HEALTHCARE INSURANCE  :
COMPANY; LIFE, AD&D, DISABILITY &  :
MEDICAL PLAN FOR EMPLOYEES OF  :
ALLIANCEBERNSTEIN L.P.; UNITED  :
HEALTHCARE CHOICE PLUS COPAY  :
PLAN FOR ALLIANCEBERNSTEIN L.P.;  :
ALLIANCEBERNSTEIN L.P. RETIREE  :
MEDICAL PLAN FOR EMPLOYEES OF  :
ALLIANCEBERNSTEIN L.P.; and  :
ALLIANCEBERNSTEIN L.P. UNITED  :
HEALTHCARE INDEMNITY PLAN,  :
                                     :

                   Defendants.:
------------------------------------------------------------X

11 Civ. 3487 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      This putative class action brought by Marianne Gates in May 2011, alleges

violations of the Employee Retirement Income Savings Act ("ERISA") related to

retiree health benefits provided by her former employer, Alliance Bernstein L.P.

("AB"). 29 U.S.C. § 1001, et seq. By order dated July 16, 2012, this Court dismissed

a number of plaintiff's claims but allowed others to proceed. (ECF No. 66.) In

particular, the Court found that certain arguments defendants made in support of

dismissal (that plaintiff lacked injury and thus Article III standing) were based

solely on attorney argument that could not form the basis for a ruling. (Id.)

On September 13, 2013, plaintiff submitted a proposed Second Amended Complaint ("SAC") and requested leave to amend. Defendants opposed that application on the basis that the amendments were futile and the claims remained subject to dismissal.  However, in this second round of briefing on the complaint, defendants submitted a declaration from Melody L. Smith, a Manager in the Operations Management section of the ERISA plan's administrator, United Healthcare Insurance Company ("UHIC"). The Smith declaration was initially submitted solely in connection with defendants' argument for dismissal pursuant to Fed. R. Civ. P. 12(b)(1).

The Smith declaration sets forth UHIC's methodology and rationale for reimbursements for individuals whose primary and secondary healthcare plans share similar characteristics with those of plaintiff.[1]  In her response papers, plaintiff noted the overlap between defendants' 12(b)(1) argument that plaintiff lacked injury and therefore standing, and their 12(b)(6) argument that plaintiff failed to state a claim because UHIC's interpretation of the plan was neither

---

[1] Plaintiff argues that this Court should disregard the Smith declaration because at her deposition, she testified that she was not the person who initially interpreted the AB Plan and used the "estimating" methodology. (See Pl.'s Mem. in Response to the AB Entities' Mem. ("Pl.'s AB Response") at 7, ECF No. 90.) Plaintiff cites a portion of Smith's deposition in which she readily conceded that the determination that "estimating" would be applied to plaintiff's claims occurred in the overall context of a determination that such estimating would occur with respect to all AB claims of a similar nature – and that she was not part of this initial determination. Id.  That Smith concedes that consistency has long governed benefit determinations with respect to the AB Plan supports defendants' positions on this motion. Plaintiff is essentially arguing that the only "determination" of relevance is an initial determination as to a methodology that is thereafter applied consistently. Accepting such an argument would turn ERISA principles seeking consistency and efficiency on their heads.  It is certainly neither desired nor the law that methodology for one Plan and one type of situation should be determined anew as to each beneficiary.  Accordingly, a Plan administrator who can testify as to what the methodology is, the company's rationale for such a methodology, and how it was applied in plaintiff's situation – such as Smith – provides valuable evidentiary support.

arbitrary nor capricious. According to plaintiff, the overlap in arguments made it inappropriate for the Court to rely on the Smith declaration to the extent it would be used to resolve the 12(b)(6) argument.

On January 11, 2013, this Court held oral argument on defendants' motion opposing plaintiff's application to amend her complaint. During the course of the argument the Court agreed that there was overlap between defendants' 12(b)(1) and 12(b)(6) arguments. In fact, a judicial determination that plaintiff had not been injured would in fact necessarily accept UHIC's plan interpretation, and vice versa.

