e9q2gata

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    MARIANNE GATES,

4                    Plaintiff,              New York, N.Y.

5              v.                            11 Civ. 3487(KBF)

6    UNITEDHEALTH GROUP, INC., et
     al.,
7
                     Defendants.
8    ------------------------------x

9
                                            September 26, 2014
10                                           2:45 p.m.

11   Before:

12                     HON. KATHERINE B. FORREST,

13                                           District Judge

14


15                            APPEARANCES

16

17   KELLER ROHRBACK, LLP
          Attorneys for Plaintiff
18   BY:  DAVID S. PREMINGER

19

20   WEIL, GOTSHAL & MANGES, LLP
          Attorneys for Defendant Unitedhealth Group, et al
     BY:  NICHOLAS J. PAPPAS
21        DANIEL J. VENDITTI
          CELINE J. CHAN
22

23   ORRICK, HERRINGTON & SUTCLIFFE, LLP
          Attorneys for Defendant AllianceBernstein
24   BY:  JOHN D. GIANSELLO, III

25
```

e9q2gata

1          (Case called)

2          MR. PREMINGER:  David Preminger, Keller Rohrback, for

3   plaintiff.

4          THE COURT:  Good afternoon, Mr. Preminger.

5          MR. PAPPAS:  Nicholas Pappas, of Weil, Gotshal &

6   Manges, for United Healthcare Insurance Company, joined today

7   by Dan Venditti and Celine Chan.

8          THE COURT:  Good afternoon, everyone.

9          MR. GIANSELLO:  John Giansello, of Orrick

10  Herrington & Sutcliffe, LLP, for the AllianceBernstein

11  defendants.

12          THE COURT:  All right.  Good afternoon.

13          We are here for oral argument on the pending motion.

14  I have been through all the papers again and I have been

15  several times now back through my initial decision, and by

16  that, talking about the decision that was appealed to the

17  Second Circuit and also the Second Circuit's decision, and I am

18  going to turn the floor over to you folks.  We have until 4:00,

19  and let me just tell you how I want to -- you think that's too

20  long or too short, Mr. Giansello?

21          MR. GIANSELLO:  I am just looking at the clock.

22          THE COURT:  I want to focus you folks first and I want

23  to do this in a way that does not suggest to you, if you go

24  back and read the tea leaves, which way I am coming out on the

25  ambiguity issue, what I will call the ambiguity issue.  But I

3

e9q2gata

1    would like to find out what would happen to the claims and what

2    is left if I decide the language is unambiguous and that,

3    therefore, there is a claim for benefits.

4         I understand how you folks have played out the various

5    scenarios and by "you folks," I am talking about the

6    defendants, in terms of all of the claims which fall by the

7    wayside if the court determined that the language is ambiguous

8    and therefore we go into the arbitrary and capricious standard,

9    and therefore if that high standard can't be met, various

10   claims go away.  But I need to have in my mind both aspects of

11   the decision tree.

12        What's left, what do you folks believe at least

13   arguably is left?  Mr. Preminger, what do you think is left if

14   the court decides that the language is, again, unambiguous and

15   is required to essentially read the language as Mr. Preminger

16   has suggested?  That is not to say that that's what I am going

17   to do, but that's the point which I am most confused by, and I

18   like to have everybody's arguments clearly in mind as I embark

19   on trying to write something.

20        So, with that said, I actually think the place to

21   start probably is -- doesn't matter, Mr. Giansello, Mr. Pappas,

22   who starts -- is really not focusing first on the

23   ambiguous/unambiguous issue.  That may be where you folks have

24   spent the most time preparing, but it is the issue I also

25   understand the best in terms of I understand how the scenarios

e9q2gata

1    play out and how the benefits get calculated and all of that.

2              MR. PAPPAS:  Your Honor, would you like me to go to

3    the podium?

4              THE COURT:  That would be helpful.  Then we can get a

5    clear sound, the court reporter can get a clear sound.  You can

6    move the podium back if it is too far up.  It's up to you.

7              MR. PAPPAS:  Sure.

8              If I understand the court's question, the court in

9    essence would resolve the claim for benefits in Count One in

10   favor of the plaintiff and what would that do to Counts Two to

11   the end?

12             THE COURT:  A little bit different because there are

13   other counts.  It actually flows through a number of the

14   counts.  What if the court -- that's why I call it sort of the

15   ambiguity/unambiguity.  What if I were to determine that the

16   UHIC and AB, for the defendants, using your initials, that you

17   folks had used interpretation that you shouldn't have used

18   because the language in fact is unambiguous and dictated the

19   result that Mr. Preminger is suggesting insofar as the

20   calculation of benefits is concerned?

21             MR. PAPPAS:  Right.  I understand that to be the

22   (a)(1)(b) claim which is in Count One.  You are right, your

23   Honor, that resolution of the (a)(1)(b) claim in plaintiff's

24   favor would affect the others.  So if I could take them count

25   by count, I think that at least that would be how I would sort

1    through the analysis.

2         Count Two is asserted against my client, United

3    Healthcare Insurance Company.  If the court were to find that a

4    claim for benefits were properly stated in Count One, we would

5    still argue that, therefore, there should be no claim for

6    injunctive relief in Count Two, which is really enforcing

7    plaintiff's theory of how the plan should be interpreted.

8    There should be no such claim because, in effect, as we had

9    argued in our papers, you can't have it both ways.  To the

10   extent that, under *Varity* v. *Howe*, there is an adequate

11   alternative remedy available under ERISA section 502, the

12   plaintiff must avail herself of that adequate alternative

13   remedy before resorting to the catch-all provision of

14   502(a)(3), which allows the court to provide appropriate

15   equitable relief, and the Supreme Court has made clear it is

16   not appropriate equitable relief if alternative relief is

17   available under 502(a)(1)(b).

18        THE COURT:  Let me ask you, in that regard, there

19   seems to be some suggestion of it in the papers, but you folks

20   didn't brief the injunctive issue, well, you did a little bit

21   in terms of the switchover to the indemnity plan, but you

22   didn't really brief it so much as there is no chance for

23   repetition.  In other words, one of the primary requirements

24   for an injunctive claim is that there is some opportunity for

25   this to go on, that the harm will continue in some way.  So in

1    addition to the fact that there may be adequate alternative

2    relief, there is also a separate question as to whether or not

3    you can get an injunction if the conduct can't continue.

4            MR. PAPPAS:  And I will let Mr. Giansello handle that

5    because he, I think, argued that in his papers, which is based

6    on the fact that plaintiff is no longer a participant in the

7    copay plan, she is now a participant in the indemnity plan, and

8    therefore no injunction this court could enter on the copay

9    plan could affect Ms. Gates.

10           The other approach I was taking, and I believe we

11   briefed this in our papers, your Honor, 502(a)(1)(b) is not

12   purely a claim for breach of contract, allowing the court to

13   award the benefits that would have been paid absent the breach.

14   It also provides for enforcement of Ms. Gates' rights under the

15   plan and it provides for an action for clarification of future

16   rights under the plan, identical to the very relief the

17   plaintiff is seeking in her injunction.  I enjoin United

18   Healthcare from interpreting the copay plan to read the way

19   United Healthcare has read it.  I want you to read it the other

20   way.  That's exactly the same relief that a declaration under

21   (a)(1)(b) would read.  Therefore, there is no such claim that

22   can be asserted under (a)(3).  As this court has previously

23   ruled, and no one disputes, the only proper defendant on the

24   (a)(1)(b) claim is the plan.  Your Honor dismissed that claim

25   against United Healthcare long ago.  So that would result in a

e9q2gata

1    dismissal of Count Two, as we have already briefed that, your

2    Honor.

3             THE COURT:  So, in other words, Count Two goes away in

4    your view either way.

5             MR. PAPPAS:  Count Two goes away.  It is improperly

6    pled.  It goes away either way.  Indeed, your Honor, as we said

7    in our reply brief, we believe plaintiff really doesn't dispute

8    that point because your Honor has already ruled, as I am

9    describing right now, in the court's July 2012 order, when the

10   court dismissed what the court described as "the equitable

11   portion of the claim under (a)(3) against United Healthcare.

12            So the plaintiff has taken the position, well, no, not

13   really.  This is a proposed class action, and that's different.

14   There are a number of arguments why plaintiff says it is

15   different today.  We, of course, disagree with that because

16   before the court gets to class certification issues under Rule

17   23, the court must first address the motion to dismiss.  The

18   motion to dismiss is based precisely on this duplicativeness

19   issue and the *Varity* issue and the mere -- so before you get to

20   whether there is a class action, Mrs. Gates has to have a claim

21   on her own.  So if Mrs. Gates in fact concedes, which we think

22   she did, that she has no claim under (a)(3), she does not seek

23   reversal of your earlier ruling, and did not appeal that

24   earlier ruling, so it is law of the case now.  There is no

25   claim against United, there should be no claim against United,

1    under (a)(3).  The court merely needs to reaffirm what the

2    court has said in the past and what we have again briefed.

3              The other reason why plaintiff says that the fact that

4    she is seeking class certification makes a difference here is

5    again under *NECA*, the Second Circuit's ruling in *NECA*, that she

6    has "class standing."  And she points out that the Second