In the context of any ordinary 12(b)(1) argument, the Court noted that it could consider materials outside of the record. See, e.g., Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.") However, the Court also noted that it could not review the declaration to evaluate plaintiff's allegation that UHIC acted outside its discretion in awarding plaintiff benefits on a Rule 12(b)(6) plausibility pleading standard.

To resolve the issue, the Court suggested – and the parties consented to – conversion of the motion to one for summary judgment under Fed. R. Civ. P. 56. Procedurally, the Court will therefore deem plaintiff's Second Amended Complaint (SAC) to be filed and will consider defendants' arguments as made in support of summary judgment. The Court suggested – and the parties agreed – that in connection with such conversion, plaintiff should be provided an additional opportunity to seek the limited additional discovery she deemed necessary to oppose

the motion. Such discovery was conducted.  The parties made additional letter submissions in connection with the motion on February 18, 2013. (ECF Nos. 99, 100, 101.)

Accordingly, now before this Court is defendants' (converted) motion for summary judgment. For the reasons discussed below, the Court grants that motion, finding that the Court lacks subject matter jurisdiction due to plaintiff's lack of standing and, in the alternative, that plaintiff's Count I fails to allege plausible facts suggesting that she has been harmed.  As plaintiffs remaining claims are dependent upon a finding of harm in Count I, the Court dismisses the SAC in its entirety.[2]

## I.    TRANSLATION OF THE DISPUTE INTO SIMPLE ENGLISH

Plaintiff's claims are not particularly complicated.  However, ERISA is a statute full of sections, sub-parts and nuanced distinctions between types of claims, relief and who may seek the same. As a result, ERISA-based pleadings and arguments in response thereto often appear mysterious – requiring that one walk deeply into the same forest in which Dorothy found herself with only a lion, scarecrow and tin man. There is, however, no need for ruby slippers or the Great Oz to provide a way out of here. The parties' arguments can be rendered accessible.

---

[2] The parties brief a number of arguments related to the claims in the SAC.  Given plaintiffs lack of standing and failure to state a claim, the Court does not reach these additional arguments.

The core of plaintiff's claim is this: she was a participant in a health care plan ("Plan") administered by UHIC for her former employer, AB.[3] She sought reimbursement for certain medical expenses. She asserts that the methodology that UHIC used and uses to determine the amount of her reimbursement, which she calls an "Estimating Policy", is improper—even arbitrary and capricious. Defendants UHIC and AB disagree. Indeed, they assert that not only does UHIC's methodology make sense (and is neither arbitrary nor capricious), but it actually provides her with an equivalent or higher reimbursement that she would receive using the methodology plaintiff suggests. Without a possibility of harm to plaintiff, defendants suggest, no injury in fact exists to support standing.

The undisputed facts are as follows:

The parties agree that UHIC is the administrator of the Plan and has the discretion under the Plan to interpret the Plan where such determinations are warranted.

Plaintiff's claims relate to reimbursements for medical services she received between July 12, 2010 and February 24, 2011. During that period, she was a participant in the 2010 version of the United Healthcare Choice Plus Copay Plan for AllianceBernstein L.P. ("Copay Plan"). A copy of the summary plan description

---

[3] Plaintiff is currently a participant in another health plan administered by UHIC, the AB "Indemnity Plan." Plaintiff states that since she has only recently transferred to the Indemnity Plan and has insufficient experience with it to assert any claims at this time. (See Pl.'s Mem. in Response to AB Defs.' Mem. in Opp. to Pl.'s Mot. for Leave to File a 2nd Am. Compl. at 2 n.2, ECF No. 90.) However, she also notes that UHIC uses the same "Estimating Policy" in connection with that plan as with her prior plan that forms the basis for her allegations in the SAC. (Id.)