7    Circuit has directed your Honor to consider the *NECA* issue as

8    applied to this issue, and we are happy for the court to

9    consider it.  We think the court has already considered the

10   issue and properly so.  *NECA* does not overturn the obvious

11   statement that the plaintiff has to have a claim in her own

12   right.  The plaintiff in *NECA* had a claim under the securities

13   laws in its own right.  The only issue in *NECA* was composition

14   of the class.  We are not yet discussing composition of the

15   class.  The composition of the class cannot give Ms. Gates a

16   claim.  Either she has it in her own right or she doesn't.  If

17   she doesn't, we never get to this question of class

18   composition.  *NECA* doesn't really address the issue and take

19   the case as far as the plaintiffs suggest.

20             THE COURT:  Let me break that down into a couple of

21   pieces because I am very familiar with the *NECA* case and some

22   other cases I have dealt with that.  But as I see it, there are

23   a couple of different pieces to it.  One is, if we were at a

24   stage where we were determining for class certification

25   purposes whether Ms. Gates could represent some variety of

e9q2gata

1    plaintiffs who might have claims that she doesn't have, that's

2    one scenario, but that's different from a scenario where it is

3    an up or down on a 12(b)(6) or a rule 56 as to a particular

4    plaintiff when there hasn't been a class certified yet.  If

5    that plaintiff doesn't have a claim, if essentially there is a

6    liability determination against her, then that plaintiff is

7    gone.  And then there is a complicated sometimes and sometimes

8    not very complicated relation-back issue if there is a

9    substitute.  And that depends on a lot of things.  But

10   essentially if she is gone, she is gone.  I don't think she

11   can -- and Mr. Preminger can address this -- stick around if

12   she doesn't have a claim just to hang out for somebody else.

13   There are a variety of reasons for that, one of which has to do

14   with typicality, it has to do with her incentives to adequately

15   pursue the interests of the class, etc., etc.  You don't need

16   to address that anymore.  I was just responding.  But

17   Mr. Preminger can see where my head is with the *NECA* pieces,

18   and that has to do with the procedural posture really of what

19   comes first.

20            MR. PAPPAS:  Your Honor has got it exactly, and I can

21   move on.

22            Your Honor, I will skip Count Three, which is asserted

23   against AllianceBernstein.  Mr. Giansello will address that.

24            Count Four, assuming --

25            THE COURT:  Let me make sure I understand clearly your

e9q2gata

1    one line sentences on Count Two.  So on Count Two your argument

2    is, first of all, if Ms. Gates has a claim for benefits or had

3    a claim for benefits, that's preclusive of a claim for

4    injunctive relief because she has got an adequate remedy

5    already --

6              MR. PAPPAS:  Or declaratory relief.

7              THE COURT:  Or some other relief.

8              And your second point, well, my second point is that

9    if it is not a continuing violation, then there may not be a

10   basis for prospective injunctive relief in any event.

11             And then the third point is the *NECA* point.

12             MR. PAPPAS:  That is right, your Honor.  I think the

13   other point that plaintiff made was because she is a class

14   representative that, therefore, even though she doesn't have a

15   claim, she can somehow continue to assert her claim.

16             THE COURT:  I think that's the *NECA*.

17             MR. PAPPAS:  It may be related to the *NECA* point.  It

18   was argued in a couple of different ways, but it does come back

19   to the *NECA* point.

20             THE COURT:  Now you can go on to Count Four.  I wanted

21   to make sure you had your arguments.

22             MR. PAPPAS:  Right.

23             So Count Four, your Honor, is the claim where

24   plaintiff seeks equitable relief pursuant to ERISA section

25   502(a)(2) and 502(a)(3) premised upon UHIC's failure to comply

e9q2gata

with ERISA's claim procedure requirements.  So putting aside whether she is entitled to benefits or not, if she is not entitled to benefits, that claim goes away.  I think your Honor ruled that way once before.  Your Honor's hypothetical is if she is entitled to benefits, does she also have the right to bring a claim pursuant to 502(a)(2) or 502(a)(3) relating to the claim procedure violations that the plaintiff has raised?

Your Honor, on that point, in our motion to dismiss we have asserted a number of different grounds for dismissal.  The primary one is that -- and I am going to break it into 502(a)(2) and 502(a)(3) because they are a little different. 502(a)(2) creates a cause of action for remedying a violation of 409 of ERISA, and 409 of ERISA creates liability for the fiduciary in the personal capacity of the fiduciary where there is a loss, misuse, or mismanagement of plan assets.

The reason why that is critically important here is, even if benefits are due, certainly if benefits are not due, there is no allegation in the complaint -- and plaintiff has resisted any effort to identify what are the plan assets that have been lost, misused, or mismanaged.  There is not a word about that in the complaint.  And there is a reason for that. There is no reason why Ms. Gates would have any concern that plan assets have been lost, misused, or mismanaged.  The plaintiff's only response to the argument is, well, 409 also provides a cause of action for, quote, appropriate equitable

e9q2gata

1   relief.  Therefore, she says, she can bring in any breach of

2   fiduciary duty even if it is unrelated to loss, misuse, or

3   mismanagement of plan assets.

4        We have cited cases to your Honor stating the

5   opposite, and in particular we refer the court to -- if I can

6   just find it.

7        THE COURT:  I remember that section of your papers.

8        MR. PAPPAS:  So there is case law, your Honor, making

9   that very clear.  The plaintiff cites three cases which we have

10  distinguished because they all relate to, in some form or

11  fashion, some connection to identified plan assets which

12  plaintiff has not applied to herself.  So, therefore, the

13  absence of a loss, misuse, or mismanagement the plan assets

14  means even if Ms. Gates is entitled to benefits under the plan,

15  she certainly can't get a 502(a)(2), any 502(a)(2) relief.

16       502(a)(3), your Honor, the plaintiff has conceded that

17  cause of action is coextensive with the 502(a)(2) claim.  It is

18  merely a, quote, fallback to her 502(a)(2) claim.  I think

19  acknowledging that if she has a 502(a)(2) claim, that she

20  cannot bring a 502(a)(3) claim.  That doesn't mean a

21  meritorious 502(a)(2) claim.  That means any 502(a)(2) claim.

22       So, for example, 409 of ERISA actionable under (a)(2)

23  provides that the court can order removal of the fiduciary.

24  Well, you can't get that under (a)(3).  We have cited the *Wise*

25  case for that proposition.  It is available under (a)(2).  You

e9q2gata

1    can't get it under (a)(3).

2             In the same manner, 409 of ERISA provides an action

3    for restoration of lost profits.  If she is seeking restoration

4    of lost profits under (a)(3), you can't have it under (a)(3)

5    because it is available under (a)(2).

6             The final piece of the (a)(3) claim is appropriate

7    equitable relief.  She is seeking appropriate equitable relief

8    under (a)(2).  It is expressly available under (a)(2).  You

9    can't get it under (a)(3).

10            So under the principles of *Varity* v. *Howe*, your Honor,

11   the Supreme Court has told us in construing the scope of

12   available relief under (a)(3) the court has to ascertain,

13   first, is there any alternative available remedy.  If there is,

14   there is no appropriate equitable relief under (a)(3).

15            THE COURT:  Let me ask you, and this is something that

16   may be painfully obvious to you folks who practice in this area

17   all the time, but as I understand the way ERISA works -- and

18   you can disabuse me of this if I have gotten it terribly

19   wrong -- you have got to come up with a violation first, and

20   that would be the article 4 violation, the 409 violation here

21   on Count Four.  Only if you come up with an article 4 or some

22   other violation do you get to the relief under 502(a)(2) or

23   (3).

24            So if it turns out that 409 is in fact not a viable

25   claim because there is no loss of plan assets, does it matter

e9q2gata

1   whether we are talking about 502(a)(3) or 502(a)(2) because you

2   don't have any remedy.  There is no trigger to the remedy.

3        MR. PAPPAS:  Your Honor, I agree with you.  I think at

4   the end of the day, because there is an available 409,

5   502(a)(2) claim, there can be no 502(a)(3) claim.  I think the

6   other way plaintiff --

7        THE COURT:  What's the available 409 claim?

8        MR. PAPPAS:  Well, the plaintiff has asserted -- Count

9   Four asserts relief under 409.  It is available.  It doesn't

10  mean it is meritorious.  It is available.  For the reasons we

11  stated, because she hasn't alleged loss, misuse, or

12  mismanagement of plan assets, the 502(a)(2) claim should be

13  dismissed for that reason.

14       THE COURT:  In fact there is no -- when we say

15  502(a)(2), we are talk about the relief available for a 409.

16       MR. PAPPAS:  Correct.

17       THE COURT:  Okay.

18       MR. PAPPAS:  Correct.

19       THE COURT:  So the way I think about it, which may be

20  backwards to the way you think about it, is is there a 409

21  breach of fiduciary duty violation as set forth in 409?  And

22  then if there is, then I go to the type of relief which could

23  be imposed for such violation.  And then what your point is, I

24  think, is if there is a 409, then 502(a)(2) is all she needs

25  and all she gets.  So I could dismiss the 502(a)(3) under an

e9q2gata

1    "even assuming" argument.  Even assuming a 409 violation,

2    502(a)(2) would be enough.  But then you back into, I think

3    your argument is, but she doesn't even get to 502(a)(2) because

4    there is no 409.

5         MR. PAPPAS:  Correct.  And there is another theory she

6    has asserted.  I think your Honor got it so far.