("SPD") for that Plan is attached as Exhibit A to the Smith declaration. Plaintiff was eligible for Medicare at the time she made the claims relevant to this lawsuit.

The SPD for the Copay Plan provides that UHIC is the Claims Administrator, and has been granted sole and exclusive discretion to interpret the Plan's terms and make factual determinations related to the Plan and its benefits. (See Summ. Plan Descrip. ("SPD"), Smith Decl., Exh. A at 81, ECF No. 81.)

When a participant is covered by the Copay Plan and another health benefit plan, including Medicare, one plan is considered "primary" and the other is "secondary" for a given claim.  In plaintiff's case, it is undisputed that the Copay Plan was considered the "secondary" plan.

When there are two plans, the SPD provides that UHIC must coordinate benefits with those of the primary insurer. This is called a "coordination of benefits" or "COB". The provision for this coordination of benefits is set forth in Section 7 the Plan's SPD.  The COB provisions in the Plan are modeled on, and restate the basic standards for, coordination of benefits stated in guidelines promulgated by the National Association of Insurance Commissioners ("NAIC"). When a participant is eligible for Medicare – whether actually enrolled in Medicare or not – the SPD provides that UHIC must coordinate benefits with those payable under Medicare.[4]

Accordingly, because plaintiff is eligible for Medicare, her Copay Plan benefits are calculated as if Medicare provides primary coverage.  In general, only a portion of a heath care provider's billed charges are "allowed" or "allowed expenses" under Medicare. Medicare's allowed expenses for services are published.  The Copay

---

[4] Federal law provides the instances in which Medicare is considered primary coverage.

Plan defines an "Allowable Expense" as a health care service or expense, including deductibles and copayments, covered, at least in part, by any of the Coverage Plans covering the person.  The SPD states that dental care, routine vision care, outpatient prescription drugs and hearing aids are not Allowable Expenses. (SPD at 67.) Expenses covered by Medicare are considered Allowable Expenses.

The coordination of benefits is at the heart of plaintiff's claims.  When a participant submits a claim that requires such coordination, UHIC does the following:

First, it determines the Medicare "Allowable Expense" – this step occurs whether the participant is enrolled in Medicare or not, so long as the participant is eligible for Medicare; this also occurs whether the participant sought a health care service from a provider who participates in Medicare (in-network) or not (out-of-network).  Put another way, once a participant is Medicare eligible, it does not matter whether he or she has signed up for Medicare or whether he or she goes to a provider who participates in Medicare – in all instances, the first step in determining any benefit is for UHIC to determine what the starting "Allowable Expense" is;

Second, UHIC determines the benefit payments that the Copay Plan would have paid had it been the primary coverage plan (here, Medicare), using the Medicare Allowable Expense as the metric for such determination;

Third, UHIC then compares the amount that Medicare would have paid for the Allowable Expense to the amount that the Copay Plan would pay for that same

Allowable Expense; when the Copay Plan would have paid in excess of what UHIC determines Medicare would have paid (or did pay), the Copay Plan pays the difference to the participant.

The parties agree that these are the three steps UHIC uses for its determination of benefits. The parties agree that UHIC has the discretion under the Copay Plan to make such determinations of benefits.

The core issue in this lawsuit relates to the first step in this process – the methodology by which UHIC determines the amount of an Allowable Expense for an out-of-network service.  The parties do not dispute that UHIC uses a process it calls "estimation" to determine the Allowable Expense for instances in which a participant is seeking reimbursement for an out-of-network charge. Plaintiff refers to this as the "Estimating Policy".