7         The other theory she is asserting is under 404 of

8    ERISA.  404 of ERISA state the general fiduciary duty rules

9    that applies to all fiduciaries.  That doesn't provide remedies

10   or anything.  It just provides what the are the duties.

11        One of the duties of the fiduciary is to comply with

12   the terms of the plan insofar as the plan is consistent with

13   ERISA.  And the plaintiff says the AllianceBernstein plan

14   contains this procedure that is no different from the claims

15   procedure that is set forth in the claims procedure

16   regulations.  And your Honor has already dismissed the claim

17   under the claim procedure regulations, as your Honor recalls,

18   under 503 of ERISA, because the 503 claim can be asserted only

19   against the plan, not against the claims administrator.  So

20   your Honor has dismissed the 503 statutory claim, which is the

21   plaintiff says is actionable under 502(a)(3) and she has

22   asserted that claim against AllianceBernstein.

23        Against United she says, well, because you have to

24   comply with the terms of the plan, therefore, that's a

25   fiduciary duty to comply with the terms of the plan.  United is

e9q2gata

1    not complying with the terms of the plan, therefore, United has

2    breached its fiduciary duty under 404(a).  That is actionable

3    under 409 and 502(a)(2) and 502(a)(3).

4                THE COURT:  Let me just have you pause for a moment.

5                Let's assume for the moment that the court found that

6    there was a breach of fiduciary duty in failing to pay the

7    claimed benefit, that Mrs. Gates' calculation was appropriate,

8    that UHIC should have utilized the methodology that she poses.

9    At that point what would be the appropriate relief?  If I found

10   it was a 404(a) claim based upon a benefits finding, so to

11   speak, what in your view is the appropriate relief at this

12   point, assuming is it surcharge, is it --

13               MR. PAPPAS:  Well, under 502(a)(2)(b) if the court

14   found benefits were due, the court would simply enter judgment

15   in the amount due.  It would be, Plan, you must pay Ms. Gates

16   $300 or whatever it is, right?  I think that's her relief.  To

17   the extent that she certifies a class, she seeks to certify a

18   class under her plan, presumably the court might have to enter

19   into class proceedings to address whether or not this applies

20   to other people, and then potentially some fund would be

21   created to distribute additional benefits if due to anyone else

22   similarly situated to Ms. Gates.  That would be self-executing,

23   your Honor.

24               And this goes back to what we talked about earlier.

25   No further injunction is appropriate.  Your Honor would

e9q2gata

1    presumably be able to declare the rights of Ms. Gates and the

2    class under the plan.  You would construe the plan.  Your

3    opinion would be whatever it is.  That would be the ruling of

4    the court at that point.

5         THE COURT:  One of the arguments that the plaintiff

6    makes in her response to that is it can't be that 502(a)(2)

7    doesn't get you anything.  Because part of the argument is if

8    she has brought her lawsuit and the court were to provide her

9    with relief, then there is no other review.  Any further review

10   can't get her anything else as I understand it.  Right?  And

11   then their argument is, well, that can't be so; because if that

12   is so, then 502(a)(3) doesn't really get her anything.

13        MR. PAPPAS:  It may not get Ms. Gates anything, that's

14   absolute correct, your Honor.  That's part and parcel of the

15   claim that she is asserting.  She is asserting a claim for

16   benefits.  In its essence her claim is one for benefits.

17        The Supreme Court in the *Varity* case came up with a

18   very unusual set of circumstances where a 502(a)(3) claim was

19   found appropriate.  In *Varity* v. *Howe*, the plan ceased to

20   exist.  The plaintiffs were duped into taking employment with

21   another company with lesser benefits.  That other company

22   declared bankruptcy so, in essence, the benefits were lost as a

23   result of this inequitable conduct.  Well, they couldn't bring

24   a claim for benefits because the plan no longer existed.  There

25   was an interference by the deemed fiduciary in that case with

e9q2gata

 1    their benefits rights based on this fraudulent

 2    misrepresentation, and the Supreme Court said, well, in that

 3    case there could be a 502(a)(3) claim for appropriate equitable

 4    relief.  The alternative (a)(1)(b) claim was not in existence

 5    at that point, and therefore the (a)(3) claim was found to be

 6    satisfactory.

 7            THE COURT:  What kind of equitable relief would even

 8    conceivably work?

 9            MR. PAPPAS:  In that case?

10            THE COURT:  Yes.

11            MR. PAPPAS:  I actually read the case on remand, your

12    Honor.  The plaintiffs sought and were given equitable

13    restitution which, in essence, are the benefits they would have

14    had if they had not been duped into going into this other

15    company which then declared bankruptcy.  If they weren't duped

16    they would have had some additional benefits, and therefore

17    there was equitable restitution.

18            There are all kinds of issues around whether equitable

19    restitution is actually appropriately available under (a)(3).

20    The court mentioned surcharge, and this is an area of an

21    enormous amount of litigation, you know, what is appropriate

22    relief under 502(a)(3).  It is litigated all the time.  In

23    every case the defendant is going to argue what I am arguing,

24    that your remedy is somewhere else.  You have to get that

25    first.  If you don't get it, then you can't go back to (a)(3).

e9q2gata

1    (A)(3) is not just a free-for-all.  Otherwise you would

2    undermine all of the other very complex and detailed provision

3    of ERISA.

4            THE COURT:  It sounds like what you are saying is

5    502(a)(3) is almost never available, that you would almost

6    always, under your reasoning, I think, have some other remedy.

7    You would only get to a 502(a)(3) under a *Varity* type

8    situation.

9            MR. PAPPAS:  I have a hard time with "never," your

10   Honor, but I have to say the (a)(3) claims are dismissed a lot.

11   In the research we have done, certainly unsuccessful (a)(3)

12   claims are far more plentiful than successful ones.  And the

13   reason is ERISA is set up to deliver benefits, and the

14   (a)(1)(b) claim is really the workhorse for ERISA.  Get your

15   benefits.  If you have gotten your benefits, everything should

16   fall away.

17           And the policy behind that, which of course is behind

18   all of this, is to have administration of employee benefit

19   plans without all this collateral litigation.  Congress really

20   did intend to reduce and limit litigation, streamline

21   litigation, make plans self-executing such that you didn't need

22   to resort to the courts every time there is a benefit dispute.

23   The Congress really wanted these things resolved at the

24   administrative level, and that's why you have all of this

25   regime built up around (a)(1)(b).

e9q2gata

1          Your Honor, going back to the point that I was making,

2     the plaintiff's theory for breach of fiduciary duty is you

3     violated the plan, therefore -- the claim for breach of

4     fiduciary duty, therefore the Count Four claim survives.  For

5     the reasons we said, we have gone through the loss, misuse, or

6     mismanagement of plan assets, but we also in our papers

7     described some other reasons why the court should not recognize

8     that type of breach of fiduciary duty claim.  And the reason is

9     this goes back to, again, the principle in *Varity v. Howe*.

10    Congress was very specific in enacting 503 of ERISA.  503 of

11    ERISA is the provision where plans are required to have claims

12    procedures enter full and fair review of claims.  And under

13    that provision, the Department of Labor is authorized to issue

14    regulations, which it has, and so there is a whole regime

15    around claim procedures and claim procedure regulations.

16         Where you have a diligent and appropriate plan which

17    not only embraces compliance with the regulations but brings it

18    into the plan, the plaintiff's theory would be that by in

19    essence restating its legal requirements in the plan, that

20    somehow they have now expanded, the plan has expanded its

21    liability and, not only that, made the fiduciary responsible,

22    on pain of a breach of fiduciary duty, to be sued in federal

23    court.

24         We have argued in our papers, your Honor, that that is

25    inconsistent with the *Varity* principal itself.  There is an

 1    alternative relief available under 503 for full and fair

 2    review, where a claim procedure is deemed inappropriate.  And

 3    the plaintiff has brought that claim in this case, they

 4    brought -- the court has ruled she can't bring it against

 5    United.  She has brought it against the plan.  And the plan has

 6    argued, and Mr. Giansello will expand on this, that the only

 7    relief available for that is either deemed exhaustion -- which

 8    the court has already given to the plaintiff in your earlier

 9    ruling -- or remand.  So if you didn't get the procedure, you

10    intended to or you expected to get from your plan, fiduciary,

11    go back and get it.

12          And the Second Circuit has been very clear about that

13    in the -- I believe it was the *Nechis* case where the Second

14    Circuit said the ordinary result there for violating claim

15    procedure violations is remand.  Well, the same should exist

16    here.  If she is going to sue based on that under 502(a)(3),

17    incorporating the 404 and the plan requirements, the same

18    defenses should exist as exist under 503.  There shouldn't be a

19    claim against the fiduciary.  And if she gets any relief, it

20    should be remand to the plan to get her procedures.  The notion

21    that the court should sit in judgment and then enjoin some

22    procedure seems contrary to the structure of ERISA, and

23    certainly there is no precedent for the type of relief that the

24    plaintiff is seeking here.

25          THE COURT:  Should I hear from Mr. Giansello and then

e9q2gata