According to plaintiff, at step one, UHIC should determine the Allowable Expense not once, but twice. Plaintiff argues that – in all instances – UHIC should start by determining the Allowable Expense that would constitute the amount that the participant "would have been paid" by referring to the published Medicare fee schedule.  That fee schedule sets forth the amounts that Medicare has determined are the maximum amounts for a particular service.  This would mean that if a participant goes to a Medicare participating doctor and receives treatment for "X", then the amount that Medicare would pay for "X" service is a percentage of the Allowable Expense (Medicare typically pays only 80% of its maximum allowable fee for any given service).  Similarly, according to plaintiff, if the participant receives

8

the same service from an out-of-network (not Medicare participating) service provider, UHIC should nevertheless be required to refer to the same published list for the amount of the Allowable Expense that Medicare would have based its percentage payment on to the participant if the service had been provided in-network.

Plaintiff then argues that for out-of-network services, UHIC must then undertake a second "Allowable Expense" analysis: After determining what this amount is (and therefore what plaintiff would have been paid by Medicare), UHIC should then calculate a second Allowable Expense, this time for what the Copay Plan would have paid had it been the provider of primary coverage.  To calculate this Allowable Expense, plaintiff would apply a reimbursement percentage defined in the Copay Plan to the usual and customary rate ("UCR") for the procedure at issue, as defined by a database UHIC rents from Fair Health, Inc.  Plaintiff argues it should be paid the difference between what the Copay Plan would have paid (using the percentage of the Fair Health database amount as the Allowable Expense) and what Medicare would have paid (using the Medicare fee schedule as the Allowable Expense).

Defendants disagree. According to defendants, what constitutes an Allowable Expense for a benefits determination is and need only be determined once and it should be determined consistently.

According to defendants, plaintiff's first error is to assume that UHIC can readily associate an out-of-network service with a Medicare published fee for a

similar service. UHIC asserts that in many instances, the information which would allow the efficient and timely selection of the appropriate Medicare Allowable Expense is not available (at least initially) from the out-of-network provider. According to Smith, "the claims [for out-of-network services] often lack the necessary procedure coding detail to determine what Medicare would have paid based on its published fee schedules. Even when UHIC can determine the Medicare fee schedule amount, it does not know how Medicare would have applied its reimbursement policies to the claim." (Smith Decl. ¶ 12.)  Thus, if UHIC was to try and reconcile the precise amount that Medicare would in fact have paid for a particular service provided by an out-of-network provider, it might take more time, add inconsistencies, and require a back and forth with the provider.

To account for this uncertainty, in situations in which a participant uses an out-of-network provider, UHIC uses the entire amount billed that provider as the "Allowable Expense"; it then applies the percentage that Medicare typically pays for services (80%). It then determines the amount that the Copay Plan would have paid, by applying the percentage it would normally reimburse to the Allowable Expense (the full billed amount).  If the Copay Plan would have paid more than the amount UHIC determines Medicare would have paid, UHIC pays the participant the difference.  This single determination of "Allowable Expense" is the essence of the so-called Estimating Policy.

Plaintiff claims that defendants' use of an "Estimating Policy" is inconsistent with clear Plan language which states that when there is a coordination of benefits,

"Medicare benefits are determined as if the full amount that <u>would have been</u> <u>payable under Medicare was actually paid</u> under Medicare even if the person is entitled to but not enrolled in Medicare . . . [or] receives services from a provider who has elected to opt out of Medicare." (SPD at 70 (emphasis added).) Plaintiff's case is premised on the view that this language requires UHIC not to exercise any discretion when it determines the Allowable Expense in the first step of determining reimbursement for an out-of-network expense: UHIC must start with the actual amount that Medicare would in fact have paid.  Plaintiff urges that this does not mean that the <u>same</u> Medicare Allowable Expense should be interpreted a second time; instead, the second time (used to find the difference) should then be the usual and customary rate used by the Copay Plan where it is the primary coverage, an amount typically higher than the Medicare fee schedule amount.