```
1   have you add anything else in or is there something else that

2   you want to add?

3               MR. PAPPAS:  Sure, your Honor.  I did have quite a bit

4   to say about the summary judgment.  But if the court wants to

5   defer that --

6               THE COURT:  It is more that sometimes I don't even

7   have oral argument.  It is not that I am not paying attention

8   to the various arguments, but these are where I need a little

9   bit more assistance.

10              MR. PAPPAS:  Understood, your Honor.  Whatever is good

11  for your Honor is good for me.

12              THE COURT:  Let me hear from Mr. Giansello in terms of

13  the same sort of thing, and so your papers focused so much on

14  the language of the plan and the calculation, but that actually

15  is, as I have said, the thing I need to hear least about, but

16  you have got claims, other claims.  You have got three, four

17  and five.

18              MR. PAPPAS:  Your Honor, one correction for the

19  record.  My associate tells me that I should have said *Krauss*

20  *v. Oxford*, not *Nechis v. Oxford*, for the fact that remand is

21  normally the appropriate remedy.  So it is *Krauss*, not *Nechis*.

22              THE COURT:  Very good.  Which one of you was that?

23              MR. VENDITTI:  Team effort; both of us.

24              MR. GIANSELLO:  Where to start?  This is like a

25  Rubik's Cube or something that sort of keeps turning over on
```

e9q2gata

1    itself.

2             THE COURT:  That's the way I have been thinking about

3    it, like a Rubik's Cube.

4             MR. GIANSELLO:  I think to go back to the court --

5    well, first of all, I want to second what Mr. Pappas has said

6    about the impact of *Varity*, and I want to cite the court

7    specifically to page 512 of the Supreme Court's decision, where

8    the court says, "And, as the court pointed out in *Russell*, 473

9    U.S. at 144, ERISA specifically provides a remedy for breaches

10   of fiduciary duty with respect to the interpretation of plan

11   documents and the payment of claims, one that is outside the

12   framework of the second subsection" -- which means of 502(a),

13   that is, 502(a)(2) -- "and cross references section 409" --

14   that is the other subsection which references section 409 --

15   "and one that runs directly to the injured beneficiary" -- and

16   that is 502(a)(1)(b).

17            That is a very broad reading by the court of some

18   language in *Russell*, at 144, which said "Only, significantly,

19   the statutory provision, the one that explicitly authorizes a

20   beneficiary to bring an action to enforce his rights under the

21   plan" -- which is 502(a)(1)(B) -- "says nothing about the

22   recovery of extracontractual damages."

23            So it appears that there are fiduciary duties and

24   there are fiduciary duties.  Not every fiduciary duty, in this

25   very broad language of the Supreme Court, is a fiduciary duty

e9q2gata

1    that is actionable under section 409 because it is a violation

2    of the fiduciary duty set forth in section 404, such as to

3    provide relief under 502(a)(2).

4              But the relief, then, is not based on the rest of

5    *Varity*, as Mr. Pappas has argued, 502(a)(3).  It is

6    specifically and directly under the language of *Varity* under

7    502(a)(1)(B), which is the claim for damages.  So I think

8    that's where you end up coming back.  And the other sections of

9    502 are superfluous based on that authority.

10             Now, to go back to the court's original question, what

11   happens if I decide the first question against the plan, the

12   first issue against the plan, and determine that the plan is

13   unambiguous and it must be construed the way Mr. Preminger

14   argues.  Well, then I think, as Mr. Pappas says, we get into --

15   and as you have recognized, we get into the question of whether

16   she can, based on pretty clear Supreme Court jurisprudence,

17   make out a claim for equitable relief, for injunctive relief.

18             And I think under *Lyons* it is pretty clear that she

19   can't.  In that case, what you had was a police brutality case

20   in which the plaintiff was suing both for damages under Section

21   1983 and for an injunction to prevent the city and the police

22   department from continuing the practice.  The court said, well,

23   it is much too speculative that this plaintiff will ever be

24   subjected to this conduct again.  He has his remedy for

25   damages, and that's it.

e9q2gata

1          It seems to me that is the analog here.  She is out of

2     the copay plan.  She cannot be harmed by any future application

3     of the copay plan under any circumstances, so her remedy is

4     damages, and that decision has whatever impact and whatever

5     effect it has.

6          Then we get to the question of whether she can

7     represent any class.  And you have already recognized the

8     difficulties and problems that inhere in that question.

9          Then it seems to her, the other thing you have to do

10    is grapple with this issue that is intertwined with *Varity* and

11    I think probably confront directly the question of whether a

12    violation of section 503, the claims procedure, her claims

13    procedure arguments, are the kind of breach of fiduciary duty

14    that is independent of her claim for benefits, and we have

15    cited cases to that effect.

16          THE COURT:  This is now, you are talking about the

17    seventh -- no, that's the third claim.  Give me the count.

18          MR. GIANSELLO:  It is the third, fourth, and fifth.

19    The sixth and seventh claims are gone.  She has abandoned the

20    sixth, and the seventh has been determined by the Second

21    Circuit, your decision on that one has been upheld by the

22    Second Circuit.

23          THE COURT:  All right.

24          MR. GIANSELLO:  But it seems to me Counts Three,

25    Four -- I believe it is Three, Four, and Five all depend

e9q2gata

1     ultimately on whether a deficiency with respect to section 503,

2     the notice and claims procedure requirements, both of that

3     section and the regulations under it, amount to the kind of

4     breach of a fiduciary obligation that implicates sections 404,

5     409, and 502(a)(2).

6                 The other thing I want to say is with respect to I

7     believe it is the third claim, the one that is alleged directly

8     against the plans for violation of Section 503, which she now

9     argues is not *vis-à-vis* the plans claim for breach of fiduciary

10    duty, but a direct action against the plans, even though,

11    clearly, if you look at the fourth claim, it is bottomed on a

12    claimed breach of duty by UHIC.  That whole argument that she

13    has a direct action is based on a reading of some language by

14    the Second Circuit that I think takes that language much

15    farther than the Second Circuit intended it to go.  I think

16    that the Circuit was very careful with the precise language it

17    used on page 8 of its decision where it says, "There is no

18    question that Gates has a statutory right to a full and fair

19    review of her claims and that violations of that right are made

20    expressly actionable by the applicable regulations.  Gates has

21    submitted evidence related to the processing of her claims

22    that, when taken as true, establishes a violation of her rights

23    sufficient to establish standing.  Defendant's other arguments

24    for dismissing Gates' procedural claims concern whether or not

25    she may properly bring certain claims on the basis of a breach

e9q2gata

1    of fiduciary duty and whether she is entitled to certain forms

2    of relief."

3           So the circuit doesn't answer those questions.  It

4    does nothing.  It asks you to take another look at them, your

5    Honor.  But it does nothing to upset the line of authority that

6    the remedy for a violation of section 503 and the associated

7    regulations is either deemed exhausted, which she has, or

8    remand, and that is it.  She goes directly to a claim for

9    benefits under 502(a)(1)(b), and I think that's where the heart

10   of this action is.  So I think it ultimately comes back to --

11   we ultimately come back to "go."  Whether she gets $200 or not

12   is another question.

13          THE COURT:  Okay.  How about the seventh claim?

14          MR. GIANSELLO:  The seventh claim you dismissed

15   because --

16          THE COURT:  Not the seventh claim.  Let me go back to

17   that actually.  There is a debate between you folks about

18   whether or not there is anything else that can happen with the

19   switchover to her in the indemnity plan.

20          MR. GIANSELLO:  Nothing can happen to her in the

21   future, and I think there is a case, I have it here, she argues

22   that she is still a participant in the copay plan based on

23   *Firestone*.  I had asked the court to take a look at *Flannigan*

24   *v. General Electric Company,* 93 F.Supp.2d 236 at 259, from the

25   District of Connecticut in 2000, where the District of

e9q2gata

1   Connecticut points out that *Firestone* addressed only the

2   question of what showing a claimant must make in order to be

3   entitled to receive information under Section 1024(b)(4).

4          It is, I think, insofar as its discussion of who is a

5   participant, when we are talking about a former employee,

6   limited pretty much to its facts, and the broad implication of

7   participant status that Mr. Preminger wants to argue from

8   Firestone I think is not supported by the case itself.  Clearly

9   to the extent she has residual claims that are vested for

10  benefits under the copay plan, she has got a claim and the

11  court has to decide the validity of that claim.  But there is

12  nothing more in anybody's likelihood that can happen to her by

13  reason of any administration of a copay plan.  She is in the

14  indemnity plan now because different language -- frankly, I

15  think a decision by the court supporting her view of

16  unambiguous, too allowable expenses under the copay plan is

17  dangerous, not only for her, but also for the participants and

18  beneficiaries in the indemnity plan, but we don't need to get

19  there.  The only reason I say that is because if the court were

20  to reach a decision that her view of the copay plan's

21  coordination of benefits provisions is mandated by the language

22  of the plan, that has potentially some effect down the road,

23  even if a class is not certified.

24          THE COURT:  You may come back to that.

25          Let me hear from Mr. Preminger.  Is there anything

e9q2gata