Defendants argue that this same language provides UHIC with the basis for its estimation method.  Defendants claim that the Plan acknowledges that determinations of Allowable Expenses can occur in different scenarios and anticipates that they will be determined differently depending on the scenario.  The SPD sets out examples of such scenarios on page 67 of the SPD. There are two notable things about these examples, argue defendants: first, that they are based on NAIC guidelines and therefore follow industry conduct; and second, there is no example that expressly addresses circumstances involving Medicare. Thus, interpretation is plainly anticipated and required.

11

Defendants argue that, by analogy, the most similar of all of the examples of how UHIC might determine an Allowable Expense is found in paragraph "d" of page 67 of the SPD:

> If a person is covered by one Coverage Plan that calculates benefits or services on the basis of the usual and customary fees and another Coverage Plan that provides its benefits or services on the basis of negotiated fees, the Primary Coverage Plan's payment arrangements shall be the Allowable Expense for all Coverage Plans.

(SPD at 67(d).) Smith states that based on her reading of the Copay Plan, this example should "guide coordination of benefits whenever two benefit plans utilize different methods of computing benefits." (Smith Decl. ¶ 15.)

Defendants argue that their methodology puts plaintiff in a better position that she would be in otherwise. Defendants' math, based on their Estimating Policy, flows as follows:

1. Assume that a service is provided for which an out-of-network provider charges $200.

2. Assume that Medicare's published fee "allows" only $100 for that service.

3. When UHIC calculates the amount payable to plaintiff for this out-of-network service, it would "estimate" that Medicare would "allow" the expense in its entirety – thus start with $200 (not the $100 from the published Medicare rate, assuming that rate could be determined based on the information provided); it would also assume that Medicare would pay its customary percentage of 80% of the full $200 fee, leaving the participant with a $40 shortfall.

12

4. Next, UHIC would calculate the amount payable under the Copay Plan.  If
   the service is one where the Plan pays 100% of the Allowable Expense,
   then the amount payable under the Copay Plan would be $200.

5. UHIC would thus pay the participant $40 – the $200 amount payable
   under the Copay Plan, minus the $160 that UHIC estimated that
   Medicare would have paid.

(Smith Decl. ¶ 23.)

According to defendants, this payment method is better for plaintiff than if
UHIC used the actual published Medicare amount as the starting point.  That
published Medicare amount scenario flows as follows:

1. Even though the participant paid an out-of-network provider $200, UHIC
   would have to "assume" that Medicare's Allowable Expense was the $100
   from its published fee schedule;

2. UHIC would also assume that Medicare "actually paid" its typical 80% of
   the published amount of $100, leaving a shortfall of $20;

3. To calculate the amount payable under the Copay Plan, UHIC would take
   the Allowable Expense under Medicare ($100) and apply the Copay Plan
   reimbursement percentage (100% in this example) to arrive at an amount
   payable of $100.

4. UHIC would then pay the participant only $20 – the difference between
   the amount payable under the Copay Plan, $100, and the amount
   Medicare would have paid, $80.

Plaintiff does not argue that the Medicare published amount should be the only basis for the Allowable Expense, however. Rather, plaintiff argues, Defendant's calculations are incorrect to rely on the use of a single determination of an Allowable expense when it should make two separate Allowable Expense determinations. Plaintiff's calculation flows as follows:

1. Assume a participant pays $200 for an out-of-network service.

2. UHIC should start its calculation by assuming that the Allowable Expense is only the $100 Medicare would pay under its fee schedule.

3. UHIC should further assume that the participant has actually been paid the 80%, or the $80 that Medicare would pay.

4. UHIC should then compare that amount to the amount that the Copay Plan would have paid based on the Allowable Expense calculated by reference to the Fair Health database. Thus, if the Fair Health usual and customary rate for the procedure was $200, and the Copay Plan would pay 100% of that service, the amount payable under the Copay Plan would be $200.

5. UHIC should then pay plaintiff the difference between the amount payable under Medicare (using the Medicare fee schedule to calculate the Allowable Expense) and the amount payable under the Copay Plan (using the Fair Health database to calculate the Allowable Expense), or $120.