```
1    else you wanted to add on this?
2                MR. GIANSELLO:  No, thank you.
3                THE COURT:  Let me hear from Mr. Preminger on this,
4    and then let's circle back to that last point.
5                MR. PREMINGER:  Thank you, your Honor.
6                At the outset, I think there is some confusion -- and
7    I think the defendants have done their best to create it --
8    between claims for benefits and procedural claims that the
9    plaintiff has made.
10               Her claim for benefits is based on her reading that
11   the plan is unambiguous and that therefore she is entitled to
12   benefits under the unambiguous plan terms.
13               THE COURT:  In which count is she seeking --
14               MR. PREMINGER:  That's Count One, where she claims
15   benefits under 502(a)(1)(b).  She also seeks benefits for
16   anybody else in the plan in that claim who might have been
17   harmed by the same interpretation of the provision.
18               THE COURT:  Is her claim under Count One live or has
19   that been dismissed?
20               MR. PREMINGER:  No, Counts One through Five are all
21   active.  Only Six we dismissed.  Seven, the court affirmed your
22   dismissal, the Second Circuit affirmed your dismissal.  The
23   first five are all still before this court.
24               In that claim, the plaintiff also seeks injunctive
25   relief precluding the plan from continuing to interpret it in
```

e9q2gata

1    the fashion that it has.  There is no doubt that such an

2    injunction is available.

3            The second claim, the plaintiff seeks to sue on behalf

4    of participants in other plans for which United is the claims

5    administrator and which also estimate Medicare benefits when

6    the plan does not provide for estimation.  That gets us into

7    the question which your Honor raised in the first motion to

8    dismiss and which the Second Circuit said should be

9    reconsidered in light of *NECA*.  That is a class action issue.

10   It need not be addressed right now.

11           THE COURT:  Right.  But your view is that the broadest

12   claim that you are bringing is the claim for injunctive relief

13   against UHIC, an administrator of all kinds of other plans

14   where they use a similar estimating methodology, and that is

15   part of Count One for you.

16           MR. PREMINGER:  No, that is Count Two.

17           THE COURT:  Count Two.

18           MR. PREMINGER:  Count One is limited to the AB plan.

19           THE COURT:  So Count Two is your big, broad --

20           MR. PREMINGER:  That's correct.

21           THE COURT:  -- claim.

22           MR. PREMINGER:  That's correct.

23           THE COURT:  And that is the injunction only for the

24   estimating methodology as to all kinds of folks.

25           MR. PREMINGER:  That's correct.

e9q2gata

1          THE COURT:  And are you seeking the injunctive relief

2     in Count Two also as to the UHIC plan?

3          MR. PREMINGER:  It is as to all plans.  It depends on,

4     I suppose, how things go in terms of getting classes certified

5     and whether or not a subclass is necessary.

6          THE COURT:  If she were found not to have the ability

7     to bring a claim for injunctive relief under Count Two, if

8     Count Two only seeks injunctive relief, then Count Two would be

9     dismissed as to her and then there would be a separate issue

10    that you would argue under *NECA* where she could still have some

11    sort of representational ability and we would fight that out

12    then.

13         MR. PREMINGER:  Yes.  Well, let me point out

14    procedurally exactly how this happened.

15         The first complaint sought monetary relief for all of

16    the participant of these other plans.  That was what your Honor

17    said she could not do.

18         So in the amended complaint, the second amended

19    complaint, we limited to injunctive relief because you said we

20    did not have standing with respect to the monetary relief.  We

21    limited it to injunctive relief because the standing rules are

22    different.  For monetary relief, she would have had a personal

23    monetary loss.  You ruled that wasn't appropriate in that case,

24    in the claim we made, but.  For a statutory violation all you

25    really need is to show that the plaintiff has -- that there is

e9q2gata

```
1    some sort of statutory right which has been denied and you have

2    a statutory right to have the unambiguous plan provisions

3    applied according to their terms.

4           Depending upon what your Honor does here, we may in

5    fact seek to amend again simply because based on the Second

6    Circuit's opinion, which sought to have your Honor reevaluate

7    the initial decision based on NECA, we may want to seek

8    monetary relief in the second claim again.

9           THE COURT:  They have actually had some class

10   statements since NECA that have further refined it.

11          MR. PREMINGER:  Well, no, we will take a look at all

12   of that --

13          THE COURT:  It's more consistent with me than not.

14          MR. PREMINGER:  Your Honor, we are not seeking to

15   amend now.  Obviously what we are going to do is going to

16   depend on what your Honor does with respect to all of these

17   motions.

18          THE COURT:  So how about Count Three?

19          MR. PREMINGER:  I am not finished with Count Two yet,

20   if I may.