These dueling scenarios form the basis for the parties' positions in this suit.

II.   CONSTITUTIONAL STANDING

A district court can only entertain actual cases and controversies. U.S. Const. art. III. A plaintiff must suffer or have suffered injury in fact in order to have Article III standing. Lujan v. Defenders of Wildlife, 504 U.S. 55, 56 (1992). Courts have dismissed cases alleging ERISA violations when the plaintiff has not suffered injury in fact. See Kendall v. Emp. Ret. Plan of Avon Prods., 561 F.3d 112, [121] (2d Cir. 2009)(dismissing for lack of standing when on their face plaintiff's allegations did support an deprivation or injury to her); see also McCullough v. AEGON USA, Inc., 585 F.3d 1082, 1084 (8th Cir. 2009)(no standing where plaintiff's benefits from an over-funded plan were unaffected by the payment of excessive fees to a vendor); Williams v. Blue Cross & Blue Shield, 2010 WL 4025857, *3 (N.D. Fla. Oct. 12, 2010)(no standing because "none of the named plaintiffs suffered any injury as a result of the acts alleged in their complaint").

III.   STANDARD OF REVIEW

Where the language of an ERISA plan is unambiguous, the administrator must apply the plan as written; its decision is subject to de novo review. See 29 U.S.C. § 1104(a)(1)(D); Firestone, 489 U.S. 101, 115 (1989).

If language is ambiguous, and the plan administrator has been given discretion under the Plan (as here), the administrator's determinations and interpretations are entitled to deference. "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably

intelligent person who has examined the context of the entire . . . agreement." <u>See</u> <u>Fay v. Oxford Health Plan</u>, 287 F.3d 96, 104 (2d Cir. 2002)(citation omitted).

As such, "[i]f an employee 'benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan', the decision to deny benefits must be reviewed under the arbitrary and capricious standard. <u>Pochoday v. Building Service 32BJ Pension Fund</u>, 5 Fed.Appx. 16, 20 (2d Cir, 2001)(<u>citing</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).)

Here, the parties agree that such deference is given by the Plan, but disagree as to whether it need even be relied upon: plaintiff argues the Plan language is unambiguous and requires no interpretation; defendants disagree.

If interpretation is required, under the arbitrary and capricious standard, a plan administrator's rational interpretation of the plan must be allowed to control even if the claimant offers a conflicting, rational interpretation of the plan. <u>Pulvers</u> <u>v. First Unuum Life Ins. Co.</u>, 210 F.3d 89, 92-93 (2d Cir. 2000). A court may overturn a plan administrator's determination only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. <u>Id.</u> at 92; <u>see</u> <u>also</u> <u>Kast v. Liberty Mutual Ins. Co.</u>, 03 Civ. 3230, 2004 WL 307278 (Feb. 18, 2004)(granting summary judgment to administrator of plan who asserted that applying its methodology to calculate benefits was neither arbitrary nor capricious; there, the beneficiary claimed that the formula applied to determine benefits was illogical and resulted in underpayments. The Court found that "[i]t is not the

province of the Court to evaluate the coveage formula adopted by the Medical Plan.
Rather, the Court's review is limited to determining whether Liberty resolved
Kast's request for benefits on a rational interpretation of the Medical Plan as
written.)

In Conkright v. Frommert, 130 S. Ct. 1640, 1649 (2010), the Supreme Court
confirmed the application of the arbitrary and capricious standard to instances
when the plan provides discretionary authority to the plan administrator. Id. There,
in support of this deferential standard of review, the Court stated, "ERISA
represents a 'careful balancing between ensuring fair and prompt enforcement of
rights under a plan and the encouragement of the creation of such plans." (Id.,
citing Aetna Health Inc. v. Davila, 542 U.S. 200, 215 (2004).)  Deference also helps
plan administrators to meet their fiduciary duties to all beneficiaries by preserving
limited plan assets – and therefore to prevent windfalls to particular beneficiaries.
Id., citing Varity Corp. v. Howe, 516 U.S. 489, 514 (1996).  Such deference, as the
Supreme Court noted, prevents windfalls to some participants and acknowledges
that plan administrators have a duty to administer a plan so as best to preserve the
plan's resources for all beneficiaries.