21          THE COURT:  All right.

22          MR. PREMINGER:  One, with respect to Varity, the

23   principal point in Varity was there shouldn't be a right

24   without a remedy.  So if in fact there has been a problem with

25   the way in which United has been interpreting these plans,
```

1    injunctive relief should be available.  Under what section, you

2    know, the case law I think is pretty clear that if someone has

3    stated a claim but they state the wrong section under which

4    they are entitled to bring that claim, the court can ignore

5    that.  We do not concede that we have stated the wrong section.

6    If the court finds it, though, we have nonetheless stated a

7    claim.  Mr. Pappas has stated it states a claim under

8    502(a)(1)(B) not under (a)(3).  We still stated a claim, just

9    we have been in error with respect to the (a)(3).

10        I would point out that 502(a)(1)(B) says that a

11   participant may bring a claim for benefits under his plan, may

12   seek clarification of his rights under his plan, not anybody

13   else's plan.  So whether or not that relief is available

14   (a)(1)(B) is not necessarily -- it is not necessarily available

15   under (a)(1)(B).  But if it is, we have nonetheless stated a

16   claim.

17        Now, you wanted to go on to which claim at this point?

18        THE COURT:  I just want to make sure that I understand

19   this issue that we have been talking about in terms of if she

20   has a claim for benefits/if I find the language is as you

21   suggested it should be, what that does to positions of various

22   folks on these claims.

23        MR. PREMINGER:  If in fact you decide that our reading

24   of the plan is the operative one, I agree that Ms. Gates would

25   be entitled to benefits with respect to all of the claims that

e9q2gata

1    were only -- for which she received less money than she would

2    have under our reading of the plan.  I think anyone else in the

3    AB plan, I don't think it flows, I don't think your decision

4    would do that because we still need to get a class certified,

5    etc., with respect to injunctive relief.  But I think from that

6    decision would naturally flow the relief that the

7    interpretation that has been used with respect to estimating,

8    may not be used anymore, and that anyone else who has lost

9    money because of that reading would be entitled to the

10   difference.

11        With respect to the second claim, there is more of an

12   issue because the defendants have said in the past -- and this

13   was raised in *Lipstein* with respect to the court's decision,

14   the New Jersey case that dealt with this also, that dealt with

15   the class action motion -- that other plans may in fact have

16   wording which would, because of the wording, not cause them to

17   come within the decision that the plan here is unambiguous,

18   that would require discovery to determine what the other plans

19   say.  As opposed to *Lipstein*, we would only be looking for

20   plans which don't provide estimation, so the universe of plans

21   is going to be less.  I don't know how much less, I haven't had

22   any discovery, but that would need to be done.  We would need

23   to see obviously whether a class could be certified.  That

24   issue is raised.  All of those things would still need to be

25   done with respect to the second claim.

e9q2gata

```
1            Mr. Pappas went to the fourth -- let me only say, the
2     third, fourth, and fifth claims, it is our position that it
3     couldn't make the slightest bit of difference how your Honor
4     rules on the plan interpretation as to whether or not the
5     plaintiff is entitled to relief on the third, fourth, and fifth
6     claims.  If you say the defendants are right, they are
7     interpreting the plan correctly, they are entitled to do it,
8     the third, fourth, and fifth claims survive.
9            If the defendant's position -- the fourth claim is
10    pled alternatively.  It is either we are entitled to relief
11    under 502(a)(3) or we are entitled to relief under 502(a)(2).
12    Section 409 is not something which a fiduciary can violate.
13    409 simply is titled "Remedies for Breach of Fiduciary Duty."
14    The defendant's argument that it applies only if the assets of
15    the plan are involved, that is not correct.
16            THE COURT:  So it is 409, not 1109?
17            MR. PREMINGER:  409 is 1109.
18            THE COURT:  So that is labeled "Liability for Breach
19    of Fiduciary Duty, not "Remedy," exactly the opposite.
20            MR. PREMINGER:  I apologize.  But it sets forth the
21    remedies that are available in case of a breach of fiduciary
22    duty.  It does not set forth what the fiduciary duties are, so
23    that 1109 in itself cannot be violated.
24            THE COURT:  But it does appear from the language of
25    the statute, which I have in front of me, that it does relate
```

e9q2gata

1    to losses to the plan.  It is really for somebody who is

2    stealing money from the plan or engaged in some egregious

3    investment strategy that caused losses to the plan in some way

4    that violated their fiduciary duties because they want to put

5    the money back in.  That's what really 409 is most often used

6    for.

7              MR. PREMINGER:  Well, it is often used for that, yes,

8    but it is not exclusively used for that.

9              THE COURT:  Are you aware of any circuit case which

10   has found that there is a 409 breach of fiduciary duty when

11   there is no loss or diminution in assets of the plan, that the

12   bank account isn't lower?

13             MR. PREMINGER:  That there has been a breach of

14   fiduciary duty?

15             THE COURT:  Yes, a 409 breach of fiduciary duty.

16             MR. PREMINGER:  There is no such thing as a 409 breach

17   of fiduciary duty.  There is only whether or not there is a

18   claim -- Section 404 sets forth what the fiduciary duties are.

19   They require fiduciaries to act solely on behalf of the

20   participants and beneficiaries for the purpose of providing

21   benefits, diversifying plan assets.

22             THE COURT:  I understand that and I was not precise,

23   but I think we are all thinking of 409 in terms of its wording,

24   which is, I will quote, "shall be personally liable to make

25   good to such plan any losses to the plan resulting from each

e9q2gata

```
 1    such breach."  So the "each such breach," as I understand it,
 2    is a breach by a fiduciary, "fiduciary" defined under 404, but
 3    the "such breach" is something which caused the diminution in
 4    assets to the plan, right?  There is a type of breach.
 5                MR. PREMINGER:  That's one --
 6                THE COURT:  He does X.
 7                MR. PREMINGER:  Yes.
 8                THE COURT:  He violates his breach.
 9                MR. PREMINGER:  Yes, but --
10                THE COURT:  She can't get us both.
11                MR. PREMINGER:  -- a remedy is also the termination of
12    a fiduciary.
13                THE COURT:  Yes, the last sentence of this says you
14    can also remove the person, but it is for --
15                MR. PREMINGE:  And you can also grant other
16    appropriate equitable or remedial relief.
17                THE COURT:  Hold on one second, because if we talk
18    over each other it drives her crazy --
19                MR. PREMINGER:  I'm sorry.
20                THE COURT:  -- and when I read my transcript, it makes
21    me look like I am in fourth grade.
22                So I understand that if there was someone who stole
23    money from a plan or otherwise caused a diminution in assets of
24    a plan, the world is the equitable oyster, right?  The court
25    can do all kinds of things.  It can remove the trustee under
```

e9q2gata

1    409, it can order such other equitable or remedial relief as

2    the court deems appropriate, so if you didn't have the money,

3    but you might get the money in the future, you can maybe put a

4    lien on future assets, you can do all kinds of things.  But it

5    all seems to have to relate to a diminution in assets of the

6    plan.

7              MR. PREMINGER:  Well, I disagree.  The Department of

8    Labor, if you will look at its *amicus* brief in the Second

9    Circuit, which was attached as an exhibit to our memo here,

10   disagrees and the Department of Labor has regulatory authority

11   over the fiduciary duty provisions of ERISA, and they

12   explicitly disagreed that it relates only to plan assets.  You

13   have to be able --

14             THE COURT:  But is there any case that you know,

15   because if you had a case that would really help, like some

16   sort --

17             MR. PREMINGER:  Well, we have circuit court cases.  I

18   don't know if we cited a circuit court case.  I know there was

19   one case that we cited in which the court held that the failure

20   of the plan to keep documents correctly was a breach of

21   fiduciary duty which was actionable.  The defendants had

22   argued, well, there hasn't been any damage to the plan because

23   of it.  And the court said, You don't have to wait until there

24   has been damage to the plan to cure a fiduciary breach.  The

25   whole purpose of getting the injunctive relief is to make sure

e9q2gata