IV.    DISCUSSION

If plaintiff here lacks Article III standing her case cannot proceed. Lujan, 504
U.S. at 56.  In addition, as noted above, the Court's decision on Article III standing
is necessarily tied to its determination of the propriety of UHIC's estimating
methodology with respect to plaintiff's reimbursement claims.  Both of these

17

determinations can be made on the basis of the allegations on the face of the complaint combined with the Smith Declaration; Smith has personal knowledge of how and why UHIC makes the type of benefit determinations here at issue; plaintiff raises no triable issue that the determinations were made differently as regards her particular claims.

As an initial matter, the Court finds interpretation of the Plan is required. Reviewing the complaint and Smith Declaration under an arbitrary and capricious standard of review, the Court finds that plaintiff lacks standing and fails to state a claim.

Neither party disputes that UHIC is a plan administrator in whom resides the discretion to make determinations and interpretations of the Copay Plan. Two questions are disputed, however: first, whether the provisions here at issue are ambiguous – and therefore reviewable under an arbitrary and capricious standard – or clear by their plain language — subject to de novo review; and second, whether UHIC is correct in its method for calculating the "Allowable Expense" for out-of-network charges.

a. Applicable Standard of Review

As to the first question, the Court applies the "arbitrary and capricious" standard of review.  It is undisputed that here, as in Pochoday, the Plan gives discretionary authority to a defendant – in this case, UHIC.

But plaintiff urges that the plan terms are unambiguous, so arbitrary and capricious standard is inapplicable. See 29 U.S.C. § 1104(a)(1)(D)(ERISA fiduciary

must administer the Plan in accordance with its language; <u>Firestone</u>, 489 U.S. 101, 115 (1989) ("[A] denial of benefits . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.")

Plaintiff has failed to allege sufficient plausible facts to merit de novo review. Rather, the Court finds the Plan language to be ambiguous and thus open to interpretation by the administrator. As stated above, the Plan provides that, for opt-out claims "Medicare benefits are determined as if the full amount that would have payable under Medicare was actually paid under Medicare." (Plan ¶¶ 48, 50.) This language leaves open the question of what "amount" would have been payable and how that amount is calculated. Where there is no Medicare EOB to rely upon, the administrator must make a discretionary determination as to what amount would be payable under Medicare. Plaintiff argues this figure must be derived from the official Medicare fee schedule; defendants use the amount actually billed. But, as defendants point out, it is often not possible to map the services billed by an opt-out / non-Medicare provider to the codes in the Medicare fee schedule. Providers outside the Medicare system often submit billing entries that do not align precisely with those in the government tables. As such, requiring the Plan to use the Medicare fee schedule as the "amount payable" under Medicare involves an estimation, just as using the amount actually billed involves an estimation. The amount that "would have been payable" is thus ambiguous based on plain language of the plan – and the administrator may interpret the meaning of the term.

This conclusion is consistent with Firestone, which indicates that deference to the administrator is appropriate in cases where such discretion has been given, and Frommert, where the Supreme Court made it clear that such deference is not to be lightly taken away.

b. Rational Determination

Applying the arbitrary and capricious standard, the Court then asks whether UHIC's determination is rational, since a plan administrator's rational interpretation must be allowed to control even in the face of a contrary rational interpretation. See Pulvers, 210 F.3d at 92-93; Kast, 2004 WL 307278, at * 3. The Court may only overturn the decision if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995).