```
 1   that there hasn't been, there won't be any damage to the plan.
 2            And that's the point.  Fiduciaries are required to
 3   fulfill their fiduciary duties, whatever they may be.  United
 4   does not deny it is a fiduciary.  Under the administrative
 5   services agreement with the plan, it specifically acknowledges
 6   its fiduciary duty status and states that it will process
 7   claims in accordance with ERISA and in accordance with the
 8   summary plan description.  It has got to do that.  Failure to
 9   do that is a breach of fiduciary duty.  And what United is
10   essentially arguing before this court is, yes, I have a
11   fiduciary duty, but I can breach it whenever I want to blithely
12   and there is no remedy for it.  That cannot be the case.  And
13   if you will read the Department of Labor's amicus brief in the
14   Second Circuit in this case, they make a lengthy argument that
15   that cannot be the case.
16            Congress wanted there to be claims procedures.  The
17   legislative history, and if your Honor would like me to brief
18   this, believe me, I can.  Congress wanted there to be claims
19   procedures so that -- and Mr. Pappas agreed with this -- there
20   could be an expeditious and inexpensive method of resolving
21   claims, so that there wouldn't be a great deal of litigation
22   over them.  If Mr. Pappas is correct that United cannot be
23   required to fulfill its obligations to comply with the summary
24   plan description here which sets forth the claims procedures
25   and fiduciaries are required to comply with the plans, then
```

1    every time, as you have seen has happened in this case,

2    Ms. Gates filed a claim and was not properly advised of how

3    that claim was being decided, she would have to sue, every

4    time, because they would never comply with the claims

5    regulations.  The whole purpose of the claims regulations is to

6    try to get this resolved without somebody going to court.

7            THE COURT:  Does she have any claims other than the

8    two for the two providers?  How many times did she -- I have

9    just forgotten the number.  How many --

10           MR. PREMINGER:  Although many, the EOB's, I'm sorry,

11   but the explanation of benefit forms deal with several

12   different visits in each one.  How many I cannot tell you off

13   the top of my head.

14           THE COURT:  What's the value of her total?

15           MR. PREMINGER:  I have not even attempted to do it

16   because it would require, at least in our view of the plan, it

17   would require going to the Fair Health Network and figuring out

18   what the CPT close is, what the value would be under the Fair

19   Health Network, and deducting what Medicare actually would have

20   paid.  It is an exercise and I have chosen not to do it at this

21   point in time simply because ERISA jurisdiction has no monetary

22   limit.  If in fact your Honor were to decide that we are

23   correct as to how the plan should work, then I assume that I

24   could get together with the defendants and work out exactly how

25   the benefits are going to be calculated.  But I have not at

e9q2gata

1    this point in time calculated it.

2            THE COURT:  Okay.  How about, because we are going to

3    run out of time soon, fifth, sixth, those claims.  Is there

4    anything in particular that?

5            MR. PREMINGER:  Which ones?

6            THE COURT:  Fifth and sixth.

7            MR. PREMINGER:  The sixth is gone, so you are asking

8    the third and the fifth?

9            Well, let me say something first with respect to

10   something Mr. Giansello said.  Standing is determined as of the

11   time the complaint is filed.  Ms. Gates had not yet been

12   transferred to the indemnity plan at the time the complaint in

13   this case was filed, so she had standing to pursue all of her

14   claims.  That does not go away simply because she was

15   transferred to the indemnity plan.

16           THE COURT:  I think the argument that he raised in his

17   brief wasn't so much standing as mootness, that you can

18   actually have standing at the outset, but then it can become

19   moot, and that's where the article three standing runs into the

20   mootness doctrine.

21           MR. PREMINGER:  I understand that, but her claims are

22   not moot.  They haven't paid her what she said she is entitled

23   to.  She has a live claim.

24           THE COURT:  So her claim as to injunctive relief may

25   be moot, but that's different.

e9q2gata

1          MR. PREMINGER:  No.

2          THE COURT:  I know you don't agree.

3          So the seventh claim for relief, are you arguing that

4    some claim should be back in here because of the standing?

5    What's the standing point going to?

6          MR. PREMINGER:  Well, the standing for injunctive

7    relief.

8          THE COURT:  Okay.

9          MR. PREMINGER:  Because that's -- Mr. Giansello did in

10   fact raise it in his papers that she does not have standing to

11   pursue an injunction.

12         THE COURT:  I don't think it is a standing issue, but

13   I think there is a serious question about whether or not there

14   is prospective injunctive relief to which she is entitled.  But

15   that is not a standing issue.

16         MR. PREMINGER:  That's not the issue as I understand

17   the cases.  I would --

18         THE COURT:  We will figure that out.  I understand the

19   injunctive relief point, I think.

20         MR. PREMINGER:  So on the third claim, which is the

21   503 claim, your Honor ruled in the first motion to dismiss

22   decision that 503 applies only to plans.  503 says plans have

23   to have claims procedures.  Our section -- our third claim for

24   relief simply seeks to require the plans to have a claims

25   procedure which complies with ERISA and the regulations.  The

e9q2gata