Here, UHIC determines the "Allowable Expense" only once for any benefit determination; in a situation of an out-of-network or opt-out provider, the Allowable Expense is the fully billed charge (and thus, UHIC assumes that the participant has been paid the 80% that Medicare typically actually pays for Medicare allowable expenses).

Smith explains that the UHIC methodology allows for a consistent and efficient interpretation of Allowable Expense. The benefit amount is determined quickly, without forcing the Plan participant to obtain all of the information that an in-network Medicare provider would normally provide. In instances in which an out-of-network provider does not provide sufficient information to compare the

services provided to the published Medicare fee schedule, a benefit may nonetheless be efficiently determined and provided.

Moreover, by using the total amount billed from the out-of-network provider as the basis for the Allowable Expense, UHIC's reimbursement is larger than if it used the amount published on the Medicare fee schedule as the appropriate Allowable Expense.[6] UHIC's methodology therefore has a sound rational basis, it is certainly based on reason, promotes consistency, efficiency, and prevents windfalls while preserving plan benefits for all of the beneficiaries.

The only way in which plaintiff could be found to have actual injury is if this Court viewed UHIC's determination of Allowable Expense to be irrational. According to plaintiff, the only rational way to interpret the Plan is to use two versions of Allowable Expense – the Medicare amount that would actually have been paid for the service at the start of the calculation, and the Copay Plan Allowable Expense based on the Fair Health database. Nothing in the Plan suggests the use of two different "Allowable Expense" definitions for the same benefit calculation. At most, plaintiff offers her own, rational interpretation of the Plan. But under an arbitrary and capricious standard of review, that is not enough.

---

[6] Plaintiff's preferred method of calculation might well provide her with an enhanced benefit, but her method would require the Plan to calculate two Allowable Expense numbers, one of which—the Medicare fee rate—is not readily discernible. In addition, defendant draws support in the Plan for its view that it may choose to use a single Allowable Expense: Example 3 in the SPD explains that, where the benefits calculation method of the primary and secondary plan conflict, the administrator may use a single Allowable Expense, taken from the primary coverage plan's methodology. (See SPD at 67 ¶ 3(d)("If a person is covered by on Coverage Plan that calculates its benefits or services on the basis of usual and customary fees and another Coverage Plan that provides its benefits or services on the basis of negotiated fees, the Primary Coverage Plan's payment arrangements shall be the Allowable Expense for all Coverage Plans.")(emphasis added). Thus it would not be unreasonable for UHIC to use the Medicare Allowable Expense alone, even if it accepted plaintiff's argument that such expense should be calculated from the Medicare fee schedule. Thus, even by using plaintiff's preferred Medicare estimation method, she would still do better under defendants' actual policy.

Based on the allegations of the SAC, the Plan incorporated by reference into the SAC, and the Smith Declaration considered in connection with the Court's inquiry into subject matter jurisdiction, plaintiff lacks injury in fact and the Court thus lacks constitutional standing to hear her claims.[7]

In addition, plaintiff's Count I must also be dismissed on the merits. As this Court stated at oral argument, the motion was being converted into summary judgment. As a result, the Court's determination that UHIC's estimating methodology is not arbitrary or capricious eliminates the basis for the ERISA violations asserted.  Defendants are thus entitled to summary judgment since plaintiff does not raise a triable issue of fact as to harm under ERISA.

Finally, as the parties conceded at oral argument, once Count I is dismissed for lack of standing, the remaining claims similarly fail.[8]

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted and the SAC is dismissed in its entirety, with prejudice. The Clerk of Court is directed to terminate this action.

SO ORDERED:

Dated:      New York, New York
            April 19, 2013

_____
KATHERINE B. FORREST
United States District Judge

---

[7] The Court notes that each of plaintiff's claims is based on the same assumption that the estimating methodology caused injury. While various ERISA violations are based on this premise, none can stand when that premise is stripped away.
[8] As noted above, the Court therefore does not reach the arguments briefed regarding the remainder of the claims in the SAC.