```
1    claim does in fact state that because United, which is a
2    fiduciary, hasn't complied with the claims procedures, that has
3    perforce caused the plan not to have a compliant claims
4    procedure, but the claim is not based on a plan's breach of
5    fiduciary duty.  A plan can't be a fiduciary.
6              THE COURT:  So if Ms. Gates were to get relief under
7    503 for the third claim for herself, what steps are taken
8    subsequent to the award of such relief?  Does she go back and
9    get some more procedure or does she -- is this solely
10   representative?
11             MR. PREMINGER:  It is prospective relief.
12             THE COURT:  It is prospective.
13             MR. PREMINGER:  It is prospective.
14             THE COURT:  Is that prospective by statute?
15             MR. PREMINGER:  There is nothing that can be done
16   retroactively.
17             THE COURT:  I guess I am saying we can't turn back the
18   clock, but does she herself go back and get additional -- does
19   she get to get another review by claims administrators?
20             MR. PREMINGER:  That is not what we are seeking.
21             THE COURT:  This is really for other folks.
22             MR. PREMINGER:  It is herself for future claims.
23             THE COURT:  But if one assumes that she is correctly
24   in the indemnity plan --
25             MR. PREMINGER:  The indemnity plan does the exact same
```

e9q2gata

1    thing.  United is the claims administrator for the indemnity

2    plan also.

3              THE COURT:  But does the indemnity plan, in your view,

4    use the estimating methodology?

5              MR. PREMINGER:  No.  This injunction does not have to

6    do with the estimating methodology.  It only has to do with how

7    they process claims, not how they -- not the ultimate decision

8    on a claim.  This claim has nothing to do with the coordination

9    of benefits formula.

10             THE COURT:  So, in your view, the third claim, the 503

11   relief, would go to every plan, then, that --

12             MR. PREMINGER:  Every participant in the plan.

13             THE COURT:  Every participant in any plan of

14   AllianceBernstein.

15             MR. PREMINGER:  That's correct.

16             THE COURT:  So now I understand that claim.  Okay.

17             We only have eight minutes left.

18             MR. PREMINGER:  Then I better get to the fifth claim.

19             The fifth claim is a claim against AllianceBernstein

20   which is both the plan sponsor and the plan administrator.  And

21   in its capacity as the plan administrator it is *per se* a

22   fiduciary.  In its capacity as a plan sponsor, which can

23   appoint fiduciaries, the act of appointing fiduciaries is a

24   fiduciary act.  As a plan administrator -- and I don't know

25   exactly how this happened, not having discovery, I don't know

1    whose decision it was to make United the claims administrator.

2    If it was -- AB, AllianceBernstein, in its capacity as the plan

3    sponsor, they were a fiduciary for those purposes, if it was AB

4    in its capacity as plan administrator delegating its

5    responsibilities for claims administration, that was a

6    fiduciary act, which means that AllianceBernstein is a

7    co-fiduciary with United, which makes it liable as a

8    co-fiduciary for anything which it enabled United to do, or

9    else it is a claim for failure to monitor.

10            Your Honor, in the first motion to dismiss decision,

11   actually said that we had adequately pled that claim."With

12   respect to her third cause of action, plaintiff has adequately

13   pled a breach of fiduciary duty claim on AB's alleged failures

14   to select, maintain, and monitor a competent claims

15   administrator."

16            Again here, we are not seeking any monetary damages or

17   retroactive relief.  We are simply seeking injunctive relief to

18   require AllianceBernstein to ride herd on any claims

19   administrator it may appoint.  Because especially if your Honor

20   decides that we do not have a claim against United for its

21   breach of fiduciary duty and failure to comply with claims

22   procedure rules, the only way we have of ensuring compliance

23   with those rules is by getting the relief against

24   AllianceBernstein.

25            THE COURT:  Are you aware of any other case, apart

e9q2gata

1    from a construction of my first motion to dismiss decision,

2    with a co-fiduciary, where there has been a co-fiduciary in

3    this sense, derivative fiduciary in a way?

4              MR. PREMINGER:  I am not sure what your Honor means by

5    "derivative fiduciary."

6              THE COURT:  Well, there does appear to be law which

7    would suggest that AB is not in and of itself a fiduciary in so

8    far it has contracted with UHIC to be the administrator; and

9    so, to the extent that UHIC is an administrator and AB then has

10   separate fiduciary duties to monitor the administrator, you

11   call it a co-fiduciary, so it seems to become a co-fiduciary of

12   some sort.  Is this a new theory?

13             MR. PREMINGER:  No.  There is co-fiduciary liability

14   under ERISA.  There is a specific section.  I believe it is

15   405.  That discusses co-fiduciary liability and that a

16   co-fiduciary is liable for acts of another fiduciary if it has

17   failed to do something in its own right.

18             THE COURT:  That's --

19             MR. PREMINGER:  Which enables the fiduciary to breach.

20             THE COURT:  That is a fiduciary to fiduciary in that

21   one.

22             MR. PREMINGER:  Yes.

23             THE COURT:  I understand.  I have read the briefing on

24   this, and I will have to go back to it.

25             How about the sixth?  Sixth is gone.

e9q2gata

1          MR. PREMINGER:  May I make one more point here?

2          THE COURT:  Yes.

3          MR. PREMINGER:  Mr. Giansello said that -- cited the

4     *Flannigan* case from Connecticut for the proposition that the

5     Supreme Court statement in *Bruch* about who is a participant is

6     limited to receipt of documents.  Well, *Bruch* did involve

7     receipt of documents, but there is no such limitation.  The

8     question was, the issue in *Bruch* was who is a participant?

9     Because the section of ERISA involved says a participant may

10    receive certain documents.  They simply had to decide who was a

11    participant, and they decided that anyone with a colorable

12    claim to a benefit is a participant.  ERISA has only one

13    definition of "participant."  So if the Supreme Court has said

14    anyone with a colorable claim to a benefit is a participant,

15    that is what "participant" means regardless of what section of

16    ERISA you are looking at.

17          Thank you.

18          THE COURT:  Mr. Giansello, tell me your point that you

19    were going to say before about how much --

20          MR. GIANSELLO:  Well, I think you have to -- this is

21    really down the line, but I think you have to look at the

22    language of the indemnity plan.  My point simply was that if he

23    is right and if the court decides that he is right, that the

24    plan is unambiguous and that there is no alternative admitting

25    of a discretionary determination to use anything other than the

e9q2gata

1    Medicare fee schedule on the Medicare side of the coordination

2    of benefits calculation, the question is, what effect does that

3    have as a matter of preclusion, if someone wants to raise it,

4    on the indemnity plan?  Where?

5             On the plan benefits side of the calculation, the

6    language of the indemnity plan is very clear that that

7    determination is to be made not by looking at fair and

8    reasonable costs or some other standard, but by the Medicare

9    payment arrangements.  And if that should happen and if that

10   were the consequence of a determination that Mr. Preminger is

11   right, then he will have done harm not only to himself, but to

12   everybody else who is a participant or beneficiary in the

13   indemnity plan.  So I think the court needs to tread carefully

14   here with an eye toward the potential preclusive effect of any

15   decision it makes.

16            THE COURT:  All right.  Mr. Preminger.

17            MR. PREMINGER:  If I may respond.  Mr. Giansello is

18   correct that the language of the indemnity plan is different,

19   but United, obviously with AllianceBernstein's concurrence, has

20   consistently interpreted it the same way that they had

21   interpreted the language of the copay plan.  The language of

22   the indemnity plan is not before this court.  We have not

23   challenged the interpretation that has been used for the

24   indemnity plan.

25            THE COURT:  I thought you were through your class

e9q2gata

1   assertions.

2                MR. PREMINGER:  No.

3                THE COURT:  You are saying that all of the process

4   injunctive relief --

5                MR. PREMINGER:  With respect to the benefit claim,

6   your Honor, what we are saying is we are looking at any plan

7   that uses estimation when estimation is not provided for in the

8   plan, and that countering United's interpretation would provide

9   additional benefits for the class member.  We are not looking

10  to attack any interpretation of any plan that provides greater

11  benefits to any participant.  The indemnity plan, the language

12  of the indemnity plan has always been interpreted according to

13  United and AB as -- in exactly the same fashion as they have

14  interpreted the copay plan.

15               THE COURT:  Okay.

16               MR. PREMINGER:  They cannot change that

17  interpretation.

18               THE COURT:  All right.

19               MR. PREMINGER:  Unless they amend the plan.

20               THE COURT:  I see how the issue is joined here I

21  think.  Okay.

22               Was there anything else, Mr. Pappas, that you had as a

23  final couple of words?

24               MR. PAPPAS:  If your Honor will give me 30 seconds.

25               THE COURT:  Yes.  Just don't talk too quickly.  We

e9q2gata

1    will be close, but it is important we get the record clear.

2            MR. PAPPAS:  I heard Mr. Preminger say that the way

3    his new Count Two differs from the identical count he asserted

4    previously was that he understood the court's July 2012 order

5    as dismissing the monetary claim asserted under 502(a)(3) and

6    in fact the court's July 2012 order at page 22, footnote 10,

7    makes very clear that the court dismissed "the equitable

8    portion" of her first cause of action.  That's exactly what he

9    purports to be bringing now against United in Count Two; and

10   therefore, your Honor, we think it is now clear that under the

11   law of the case that claim should be dismissed.

12           I would again point the court to *Krauss v. Oxford* --

13   we have cited it many times -- *Nechis v. Oxford*.  In both of

14   those cases the Second Circuit held that the (a)(3) claim for

15   claims procedure violations, whether it is a nondisclosure, an

16   untimely action, or an improper processing of claims brought

17   under 502(a)(3), had to be dismissed if the court found there

18   were an appropriate or an adequate alternative remedy under

19   502(a)(1)(B).  So those two cases, just to highlight, are

20   dispositive.  The court has already ruled to that effect, but

21   Mr. Preminger said there are many cases allowing these types of

22   injunctions.  That's simply not the case, and not in the Second

23   Circuit.  He cited the Court to -- he didn't remember the name

24   of the case saying that there was another circuit court case

25   regarding failure to produce documents.  That case he is

e9q2gata

1      referring to, your Honor, is *Schaefer v. Operating Engineers* in

2      the Ninth Circuit.  He cited it.  We distinguished it.  That

3      case very clearly related to documentation regarding the use of

4      plan assets; therefore, it is very consistent with the court's

5      reading of 409 and our reading of 409.  And I think it is

6      correct that at the moment there is no case holding, as

7      Mr. Preminger says, a claim for under 409, for liability under

8      409, where there is anything but a claim that is related to the

9      loss or misuse or mismanagement of plan assets.

10             Those are my only additional comments, your Honor.

11             MR. PREMINGER:  May I briefly respond, your Honor,

12      very briefly?

13             One, I may have misspoken with respect to your Honor's

14      first motion to dismiss decision about the claim against

15      United.  I now recollect that in most part you had dismissed

16      that claim.  We had argued in opposition to dismissal, that

17      United was a fiduciary, and you pointed out that the complaint

18      did not state that United was a fiduciary.  So our reading of

19      your Honor's decision was we couldn't get anywhere with a

20      monetary claim regardless of whether or not we alleged United

21      was a fiduciary, but we thought we could get somewhere with a

22      claim for injunctive relief alleging United was a fiduciary.

23      So a substantial difference between the two complaints is the

24      allegation of fiduciary status.

25             The other thing is that *Krauss/Nechis* do not deal with

e9q2gata

1     this sort of situation.  They are not class actions.  They were

2     not seeking relief from systemic violations of the claims

3     procedure rules.  They were seeking benefits because of the

4     claims procedure -- a violation of the claims procedure rules,

5     and that relief is not available.  The relief was a remand.

6             Thank you.

7             THE COURT:  All right.  Thank you.

8             All right, everyone.  I need to get you a decision in

9     the relatively near future, but it is relative.  It is relative

10    to the queue.  Because we don't have other dates in this case,

11    we will put something down in early December so that we have a

12    conference date.  You all will, when you get the decision,

13    figure out what to do with this date, but we will have

14    something on the calendar so this just can't get buried.  But

15    let's come up with a date.

16            THE DEPUTY CLERK:  Friday, December 5, at 12:30.

17            THE COURT:  Does that work for you folks, the 5th at

18    12:30?

19            MR. GIANSELLO:  It does for me.

20            THE COURT:  Take a look at the order on this motion or

21    series of motions.

22            MR. PREMINGER:  Excuse me, your Honor, but I am going

23    to be out of town Wednesday, Thursday and Friday of that week.

24            THE COURT:  That's fine.  There is no reason we can't

25    make it the following week or the prior week.

e9q2gata

1        THE DEPUTY CLERK:  Friday, December 12, at noon.

2        THE COURT:  Does that work?

3        MR. PREMINGER:  That's fine with me, yes.

4        MR. GIANSELLO:  Yes.

5        THE COURT:  Mr. Pappas?

6        MR. PAPPAS:  I believe so, your Honor, subject to

7   checking my calendar, but I believe that works.

8        THE COURT:  Okay.  This has been helpful.  Thank you

9   very much.  I am sorry if there were parts of things that you

10  were going to talk about, Mr. Pappas in particular.  I know you

11  had all kinds of things that you didn't have a chance to say,

12  but I think your briefing was very complete.

13        MR. PAPPAS:  Thank you, your Honor.

14        THE COURT:  Thanks.

15                              - - -

16

17

18

19

20

21

22

23

24

25